**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| STANLEY WRICE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 14 C 5934 |
| | ) | |
| -vs- | ) | The Hon. Elaine E. Bucklo |
| | ) | |
| JON BURGE, *et al*., | ) | Magistrate Sheila Finnegan |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO COOK COUNTY'S MOTION TO DISMISS**

Defendants Bertina Lampkin, the Office of the Cook County State's Attorney, and Cook County, ("*County Motion to Dismiss*") have moved to dismiss Plaintiff's claims. Defendant Lampkin contends that she is entitled to immunity for the misconduct alleged against her. Daley's arguments cannot succeed.

**SUMMARY OF THE ALLEGATIONS AGAINST COOK COUNTY**

1. Plaintiff was arrested on September 9, 1982 and, following a brutal, physically coercive interrogation at the Area 2 police station, was falsely charged with the sexual assault and battery of K.B. *See Complaint*, (Doc. No. 1) ¶¶ 19, 38. Following his torture at the hands of Defendants Byrne and Dignan, Plaintiff gave an oral unrecorded statement implicating himself in the offenses which was admitted against him at trial. *Complaint*, ¶ 39. Bobby Joe Williams, Plaintiff's co-arrestee, was also beaten during his interrogation at Area 2 by Defendants Byrne and Dignan and was forced to give a false statement implicating Plaintiff in the offenses. *Id.*, ¶¶ 42, 94. Defendant Lampkin was the lead prosecutor in the 1983 trial against the Plaintiff. As such, she was responsible for preparing the witnesses for trial, including State witness Bobby Joe Williams. *Id.*, ¶¶ 94, 95. Also, as part of her preparation for Plaintiff's trial, Defendant Lampkin independently looked for witnesses and new evidence by walking the scene of K.B.'s assault and knocking on doors to find a witness to testify against Plaintiff. *Id.*, ¶ 95.

2. Mr. Williams' 1983 trial testimony inculpating Plaintiff in K.B.'s assault was untrue. *Complaint*, ¶ 96. When Williams told Defendant Lampkin that he did not want to falsely

testify against Plaintiff, Defendant Lampkin told Williams that if he did not testify against Plaintiff he would be charged with the rape and beating of K.B. *Id*. Williams did what Defendant Lampkin told him and testified falsely against Plaintiff. *Id*. Defendant Lampkin's knowledge that Williams testimony was false, her admission of Williams' perjured testimony, as well as Defendant Lampkin's failure to disclose that Williams' trial testimony was coerced by her threats, was the proximate cause of Plaintiff's wrongful conviction and incarceration. *Id*.

3. Also, Defendant Lampkin allowed the false and fabricated testimony of Kenny Lewis inculpating Plaintiff to be admitted against Plaintiff at his trial. *Complaint*, ¶ 97. Defendant Lampkin, acting as an investigator several days before Plaintiff's trial, independently went to the crime scene to look for new witnesses against Plaintiff. *Id*. Defendant Lampkin knocked on many doors and, without assistance of the police, personally interviewed Kenny Lewis and then Lewis testified against Plaintiff several days later. *Id*. The testimony of Kenny Lewis was constructed and manufactured by Defendant Lampkin in order to wrongfully convict Plaintiff. *Id*. Defendant Lampkin engaged in a conspiracy with other Defendants to wrongfully convict and incarcerate Plaintiff for 31 years. *Id*., ¶¶ 101.

4. On December 9 and 10, 2013, an evidentiary hearing was held on Plaintiff's post-conviction claims. *Complaint*, ¶ 99. On December 10, 2013, Judge Walsh granted Plaintiff's post-conviction petition, and ordered a new trial. *Id*. Judge Walsh suppressed Plaintiff's confession and found that the State was responsible and liable for the conduct and perjured testimonies of Defendants Byrne and Dignan. *Id.* Judge Walsh found that the Defendant Officers committed perjury in 1983 when they testified that they did not beat Plaintiff to coerce his confession. *Id.* Judge Walsh found that the Officers tortured Bobby Joe Williams in order to secure his statements inculpating Plaintiff in K.B.'s assault, and that information of Defendant Officers torture practices should have been disclosed to the defense. *Id.*

5. On December 12, 2013, the State, through the Office of the Special Prosecutor Stuart A. Nudelman, dismissed all charges against Plaintiff. *Complaint*, ¶ 100.

## STANDARD OF REVIEW

6. To state a claim upon which relief can be granted, the plaintiff's complaint need only contain "a short and plain statement of the claim showing that [the plaintiff] is entitled to

relief." FED. R. CIV. P. 8(a)(2). The plaintiff is not required to make "detailed factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Rather, the complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949, *citing Twombly*, 550 U.S. at 556. When determining whether Plaintiff has met this standard, this Court must "tak[e] all well-pleaded allegations of the complaint as true and view[] them in the light most favorable to the plaintiff." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010), *quoting Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000). The Seventh Circuit has interpreted the Supreme Court's *Iqbal* decision to mean that the plaintiff must merely "give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank*, N.A., 614 F.3d 400, 405 (7th Cir. 2010). The court asks itself, "*could* these things have happened, not *did* they happen." *Id*. Plaintiff's complaint satisfies this pleading standard.

7. But, "like the statute of limitations," immunity is "an affirmative defense, which a plaintiff ordinarily need not anticipate in her complaint." *Cooney v. Casady*, 652 F.Supp.2d 948, 956 (N.D. Ill. 2009). Because an "immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate." *Hortsman v. County of DuPage*, 284 F.Supp.2d 1125, 1133 (N.D. Ill. 2003), *quoting Alvarado v. Litscher*, 67 F.3d 648, 651-652 (7th Cir. 2001).

## ARGUMENT

## I. DEFENDANT LAMPKIN IS NOT ENTITLED TO IMMUNITY.

8. Defendant Lampkin claims that all of the claims against her must be dismissed because they arise "solely out of actions ASA Lampkin undertook as an Assistant State's Attorney during the course of the State's criminal prosecution of Plaintiff," and thus, she is entitled to either absolute or qualified prosecutorial immunity. *County Mtn*., p. 3.

### A. Plaintiff's § 1983 Claims (Counts I and V) and State Law Claims (Counts VIII, IX, and X) Are Not Barred By Absolute Immunity.

9. Defendant is not entitled to absolute immunity for any of the Plaintiff's claims.

#### 1. Defendant Lampkin is Not Entitled to Absolute Immunity from

**Plaintiff's Claim of a § 1983 Due Process Violation in Count I.**
(Response to County Defendant's Motion, pgs. 3-5, 7)

10. Although Defendant Lampkin contends that she is entitled to absolute immunity for her misconduct in denying Plaintiff his due process right to a fair trial by fabricating false testimony that she used to wrongfully convict and incarcerate plaintiff, current Seventh Circuit law holds otherwise. *See Fields v. Wharrie* ("*Fields II*"), 740 F.3d 1107, 1113 (7th Cir. 2014).

11. As the County acknowledges, Defendant Lampkin's status as a prosecutor alone does not afford her blanket protection from suit by way of absolute immunity. "Prosecutors are absolutely immune from suits for monetary damages under § 1983 for conduct that is 'intimately associated with the judicial phase of the criminal process.'" *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003), *quoting Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). "A prosecutor is shielded by absolute immunity when he acts 'as an advocate for the State' but not when his acts are investigative and unrelated to the preparation and initiation of judicial proceedings." *Id.*, *citing Buckley v. Fitzsimmons*, 509 U.S. 259, 272 (1993). Thus, absolute immunity is only for acts they commit within the scope of their employment as prosecutors. *Fields II*, 740 F.3d at 1110-1111, *citing Buckley*, 509 U.S. at 273–276. Often their employment duties go beyond the strictly prosecutorial to include investigation, and when they do nonprosecutorial work they lose their absolute immunity and have only the immunity, called "qualified," that other investigators enjoy when engaged in such work. *Id*. Thus, the level of immunity to which Lampkin is entitled turns on the function that she was performing at the time of the alleged misconduct. *See Bianchi v. McQueen*, No. 12-CV-00364, 2014 WL 700628, at *7 (N.D. Ill. Feb. 24, 2014).

12. In Count I, Plaintiff alleges a due process violation in that Defendant Lampkin coerced State witness Bobby Joe Williams to testify falsely at Plaintiff's 1983 trial and knowingly suborned Williams perjury in order to wrongfully convict Plaintiff of the crime and to unjustly imprison him for 31 years. *Complaint*, ¶¶ 42, 46, 96, 105-106. Plaintiff also alleges that Defendant Lampkin manufactured the false testimony of State witness Kenny Lewis and admitted this fabricated "evidence" at Plaintiff's trial to wrongfully convict him and incarcerate him for 31 years. *Complaint*, ¶¶ 41, 42, 97, 105-106. Defendant Lampkin attempted to secure a wrongful conviction by fabricating false witness testimony, hiding this exculpatory evidence, and

continuing to conceal her wrongdoing during the criminal proceedings against Plaintiff for 31 years following his wrongful incarceration. *Complaint*, ¶¶ 92-97, 105-106.

13. Until recently, it seemed to be settled law in the Seventh Circuit that allegations of evidence fabrication do not state a cognizable due process claim. *See Petty v. City of Chicago*, 754 F.3d 416, 421 (7th Cir. 2014). But *Fields II* put that notion to rest.

14. In *Fields II*, the Seventh Circuit clarified that its earlier decision in *Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir.2012), definitively stands for the proposition that a prosecutor can violate one's due process rights by fabricating evidence if that evidence is later used to deprive the defendant of liberty in some way. *Fields II*, 740 F.3d at 1114; *Petty*, 754 F.3d at 422 ("In *Fields II*, we stated that a prosecutor who falsely creates evidence against a defendant violates the defendant's due process right."). The Court explained that there is a difference between coercing witnesses to testify and fabricating witness testimony. *Id*. at 1110 ("Coerced testimony is testimony that a witness is forced by improper means to give; the testimony may be true or false. Fabricated testimony is testimony that is made up; it is invariably false. False testimony is the equivalent; it is testimony known to be untrue by the witness and by whoever cajoled or coerced the witness to give it."). In fabrication cases, the police or prosecutor manufactures evidence that he or she knows to be false. *See, e.g., Id*. (the prosecutor fabricated evidence that he knew to be false from a prospective witness); *Whitlock*, 682 F.3d at 571–72 (the prosecutor was a part of an investigative team that told witnesses what to say knowing that the information they gave the witnesses was false). A prosecutor fabricating evidence that she knows to be false is different than getting "a reluctant witness to say what may be true." *Fields II*, 740 F.3d at 1112.

15. The Court that noted absolute immunity does not extend to a prosecutor who fabricates evidence since "a prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as 'preparation' for a possible trial; every prosecutor might then shield himself from liability for any constitutional wrong against innocent citizens by ensuring that they go to trial." *Fields II*, 740 F.3d at 1113-1114 (citations omitted). Thus, when a prosecutor fabricates evidence or witness testimony that he or she then uses to wrongfully

convict the Plaintiff, that prosecutor cannot "demonstrate[]an entitlement to absolute immunity." *Fields II*, 740 F.3d at 1114.

16. Here, Plaintiff alleges that Defendant Lampkin stepped outside her role as "lead prosecutor," and engaged in impermissible investigatory conduct when she coerced Bobby Joe Williams to provide testimony against the Plaintiff *that she knew to be false and fabricated*. *See Complaint*, ¶ 42 ("Williams was coerced by Defendant Lampkin to falsely testify against Plaintiff."), ¶ 46 ("Defendant Lampkin coerced Williams to produce his false inculpatory testimony against Plaintiff."), ¶ 96 (Defendant Lampkin knew that "Williams' testimony was false" and her "admission" of "Williams' perjured testimony" resulted in his "wrongful conviction and incarceration."). Defendant Lampkin went beyond her role as advocate, and performed, essentially, a police function of creating false testimony to be used against Plaintiff at his trial. She went far beyond the normal "witness preparation" that would entitle her to immunity and instead created fabricated evidence in the form of Williams' testimony. *See Buckley*, 509 U.S. at 269 (it is "the nature of the function performed, not the identity of the actor who performed it," that determines whether immunity should be extended).

17. Plaintiff also alleges that Defendant Lampkin was not operating as a prosecutor when she independently looked for witnesses and then manufactured and fabricated the false testimony of Kenny Lewis that was used to wrongfully convict and incarcerate Plaintiff. *See Complaint*, ¶ 46 ("Defendant Lampkin prepared and presented" the untrue and "manufactured trial testimony of Kenny Lewis."), ¶ 97 (Defendant Lampkin presented the "manufactured and constructed" false testimony of Kenny Lewis in order to "wrongfully convict Plaintiff."). Again, Defendant Lampkin, on her own accord, went to the crime scene before trial to "find clues" and "corroboration" in the form *new* witnesses whom the police had not investigated, and then used this fabricated evidence she created – Kenny Lewis' testimony – at Plaintiff's trial. *See Buckley*, 509 U.S. at 273 (there is a "difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand ... when a prosecutor performs the investigative functions normally performed by a detective or police officer," it is "neither appropriate nor justifiable that,

for the same act, immunity should protect the one and not the other.").

18. Thus, Plaintiff's claim is that Defendant Lampkin knowingly "cajoled or coerced" Bobby Joe Williams to "give" "false testimony" at Plaintiff's trial and "fabricated" the testimony of Kenny Lewis in order to wrongfully convict Plaintiff. *See Fields II*, 740 F.3d at 1112-1114 ("Fabricated testimony is testimony that is made up; it is invariably false. False testimony is the equivalent; it is testimony known to be untrue by the witness and by whoever cajoled or coerced the witness to give it.").

19. Since Plaintiff's due process claim in Count I is a "fabrication of evidence" claim, and because Defendant Lampkin was the "fabricator of [the] evidence" against Plaintiff and also "one of his prosecutors" who used the evidence against him at trial, Defendant Lampkin is not entitled to absolute immunity. *See Fields II*, 740 F.3d at 1112-1114.

**2. Defendant Lampkin is Not Absolutely Immune from the State Law Claims in Counts VIII and IX.**
(Response to County Defendants Motion, pg. 6)

20. Similarly, Defendant Lampkin is not entitled to absolute immunity for the State law claims contained in Counts VIII and IX, the malicious prosecution and intentional infliction of emotional distress claims. Since Illinois "may not even have absolute prosecutorial immunity," since Defendant Lampkin "does not claim that if Illinois does have it, it is more absolute than the federal rule," and since Defendant Lampkin "is not entitled to absolute immunity from being sued on the federal claims against" her, there is "no basis" for giving her "absolute prosecutorial immunity from the state law claims for the same conduct alleged as a violation of Illinois tort law." *Fields II*, 740 F.3d at 1115.

**3. Defendant Lampkin is Not Absolutely Immune from the Conspiracy Claims in Counts V and X.**
(Response to County Defendants' Motion, pgs. 5, 6)[1]

21. The Defendant Lampkin asserts that she is absolutely immune from the Federal

---

[1] The County Defendants also adopt the arguments contained in VII of the City Defendants Joint Motion to Dismiss in support of Defendant Lampkin's motion to dismiss. Correspondingly, and to avoid unnecessary, duplicative briefing, Plaintiff adopts his Responses to the City Defendants Joint Motion to Dismiss.

and State conspiracy claims in Counts V and X because all of her actions were associated with her role as a prosecutor. *County Deft. Mtn*., pgs. 5, 6. But since Count I and Counts VIII and IX establish that Defendant Lampkin is not absolutely immune, the conspiracy Counts do not fail. *See Tillman v. Burge*, 813 F.Supp.2d 946, 976 (N.D. Ill. 2011) (where the Plaintiff's substantive claims of a due process violation do not fail, the "conspiracy allegations will not be dismissed on that basis.").

**B. Defendant Lampkin Is Not Entitled to Qualified Immunity From Count I, Where Defendant Lampkin Fabricated Evidence Against Plaintiff That Was Used to Convict Him and Keep Him Unjustly Incarcerated for 31 Years.**[2]

22. Contrary to the County's claims, Defendant Lampkin is not entitled to "qualified immunity for the fabrication [of evidence], either." *See Fields II*, 740 F.3d at 1114 (finding that the prosecutor who fabricated the evidence against the Plaintiff and then used it against him at his trial was not entitled to qualified immunity); *see County Mtn.*, p. 7. Qualified immunity looks to "the objective legal reasonableness of an official's acts ... [w]here an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action. " *See Fields II*, 740 F.3d at 1114, *quoting Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982). Thus, the test whether (1) the facts allege a violation of a constitutional right and (2) whether the right was clearly established at the time of the defendant's misconduct. *See Saucier v. Katz*, 522 U.S. 194, 201 (2001); *Akande v. Grounds*, 555 F. 3d 586, 589-590 (7th Cir. 2009).

23. First, as noted *supra*., a prosecutor violates one's due process rights by fabricating evidence if that evidence is later used to deprive the defendant of liberty in some way. *Fields II*, 740 F.3d at 1114; *Petty*, 754 F.3d at 422 ("In *Fields II*, we stated that a prosecutor who falsely creates evidence against a defendant violates the defendant's due process right."). Thus, Plaintiff established that this claim is a due process violation, not federal malicious prosecution claim.[3]

---

[2] Defendant Lampkin does not assert that she is entitled to qualified immunity from the conspiracy claims contained in Counts V and X, nor does she assert that she is entitled to qualified immunity from any of the State law claims contained in Counts VII, VIII, and IX.

[3] The County Defendants adopt the arguments contained in Section I of the City Defendants Joint Motion to Dismiss in support of Defendant Lampkin's motion to dismiss. Correspondingly, and to

24. Second, it has been established law since Plaintiff's 1983 trial ("indeed, well before") that when a "fabrication" of evidence is alleged to have occurred, "a government lawyer's" use of the "fabricating evidence against a criminal defendant" at his trial is a violation of due process. *See Fields II*, 740 F.3d at 1114 (finding that prosecutors who fabricate evidence and use it against the plaintiff at trial, lose their qualified immunity), *citing Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Pyle v. Kansas*, 317 U.S. 213, 215–216 (1942); *Mooney v. Holohan*, 294 U.S. 103, 110, 112–113 (1935) (*per curiam*).

25. Since Plaintiff has sufficiently pled a due process violation in Count I, and because Defendant Lampkin is not entitled to either absolute or qualified immunity, the County Defendant's motion to dismiss should be denied.[4]

## II. PLAINTIFF'S CLAIMS IN COUNTS II, III, AND VII.

26. As Plaintiff noted in his Response to the City Defendant's Motion to Dismiss, these Counts are voluntarily withdrawn. *See Plaintiff's Response to City Defendant's Motion to Dismiss*.

## III. PLAINTIFF'S CLAIMS IN COUNTS VII AND IX.

27. The County Defendants adopt the arguments contained in Sections V and VI of the City Defendants Joint Motion to Dismiss in support of Defendant Lampkin's motion to dismiss. Correspondingly, and to avoid unnecessary, duplicative briefing, Plaintiff adopts his responses to the City Defendants Joint Motion to Dismiss.

## IV. THIS COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS.

28. The County argues that Defendant Lampkin is protected from suit with respect to Plaintiff's State law claims by the Illinois doctrine of sovereign immunity. *County Mtn*., p. 11-12. This argument cannot prevail. Plaintiff sufficiently alleges that Defendant Lampkin's

---

avoid unnecessary, duplicative briefing, Plaintiff adopts his responses to the City Defendants Joint Motion to Dismiss contained in Section I of his Response. It should be noted that with regards to this claim, the Officer Defendants claim that information about the torture practices at Area 2 under Jon Burge was disclosed to Defendant Lampkin. *See City Defendants Joint Motion to Dismiss*, p. 8.

[4] Contrary to the assertion in the County Defendants' Motion, Plaintiff is not advancing a "failure to intervene" claim against Defendant Lampkin under Count I.

misconduct in fabricating evidence in order to wrongfully convict and incarcerate Plaintiff is malicious and outrageous in nature. These allegations remove the shield of sovereign immunity.

29. Illinois law is clear that a state actor is not entitled to sovereign immunity "when it is alleged that the State's agent acted in violation of statutory or constitutional authority or in excess of his authority, and in those instances an action may be brought in the circuit court." *Healey v. Vaupel*, 133 Ill. 2d 295, 308 (Ill. 1990). Thus, where a State official is alleged to have acted beyond the scope of his authority through wrongful acts, the official and not the State is the real party of interest and the suit may proceed. *Senn Park Nursing Center v. Miller*, 104 Ill. 2d 169, 188 (Ill. 1984) ("when a State officer performs illegally or purports to act under an unconstitutional act or under authority which he does not have, a suit may be maintained against the officer and is not ac action against the State of Illinois."); *Welch v. Illinois Supreme Court*, 322 Ill. App. 3d 345, 353 (3rd Dist. Ill. App. Ct. 1978) ("malice, if properly pleaded, is outside the scope of a State employee's authority and must be brought in the circuit court and not in the Court of Claims."). Additionally, where the State official is alleged to have breached a duty owed to the public, generally, independent of the fact of State employment, the circuit court action may proceed. *Currie v. Lao*, 148 Ill.2d 151, 159 (Ill. 1992).

30. Courts in the Northern District of Illinois have consistently held that the Illinois Court of Claims does not have exclusive jurisdiction over similar state law claims brought against Cook County State's Attorneys Office Defendants in other cases of Chicago Police torture complainants. *See Orange v. Burge*, 2008 WL 4425427 (N.D. Ill. September 25, 2008); *Patterson v. Burge*, 328 F. Supp. 2d 878, 887 (N.D. Ill. 2004).

31. Here, Defendant Lampkin's overt acts in participating in Plaintiff's wrongful prosecution, presenting knowing false and fabricated witness testimonies, and suppressing exculpatory evidence, all with the intended result of placing and keeping an innocent man incarcerated for over 31 years, are clearly unconstitutional, malicious, and illegal. These allegations place Defendant Lampkin far outside the boundaries of sovereign immunity.

## V. COOK COUNTY IS A NECESSARY PARTY FOR PURPOSES OF INDEMNIFICATION UNDER 745 ILCS 10/9-102.

32. The Defendants claim that because Defendant Lampkin is a "state, rather than

county" official, any claim against Cook County must fail as a matter of law. *County Mtn.*, p. 12-13. But this fact does not affect the analysis.

33. That Defendants Lampkin and Daley may be considered employees of the State of Illinois is not relevant. Both the Seventh Circuit and the Illinois Supreme Court have agreed that a county may be liable to pay a judgment against a state employee where the county is responsible for the payment of expenses and the judgments originate from working at that employee's office. *See Robinson v. Sappington*, 351 F.3d 317, 339 (7th Cir. 2003) (the responsibility for maintaining and funding a county office lies with the county and under Illinois law, it is responsible for the payment of expenses and judgments emanating from that office ... the "fact that some of the parties involved are state officials, as opposed to employees of [the county] does not alter that fiscal responsibility."); *Carver v. Sheriff of LaSalle County*, 324 F.3d 947, 948 (7th Cir. 2003) (certifying the question to the Illinois Supreme Court and citing that court's ruling in *Carver v. LaSalle County*, 203 Ill. 2d 497 (Ill. 2003): *National Cas. Co. v. McFatridge*, 604 F.3d 335, 345 (7th Cir. 2010) ("the county is only a necessary party to suit so that, as an insurer or backstop for the independent official, it may veto improvident settlements).

34. Also, it is in the interests of judicial economy for Cook County to be a party to this suit in the event that Plaintiff prevails against Lampkin and Daley, Cook County may be required to pay any judgment entered against them. *See Robinson*, 351 F.3d at 339. The Seventh Circuit and district courts have held that there is no reason why a plaintiff should not be permitted to proceed with an indemnification claim before his action against the municipal employee is final, as there is no benefit in requiring the plaintiff to initiate a separate proceeding at a later date. *See e.g., Wilson v. City of Chicago*, 120 F.3d 681, 684-685 (7th Cir. 1997); *Blancas v. Village of Rosemont*, 2008 WL 4682217 (N.D. Ill. May 21, 2008). Indeed, it is in the County's interest to be a named party, as it would have a voice in the litigation. *See Carver*, 324 F.3d at 948.

## CONCLUSION

For the foregoing reasons, this court should enter an order denying Defendants Bertina Lampkin, the Cook County State's Attorney's Office, and Cook County's motion to dismiss.

Respectfully submitted,
**STANLEY WRICE**

By: /s/ Jennifer Bonjean
One of his attorneys

Jennifer Bonjean
Heidi Linn Lambros
1000 Dean Street, Suite 345
Brooklyn, NY 11238
(917) 566-3926

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on Monday December 15, 2014, she caused the foregoing document to be served via the court's CM/ECF system upon all counsel who have filed appearances in this case.

/s/ Jennifer Bonjean