IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STANLEY WRICE,                          )
                                        )
               Plaintiff,               )
                                        )
        v.                              )    No. 14 C 5934
                                        )
JON BURGE, *et al.*,                    )
                                        )
               Defendants.              )


MEMORANDUM OPINION AND ORDER

In May 1983, Stanley Wrice ("Wrice") was convicted of a violent rape and sentenced to 100 years in prison. Over thirty years later, in December 2013, a state judge granted Wrice a new trial on the ground that two police officers working under Jon Burge's command had tortured Wrice into confessing. The state then moved to dismiss its case against Wrice.

Wrice has filed a federal civil rights lawsuit against the two police officers who allegedly tortured him (John Byrne and Peter Dignan); their commanding officers (Jon Burge and Leroy Martin); the lead prosecutor at his trial (Bertina Lampkin); the Superintendent of the Chicago Police Department ("CPD") from 1998 to 2004 (Terry Hillard) and his chief counsel (Thomas Needham); the Director of CPD's Office of Professional Standards from 1990 to 1998 (Gayle Shines); and Richard M. Daley, who served as the State's Attorney for Cook County from 1981 to 1989

1

and as Mayor of the City of Chicago from 1989 to 2011. Wrice has also sued the City, Cook County, and the Cook County State's Attorney's Office under *Monell*, *respondeat superior*, and indemnification theories of liability.

Defendants have moved to dismiss Wrice's claims on a variety of grounds. For the reasons stated below, I grant Bertina Lampkin's and Richard M. Daley's respective motions to dismiss and grant the City Defendants' joint motion to dismiss only in part.

## I. Wrice's allegations

At the motion to dismiss stage, I must accept Wrice's factual allegations as true and draw all reasonable inferences in his favor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Shortly after midnight on September 9, 1982, a white woman identified as "K.B." was raped and burned in the attic of a home that Wrice shared with his brother, his sister, and his sister's boyfriend in the South Shore neighborhood in Chicago, Illinois. Compl. at ¶¶ 19, 38. Wrice and five other black men were arrested in connection with K.B.'s rape. *Id*. at ¶ 19. All six men were allegedly beaten by Sergeant John Byrne ("Sgt. Byrne") and Detective Peter Dignan ("Det. Dignan") during post-arrest interrogations in the Area 2 violent crimes unit. *Id*. Wrice and three other arrestees--Rodney Benson, Lee Holmes, and Michael Fowler--made incriminating statements and were charged

with K.B's rape. *Id.* Bobby Joe Williams, one of the other suspects, was tortured until he implicated Wrice in K.B.'s rape. *Id.* at ¶ 42.

At a pre-trial suppression hearing, Wrice testified that Sgt. Byrne and Det. Dignan had tortured him and called him a "nigger" during his post-arrest interrogation. *Id.* at ¶¶ 20-25.[1] He also presented medical evidence of his physical injuries. *Id.* ¶¶ 27-30. Sgt. Byrne and Det. Dignan denied hitting Wrice or abusing him in any way. *Id.* at ¶ 33. *Id.* ¶ 36. The state trial judge found Sgt. Byrne and Det. Dignan credible and denied Wrice's motion to suppress his confession. *Id.* at ¶ 37.

At trial, Sgt. Byrne testified that Wrice had implicated himself in K.B.'s rape during a post-arrest interview. *Id.* at ¶ 39. An Assistant State's Attorney who was intermittently present during Wrice's interrogation corroborated that Wrice had confessed to the crime. *Id.*

The other evidence against Wrice came from two trial witnesses: Kenny Lewis ("Lewis") and Bobby Joe Williams ("Williams"). *Id.* at ¶ 41. The lead prosecutor in the case, Bertina Lampkin, found Lewis five days before trial during her search for additional eyewitnesses. *Id.* Lewis testified that he saw Wrice burn and beat K.B. on the night in question. *Id.*

---

[1] *See People v. Wrice*, 962 N.E.2d 934, 937-38 (Ill. 2012), for a more detailed summary of Wrice's testimony at the suppression hearing about how he was tortured into confessing.

Williams, in turn, testified that he saw Wrice having sex with
K.B. and heard Wrice say that he had burned her. *Id.* at ¶ 42.
Sgt. Byrne and Det. Dignan had tortured Williams on the night of
his arrest until he implicated Wrice in K.B.'s rape. *Id.* at ¶¶
42, 93-94. Wrice, however, has not alleged that either the
prosecution or the defense was aware that Williams's testimony
was the product of torture.

Wrice testified in his own defense. He knew that several
men were upstairs drinking and using drugs on the night in
question, but he denied knowing anything about K.B.'s rape or
taking part in the offense. *Id.* at ¶ 40. Wrice later heard
loud noises in the attic, went upstairs, and told everyone to
leave. *Id.* With regard to his confession, Wrice testified that
his inculpatory statements were the result of torture at the
hands of Sgt. Byrne and Det. Dignan. *Id.*

In May 1983, Wrice was convicted of rape and deviate sexual
assault and sentenced to 100 years in prison. *Id.* at ¶ 43. The
three other men who had been charged in connection with K.B.'s
rape--Benson, Fowler, and Holmes--later pleaded guilty to
aggravated battery and received sentences ranging from thirty
months on probation to four years in prison. *Id.* at ¶ 44.

In October 2007, Wrice sought leave to file a successive
post-conviction petition on the ground that "newly discovered
evidence substantiated his prior claim that his confession was

the product of police brutality and torture." *People v. Wrice*, 962 N.E.2d 934, 936 (Ill. 2012). Wrice's newly discovered evidence was a report released in July 2006 that documented physical abuse of suspects in the Area 2 violent crimes unit under Jon Burge's command. *Id*. at 944-45. The Illinois Supreme Court held that Wrice was entitled to file a successive post-conviction petition because "use of a defendant's physically coerced confession as substantive evidence of his guilt is never harmless error." *Id*. at 952 (emphasis from original removed).

After a post-remand evidentiary hearing in December 2013, Judge Richard Walsh of the Cook County Circuit Court found that Sgt. Byrne and Det. Dignan had lied at the suppression hearing when they denied torturing Wrice until he confessed. Compl. at ¶¶ 69, 99. The state court granted Wrice a new trial, after which the Cook County Special Prosecutor agreed to dismiss all charges against him. *Id*. at ¶¶ 69, 100.

In May 2014, Wrice petitioned the Circuit Court of Cook County under 735 ILCS § 5/2-702 for a certificate of innocence. Judge Thomas Byrne held that Wrice had failed to demonstrate by a preponderance of the evidence that he was innocent of raping K.B. *See* Dkt. No. 42-1. Although Bobby Joe Williams had recanted his trial testimony, Kenny Lewis had not. In Judge Byrne's view, Lewis's testimony that he saw Wrice raping K.B.

was sufficient to defeat Wrice's assertion of innocence. *Id*. at 11-12. Wrice has appealed that ruling.

## II. Analysis

Wrice's claims in this case include *Brady* violations and fabrication of evidence (Count I); false arrest and imprisonment (Counts II and VII); torture and physical abuse (Count III); coercive interrogation (Count IV); a racially motivated conspiracy and cover-up (Count V); a *Monell* claim against the City of Chicago (Count VI); malicious prosecution (Count VIII); intentional infliction of emotional distress (Count IX); and civil conspiracy (Count X). Wrice also seeks to hold the entities that employed the state actors who allegedly violated his rights responsible under *respondeat superior* (Count XI) and indemnification (Count XII) theories.

Defendants have moved to dismiss Wrice's claims on a variety of grounds including prosecutorial immunity, timeliness, and failure to state a claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## A. Bertina Lampkin

Bertina Lampkin ("ASA Lampkin") was the lead prosecutor at Wrice's criminal trial in 1983 and now sits on the Illinois Appellate Court.  Compl. at ¶ 16.  Wrice has not alleged that ASA Lampkin knew anything about Sgt. Byrne and Det. Dignan torturing Wrice and Bobby Joe Williams.  Instead, Wrice's claims against ASA Lampkin are based on her role in locating and preparing witnesses and then presenting their testimony at trial.  *Id.* at ¶ 95.

Specifically, Wrice alleges that ASA Lampkin violated his constitutional rights when she (1) threatened to charge Williams with K.B.'s rape if he did not testify against Wrice, *id.* at ¶¶ 42, 96; (2) failed to disclose to the defense that she had coerced Williams into testifying, *id.* at ¶ 46, 96; (3) lied about how she found the state's other key witness, Kenny Lewis, through his mother five days before trial; *id.* at ¶¶ 41, 46, 97; and (4) "constructed" and "manufactured" Lewis's "unreliable" testimony implicating Wrice in K.B.'s rape, *id.* at ¶ 97.

ASA Lampkin argues that she is entitled to absolute prosecutorial immunity for all of actions recounted above.  The immunity inquiry "focuses on the conduct for which immunity is claimed, not on the harm that the conduct may have caused or the question whether it was lawful."  *Buckley v. Fitzsimmons* ("*Buckley III*"), 509 US. 259, 271 (1993).  "It is well-settled

that prosecutors have absolute immunity for their core prosecutorial actions, but 'the degree of immunity prosecutors are afforded depends on their activity in a particular case.'" *Lewis v. Mills*, 677 F.3d 324 (7th Cir. 2012) (quoting *Anderson v. Simon*, 217 F.3d 472, 475 (7th Cir. 2000)) (internal citation omitted). When prosecutors' duties "go beyond the strictly prosecutorial to include investigation, and when they do non-prosecutorial work[,] they lose their absolute immunity and have only the immunity, called 'qualified,' that other investigators enjoy when engaged in such work." *Fields v. Wharrie* ("*Fields II*"), 740 F.3d 1107, 1111 (7th Cir. 2014) (citing *Buckley III*, 509 U.S. at 275-76).

ASA Lampkin is entitled to absolute immunity for all of the allegedly unlawful actions described in Wrice's complaint. She cannot be sued for presenting Lewis's and Williams's testimony at trial. "Presenting evidence at trial is a core prosecutorial function, protected by absolute prosecutorial immunity and therefore an insuperable bar to an award of damages in a suit for malicious prosecution against the prosecutor." *Id.* at 1111; *see also Buckley III*, 509 U.S. at 270 (noting that at common law, prosecutors had absolute immunity "for eliciting false or defamatory testimony from witnesses or for making false or defamatory statements during, and related to, judicial proceedings").

8

ASA Lampkin also enjoys absolute immunity for how she prepared Lewis and Williams to testify. "Once prosecution begins, bifurcating a prosecutor's role between investigation and prosecution is no longer feasible. If in the course of a trial a prosecutor were to urge one of his witnesses to lie, it would be arbitrary to describe this as an investigative act separate from prosecution; the prosecutor's conduct would have been 'intimately associated with the judicial phase of the criminal process,' and he would therefore be entitled to absolute immunity." *Fields II*, 740 F.3d at 1115 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). A prosecutor's "effort to control the presentation of his witness' testimony" is "a task fairly within his function as an advocate." *Imbler*, 424 U.S. at 430 n.32.

Wrice's argument that ASA Lampkin was not acting as a prosecutor when she searched for additional witnesses on the eve of trial and allegedly found Lewis through his mother is also baseless. *Imbler* recognizes that trial preparation "may require the obtaining, reviewing, and evaluating of evidence." *Id*. at 431 n.33; *see also Buckley III*, 509 U.S. at 273 (noting that "evaluating evidence and interviewing witnesses" in preparation for trial are prosecutorial functions). What makes ASA Lampkin's seemingly investigative activities prosecutorial in nature is that they took place on the eve of trial, long after

9

Wrice had been arrested and charged for K.B.'s rape. *Cf. Fields II*, 740 F.3d at 1113 (affirming denial of absolute immunity for prosecutor accused of fabricating evidence *before* defendant was arrested or indicted). Therefore, ASA Lampkin's search for additional witnesses on the eve of trial was a core prosecutorial activity even though she would not be entitled to immunity if she had undertaken the same search during the investigative stage of the case. *See Whitlock v. Brueggemann*, 682 F.3d 567, 579 (7th Cir. 2012).

In sum, ASA Lampkin is entitled to absolute prosecutorial immunity on Wrice's federal claims. It follows that she is also entitled to absolute immunity on Wrice's state claims. *Id.* at 1115 (noting apparent congruence between federal and state prosecutorial immunity); *see also Kitchen v. Burge*, 781 F. Supp. 2d 721, 737 (N.D. Ill. 2011). Having resolved the prosecutorial immunity issue in ASA Lampkin's favor, I need not address her other arguments for dismissal.

### B. Richard M. Daley

Richard M. Daley ("Daley") served as the State's Attorney for Cook County from 1981 to 1989 and as Mayor of the City of Chicago from 1989 until 2011. I divide Daley's arguments for dismissal based on the two public offices he held during Wrice's prosecution and incarceration.

### 1. Daley as State's Attorney (1981-89)

Wrice alleges that Daley, among others, "concealed and suppressed [his] knowledge of ongoing torture and physical abuse under Burge, blocked and undercut efforts within the Chicago Police Department to expose and discipline offending officers, and refused to intervene to stop the continuing egregious and criminally unconstitutional misconduct." Compl. at ¶ 2. According to Wrice, in February 1982, Daley learned that the police were torturing African American suspects during a manhunt for the killers of two white Chicago police officers. *Id*. at ¶¶ 50-52, 54-55, 63. Daley is not alleged to have directed, participated in, or even observed any suspects being tortured, but Wrice faults him for not "halt[ing] or prevent[ing]" those practices. *Id*. at ¶ 55. Daley also declined to investigate police interrogation methods even after the Director of Medical Services of Cook County Jail advised him in February 1982 that a suspect in Burge's jurisdiction had been physically abused. *Id*. at ¶¶ 56-58. Wrice believes that he was tortured and wrongfully convicted of K.B.'s rape because of Daley's failure to disclose or investigate allegations of police torture during his tenure as the State's Attorney for Cook County. *Id*. at ¶ 64.

Daley argues that he, like ASA Lampkin, is entitled to absolute prosecutorial immunity for the actions and omissions summarized above. I agree. Wrice's allegation that Daley suppressed evidence of police torture runs squarely into the

Seventh Circuit's holding that "*Brady* and *Giglio* violations breach a defendant's trial rights and are, thus, inherently prosecutorial in nature." *See Fields v. Wharrie* ("*Fields I*"), 672 F.3d 505, 514 (7th Cir. 2012); *see also Van de Kamp v. Goldstein*, 555 U.S. 335, 339 (2009) (holding that supervisory prosecutors enjoy absolute immunity against claims that they failed to properly train or supervise line prosecutors on *Giglio* obligations). Indeed, in his response brief, Wrice concedes that "Daley is entitled to absolute prosecutorial immunity for his suppression of exculpatory information while he was serving as a prosecutor." Dkt. No. 46 at 9 n.10 (emphasis from original removed). Daley is also immune from suit for his allegedly ongoing failure, as Mayor, to disclose *Brady* or *Giglio* material that he learned during his tenure as a prosecutor. *See Kitchen*, 781 F. Supp. 2d at 734; *Tillman v. Burge*, 813 F. Supp. 2d 946, 967 n.13 (N.D. Ill. 2011) (Pallmeyer, J.).

As for Daley's alleged failure to investigate allegations of police torture during his tenure as the State's Attorney for Cook County, Wrice cannot avoid the well-established principle that a prosecutor enjoys absolute immunity for his decision not to investigate a matter, file charges, or otherwise intervene. *See Watson v. Bush*, No. 09 C 1871, 2010 WL 1582228, at *5 (N.D. Ill. Apr. 20, 2010) (Dow, J.) (citing *Anderson v. Simon*, 217 F.3d 472, 475 (7th Cir. 2000); *Spiegel v. Rabinovitz*, 121 F.3d

251, 257-58 (7th Cir. 1997)). Wrice's allegation that Daley was part of a broader conspiracy does not change the conclusion that Daley is entitled to immunity. *See Kitchen*, 781 F. Supp. 2d at 734 n.2. Upon learning that detectives working under Burge's command were torturing African American suspects, Daley may have made a "wrong call, even a spectacularly wrong call, on whether to launch a prosecutorial investigation, but the established policy does not require a prosecutor to answer in damages for that decision." *Andrews v. Burge*, 660 F. Supp. 2d 868, 876 (N.D. Ill. 2009) (Zagel, J.).

## 2. Daley as Mayor (1989 – 2011)

After Daley became Mayor in 1989, he allegedly continued to suppress evidence about police torture and refused to launch any investigations. *Id*. at ¶¶ 71-72. Specifically, Wrice faults Daley for (1) attempting to discredit a report--commonly known as the Goldston Report--released in 1992 that documented systemic abuse of suspects held in Burge's jurisdiction, *id*. at ¶ 81; (2) ignoring additional, publicly disclosed evidence that Burge was the leader of a group that had extracted confessions from African American suspects using torture, *id*. at ¶ 83; (3) promoting Det. Dignan in 1996 despite numerous allegations and sustained findings of torture against him, *id.* at ¶ 89; and (4) ordering that City of Chicago pay for the legal defense of Burge and detectives who worked under his command, *id*. at ¶ 91.

The asserted causal connection between Daley's alleged actions as Mayor and Wrice's continued imprisonment during the same timeframe is implausible. As I stated in *Kitchen*, "[i]t cannot plausibly be argued that Kitchen would have been exonerated if Daley had not promoted Dignan, or if he had not ordered Burge's defense, or if he had not criticized the [Goldston] Report." *Id*. The same observations apply to Wrice's attempt to hold Daley liable for his conduct as Mayor. *See Tillman*, 813 F. Supp. 2d 946, 967-68 (adopting *Kitchen*'s reasoning as basis for dismissing § 1983 claim against Daley based on his conduct as Mayor).

In sum, Wrice's claims against Daley fail across the board for two reasons: (1) Daley is entitled to absolute immunity for the actions he took as a prosecutor between 1981 and 1989 and (2) Wrice has not alleged a plausible connection between any of Daley's actions as Mayor and the alleged constitutional deprivations that Wrice suffered during that time. Accordingly, I grant Daley's motion to dismiss in its entirety.

### C. City Defendants

The so-called "City Defendants" include the City of Chicago; Lt. Burge, Sgt. Byrne, and Det. Dignan (collectively, the "Officer Defendants"); Leroy Martin and Terry Hillard, former Superintendents of the Chicago Police Department from 1987 to 1992 and 1998 to 2004, respectively; Thomas Needham,

counsel to Superintendent Hillard from 1998 to 2002; and Gayle
Shines, Director of the Chicago Police Office of Professional
Standards from 1990 to 1998.

The City Defendants have filed a joint motion to dismiss
that raises nine separate arguments.

## 1. Due process claims (Count I)

In Count I, Wrice alleges that he did not receive a fair
trial and was wrongfully convicted because the City Defendants
fabricated incriminating evidence and suppressed exculpatory
evidence.  Compl. at ¶ 105.

The City Defendants argue that the three legal theories
embedded in Count I--i.e., malicious prosecution, failure to
disclose exculpatory evidence, and fabrication of evidence--are
all implausible.

### a. Malicious prosecution claim

*Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001), holds that
there is no federal constitutional tort for malicious
prosecution.  Seizing on Wrice's use of the term "wrongful
conviction," the City Defendants argue that Count I is a federal
malicious prosecution claim in due process disguise.  I cannot
accept their argument, especially at the pleading stage.  Wrice
is entitled to have Count I construed in the most favorable
light possible.  The City Defendants urge me to the do the exact
opposite (i.e., to construe Count I such that it runs squarely

into the teeth of *Newsome*). I decline that invitation. *See Kitchen*, 781 F. Supp. 2d at 728 (rejecting argument that due process claim should be construed as malicious prosecution claim).

### b. *Brady* claim

Wrice relies on two due process theories that do not run afoul of *Newsome*: (1) a *Brady* claim and (2) a fabrication of evidence claim.

With regard to the *Brady* claim, the City Defendants assert that only three categories of exculpatory evidence are at issue: (1) the interrogation techniques used to obtain Wrice's confession and Bobby Joe Williams's statement implicating Wrice in K.B.'s murder; (2) ASA Lampkin's threat to charge Williams with the crime if he did not testify against Wrice; and (3) the prosecution's last minute discovery of Kenny Lewis and supposed fabrication of his testimony.[2]

Evidence that Sgt. Byrne and Det. Dignan tortured Wrice into confessing does not support a *Brady* claim. Wrice was present for his own interrogation, so "the police were under no *Brady* obligation to tell [him] again that they coerced [him] into confessing." *Sornberger v. City of Knoxville, Ill.*, 434

---

[2] Wrice also claims an entitlement under *Brady* to evidence of a larger pattern or practice of torturing African American suspects into confessing. Compl. at ¶ 53. The pending motions to dismiss do not require me to make a judgment about the plausibility of that theory.

F.3d 1006, 1029 (7th Cir. 2006) (citing *Gauger v. Hendle*, 349
F.3d 354, 360 (7th Cir. 2003)).

Similarly, ASA Lampkin was aware of her own conduct (i.e.,
allegedly threatening Williams before he testified and
fabricating Lewis's testimony). The Officer Defendants had no
duty under *Brady* to disclose to the prosecution what it already
knew. *See Beaman v. Freesmeyer*, 776 F.3d 500, 512 (7th Cir.
2015) (police satisfy their *Brady* obligations when they turn
over material exculpatory evidence to prosecutors).

What remained unknown to the prosecution, however, was that
Sgt. Byrne and Det. Dignan had tortured Williams before he
implicated Wrice in K.B.'s murder.[3] The Officer Defendants
allegedly withheld that information from both Wrice and the
prosecution. To succeed on his *Brady* claim, Wrice must show
that "there is a reasonable probability that the result of the
[trial] would have been different" if the Officer Defendants had
disclosed the interrogation methods they used to obtain
Williams's statement. *Id*. at 506.

The Officer Defendants argue that Wrice is collaterally
estopped from arguing that evidence of Williams being tortured
would have made a difference at trial because the state judge

---

[3] Wrice has alleged that ASA Lampkin coerced Williams into
testifying against Wrice, not that she knew Sgt. Byrne and Det.
Dignan had tortured Williams into implicating Wrice in the first
place. *See* Compl. at ¶¶ 46, 96.

who denied Wrice a certificate of innocence found that
Williams's attempt to recant his trial testimony was not
credible. *See* Dkt. No. 42-1 at 24-27 (discussing Williams's
recantation affidavit). I will assume, without deciding, that a
decision denying a certificate of innocence can result in issue
preclusion even though the Illinois legislature had provided
that such a ruling "shall not have res judicata effect on any
other proceedings." *See* 735 ILCS § 5/2-702(j). The issue
before the state judge was whether Wrice had established by a
preponderance of the evidence that he was innocent of the
charged offenses. *Id.* at 8-9 (citing 735 ILCS § 5/2-702(g)(3)).
Williams's affidavit recanting his trial testimony was not
helpful in establishing Wrice's innocence, but it does not
follow that undisclosed evidence of Williams being tortured
would have been immaterial to the credibility of his trial
testimony. In other words, the issue before me differs from the
issue before the state judge who denied Wrice a certificate of
innocence, so one of the basic conditions for application of
collateral estoppel is missing.[4] *See Gambino v. Koonce*, 757 F.3d
604, 608 (7th Cir. 2014).

---

[4] In their reply brief, the City Defendants concede that their
collateral estoppel argument is premature because Wrice has
appealed the denial of his application for a certificate of
innocence. *See* Dkt. No. 54 at 8 n.2. There is no need to delay
ruling on the collateral estoppel argument, however, because the

The City Defendants tacitly concede that the interrogation techniques used against Williams are *Brady* material, so that portion of Claim I survives. To be clear, I am not endorsing Wrice's argument that the officers who interrogated Williams had a *Brady* obligation to disclose that they fabricated evidence. *See Saunders-El v. Rohde*, 778 F.3d 556, 562 (7th Cir. 2015) (reiterating that *Brady* claim cannot be "premised on the police officers' silence following their alleged fabrication of the evidence"). Wrice has stated a plausible entitlement under *Brady* to evidence relating to how the police interrogated Williams. That is quite different from saying that Wrice had a right under *Brady* to have the Officer Defendants admit before trial that they fabricated Williams's statement.

### c. Fabrication of evidence claim

Wrice's final due process theory is that the Officer Defendants fabricated evidence against him when they (1) tortured him into confessing and (2) tortured Williams into implicating Wrice in K.B.'s rape.

The Seventh Circuit has "consistently held that a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of her liberty in some way." *Whitlock*,

legal issue in the state court proceedings differs from the *Brady* claim before me.

682 F.3d at 580 (citing *Jones v. City of Chicago*, 856 F.2d 985, 993 (7th Cir. 1988)). "The due-process liability recognized in *Whitlock* arises only in a narrow category of cases involving evidence fabrication; the panel took care to distinguish constitutionally actionable fabrication claims from other forms of official wrongdoing--such as '[c]oercively interrogating witnesses, paying witnesses for testimony, and witness-shopping.'" *Stinson v. Gauger*, --- F.3d ---, 2015 WL 5011961, at *8 (7th Cir. Aug. 25, 2015) (quoting *Whitlock*, 682 F.3d at 584). "In fabrication cases, the police or prosecutor manufactures evidence that he knows to be false." *Petty v. City of Chicago*, 754 F.3d 416, 422 (7th Cir. 2014). "[A] prosecutor [or police officer] fabricating evidence that she knows to be false is different than getting 'a reluctant witness to say what may be true'" using coercive techniques. *Id.* (quoting *Fields II*, 740 F.3d at 1112).

The issue before me is whether Count I is a genuine fabrication of evidence claim or merely a complaint about coercive interrogation practices. *Petty* compels the conclusion that Count I is coercion claim that must be dismissed. Petty alleged that Chicago Police officers held a witness "for over for over 13 hours without food, water, or access to a bathroom until he implicated" Petty in a murder. *Id.* at 417-18. The police allegedly harassed the same witness at his home and

refused to release him until he identified Petty as the murderer. *Id*. at 419. Setting aside the "fabrication of evidence" label that Petty had affixed to his claim, the Seventh Circuit held that "his claim is a 'coercion' case for which there is no cognizable due process claim, as opposed to an 'evidence fabrication' case where there is a cognizable claim." *Id*. at 422-23. At most, Petty had alleged that the officers knew or should have known that the witness's statement was "flawed" because of the coercive interrogation tactics they used. The court held that Petty's allegations of police coercion were quite "different than alleging that CPD officers created evidence that they knew to be false, which is the hallmark of a fabrication case." *Id*. at 423.

*Petty* is fatal to Wrice's attempted fabrication of evidence claim. The Officer Defendants are not accused of telling Wrice or Williams what to say about K.B.'s murder knowing that the information was false.[5] *Cf. Whitlock*, 682 F.3d at 571-72. Stripping away the legal conclusions in Count I, Wrice's only claim is that the Officer Defendants tortured him and Williams into making statements, not that the officers fabricated those

---

[5] The closest Wrice comes to stating an evidence fabrication claim comes in Paragraph 47 of the complaint where he alleges that the Officer Defendants "constructed" his confession and "fed [it] to him after he was broken." Nothing in that paragraph suggests that the officers knew that the confession they allegedly fed to Wrice was false.

statements out of whole cloth knowing they were false. Wrice's
contention that the officers' interrogation techniques amounted
to torture is not enough to convert Count I from a coercion case
into a fabrication of evidence case. *See Fields II*, 740 F.3d at
1113 (observing that torture does not necessarily produce false
or fabricated testimony). Here, as in *Petty*, the hallmark of a
fabrication case is missing from Count I because Wrice has not
alleged that the Officer Defendants created evidence against him
knowing it was false.

### 2. False arrest and imprisonment claims (Counts II and VII)

The City Defendants argue that Wrice's false arrest and
imprisonment claims, Counts II and VII, are time-barred.
*Wallace v. Kato*, 549 U.S. 384 (2007), holds that "the statute of
limitations upon a § 1983 claim seeking damages for a false
arrest in violation of the Fourth Amendment, where the arrest is
followed by criminal proceedings, begins to run at the time the
claimant becomes detained pursuant to legal process." *Id*. at
397. Wrice was detained pursuant to legal process no later than
May 1983 when he was convicted of raping K.B. Wrice's
conviction did not toll the statute of limitations on any false
arrest or imprisonment claim he intended to bring. *Id*. at 394–
95. Therefore, Wrice had at most two years from the date of his
conviction to file a federal false arrest claim, *id.* at 387, and

only one year to file an Illinois false arrest claim, *see*

*Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005).

Wrice waited until August 2014 to file his false arrest and

imprisonment claims, so I must dismiss them as untimely. Wrice

has conceded this point in his opposition brief. *See* Dkt. No.

45 at ¶ 26 (voluntarily dismissing Counts II and VII).

### 3. Excessive force claim (Count III)

In Count III, Wrice alleges that he was the victim of

torture and physical abuse in violation of the Fourth Amendment.

The City Defendants argue that the statute of limitations

started to run on such a claim when the allegedly excessive

forced was used against Wrice in September 1982. *See Evans v.*

*Poskon*, 603 F.3d 362, 363 (7th Cir. 2010) (citing *Wallace* for

the proposition that excessive force claims accrue immediately).

Wrice concedes that Count III is untimely, so I dismiss it with

prejudice. *See* Dkt. No. 46 at 3 n.3 (acknowledging that *Wallace*

is fatal to Count III); *see also* Dkt. No. 45 at ¶ 26

(voluntarily withdrawing Count III).

### 4. Coerced confession claim (Count IV)

In a recurring theme, the City Defendants argue that Count

IV is untimely because Wrice's coercive interrogation claim

accrued in September 1982 when he was allegedly tortured.

The primary constitutional basis for Wrice's coercive

interrogation claim is his Fifth Amendment privilege against

self-incrimination.[6]  The Supreme Court has held that "mere
coercion does not violate the text of the Self–Incrimination
Clause absent use of the compelled statements in a criminal case
against the witness."  *Chavez v. Martinez*, 538 U.S. 760, 769
(2003).  In other words, Wrice could not have asserted a viable
Fifth Amendment claim until the prosecution used his coerced
confession against him at trial.

Once the state obtained a conviction against Wrice using
his allegedly coerced confession, *Heck v. Humphrey*, 512 U.S. 477
(1994), barred him from asserting a Fifth Amendment claim until
his state conviction had been set aside.  The *Heck* bar applied
because any claim that Wrice's confession was coerced would have
"necessarily impl[ied] the invalidity of his conviction."  *Id.*
at 487.  "[W]here (as in this case) the plaintiff's conviction
rested largely upon [an] allegedly coerced confession, a
coercive interrogation claim necessarily impugns the validity of
the conviction."  *Tillman*, 813 F. Supp. 2d at 970 (collecting
cases); *see also Taylor v. City of Chicago*, 80 F. Supp. 3d 817,
826 (N.D. Ill. 2015) (Lee, J.); *Kitchen*, 781 F. Supp. 2d at 735.
The state judge who ordered a new trial in December 2013 found
that Wrice's confession was central to the prosecution's case
such that evidence of coercion was enough to cast doubt on the

---

[6] The parties have not discussed whether the substantive due
process component of Wrice's coercive interrogation claim is
time barred, so I take no position on that issue.

validity of the resulting conviction. *See* Compl. at ¶ 99. The
centrality of Wrice's confession to the prosecution's case means
that *Heck* barred him from bringing a coerced confession claims
until his underlying conviction had been set aside. *See Matz v.
Klotka*, 769 F.3d 517, 530-31 (7th Cir. 2014) (holding that *Heck*
barred coerced confession claim where judge "relied heavily" on
the confession at sentencing such that successful § 1983 claim
would necessarily imply the invalidity of the sentence); *cf.
Franklin v. Burr*, 535 F. App'x 532, 533-34 (7th Cir. 2013) (*Heck*
did not bar coerced confession claim where conviction rested on
guilty plea such that successful § 1983 would *not* cast doubt on
validity of conviction).[7]

The City Defendants argue that *Moore v. Burge*, 771 F.3d 444
(7th Cir. 2014), renders Wrice's coercive interrogation claim
untimely. That argument is based on a misreading of the
constitutional basis for Wrice's claim. The plaintiffs in *Moore*
"contend[ed] that Burge or his henchmen physically abused them
during interrogations," not that coerced confessions were used

---

[7] *Matz* and *Franklin* show that whether a Fifth Amendment coerced
confession claim is subject to deferred accrual under *Heck* turns
on whether and how the confession was used to obtain a
conviction. *See Patrick v. City of Chicago*, No. 14 C 3658, 2015
WL 1880389, at *3 (N.D. Ill. Apr. 23, 2015) ("whether a Fifth
Amendment claim is *Heck*-barred is a case-by-case inquiry, not a
categorical rule"); *contra Saunders v. City of Chicago*, 2013 WL
6009933, at *6 (N.D. Ill. Nov. 13, 2013) (Dow, J.) (holding that
all Fifth Amendment coerced confession claims accrue immediately
even when the confession forms the basis for a conviction).

against them at trial.  *Id*. at 445.  "[A]ll five plaintiffs
stress[ed] the injuries they say they suffered at the hands of
the police *before judicial proceedings began*."  *Id*. at 446
(emphasis added).  Because the coercive interrogation claims in
*Moore* were complete before judicial proceedings began, the
Seventh Circuit held that the claims were immediately actionable
and did not threaten to undermine the validity of the
subsequently obtained convictions.  *Id*. at 445-46.  Wrice's
claim is distinguishable from the claims in *Moore* because it
rests on his Fifth Amendment privilege against self-
incrimination, which is not violated until a coerced statement
is used against a defendant in a judicial proceeding.  *See*
*Taylor*, 80 F. Supp. 3d at 825-26 (distinguishing *Moore* on the
same ground).

In sum, Wrice's coerced confession claim under the Fifth
Amendment accrued in May 1983 when his confession was used
against him at trial, but the claim was tolled until December
2013 when a state judge granted him a new trial.  Wrice filed
suit in August 2014, well within the two-year statute of
limitations that governs § 1983 claims in Illinois.

### 5. Conspiracy claims (Counts V)

In Count V, Wrice claims that all nine individual
Defendants conspired to commit the constitutional violations
alleged in Counts I through IV.  Compl. at ¶ 124 ("§ 1983

conspiracy claim). He also claims that Defendants were part of a "racially motivated conspiracy" to deprive him and other African American suspects of equal protection of the laws and/or equal privileges and immunities under the law in violation of 42 U.S.C. § 1985(3). *Id*. at ¶ 125. Finally, Wrice alleges that the three Officer Defendants, despite having knowledge of the racially motivated conspiracy and the power to prevent it, failed or refused to do so in violation of 42 U.S.C. § 1986. *Id*. at ¶ 126.

Defendants have moved to dismiss the § 1983 conspiracy claim in Count V on the ground that Wrice's allegations are vague and generalized. Wrice concedes, as he must, that his § 1983 conspiracy claim is premised only on his viable constitutional claims: Count I (*Brady* claim) and Count IV (coerced confession claim). *See Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) (noting that "conspiracy is not an independent basis of liability in § 1983 actions"). A complaint alleging a "vast, encompassing conspiracy...must meet a high standard of plausibility." *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009). Wrice has not met this heightened plausibility standard with respect to his *Brady* or coerced confession conspiracy claims.

The complaint does not allege facts from which a plausible inference can be drawn that nine public officials--i.e., the two

police officers who allegedly tortured him, their commanding officers, the lead prosecutor at Wrice's trial, Richard M. Daley, and three CPD officials who assumed office years after the trial--agreed to suppress evidence of police torture that would have been exculpatory at Wrice's trial. Only Sgt. Byrne and Det. Dignan were allegedly aware that Williams had been tortured. It is difficult to understand how seven other state actors could have conspired to suppress evidence of which they were not aware. With respect to Wrice's broader allegation about an undisclosed pattern or practice of torturing African American suspects, the complaint is devoid of facts suggesting that all nine Defendants agreed to conceal those facts from Wrice in an effort to secure and sustain his conviction. *See Beaman*, 776 F.3d at 511-12 (rejecting argument that *Brady* conspiracy can be inferred from simple fact that all defendants took actions that helped secure and sustain conviction).

As for Wrice's conspiracy claim based on his coerced confession, that constitutional violation was complete when the confession was used against him at trial. *See Chavez*, 538 U.S. at 769. Sgt. Byrne and Det. Dignan are the only Defendants who knew that Wrice had been tortured into confessing before his trial. ASA Lampkin introduced the confession into evidence at trial, but Wrice has not alleged that she knew the confession was the product of police torture. The other six individual

Defendants played no role in allegedly coercing Wrice into confessing.  Nothing in the complaint plausibly suggests that Wrice's coerced confession was part of a grand conspiracy among nine state actors, seven of whom were unaware of the underlying coercion and three of whom did not assume office until years after Wrice's trial.

In sum, Wrice has framed his § 1983 conspiracy claim in implausibly broad terms.  *See Andrews*, 660 F. Supp. 2d at 879-80 (dismissing conspiracy claim where plaintiff made "general allegations that all defendants conspired with all other defendants and everything alleged against one is alleged against all").

### 6. *Monell* claim (Count VI)

In Count VI, Wrice seeks to hold the City of Chicago liable for the federal constitutional violations he alleges in Counts I through V.  "If the plaintiff fails to [allege] a [plausible] violation of his constitutional rights in his claim against the individual defendants, there will be no viable *Monell* claim based on the same allegations." *Swanigan v. City of Chicago*, 775 F.3d 953, 962 (7th Cir. 2015) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).  In light of my earlier rulings on Wrice's federal constitutional claims, Count VI survives only as to the City's potential liability under *Monell*

for an alleged *Brady* violation (Count I) and a coerced confession claim (Count IV).

The City has not moved to dismiss Count VI on any ground other than Wrice's supposed failure to plead any actionable constitutional claims, so I reserve judgement on whether Wrice's alleged constitutional injuries resulted from a municipal policy or custom.

### 7. Malicious prosecution claim (Count VIII)

In Count VIII, Wrice alleges that the three Officer Defendants, acting without probable cause, initiated a malicious prosecution against him and conspired with the other individual Defendants to continue that prosecution. Compl. at ¶ 138.

"Under Illinois law, to state a malicious prosecution claim, [Wrice] must show '(1) the commencement or continuation of an original criminal or civil proceeding by the defendants; (2) termination of the proceeding in his favor; (3) the absence of probable cause; (4) the presence of malice on the defendants' part; and (5) damages.'" *Wade v. Collier*, 783 F.3d 1081, 1085 (7th Cir. 2015) (quoting *Swearnigen-El v. Cook County Sheriff's Dep't*, 602 F.3d 852, 863 (7th Cir. 2010)).

Defendants argue that Wrice's malicious prosecution claim is implausible for three reasons: (1) Wrice's own allegations show that the state had probable cause to prosecute him for K.B.'s rape; (2) Wrice had not pleaded facts from which an

inference of malice can be drawn; and (3) Wrice's criminal case was not terminated in a manner indicative of his innocence.

I start with Defendants' third argument. "The tort of malicious prosecution under Illinois law includes among its elements a demonstration that the assertedly wrongful prosecution terminated in the plaintiff's favor in a manner implying innocence." *Bridewell v. Eberle*, 730 F.3d 672, 677 (7th Cir. 2013). Wrice's complaint says that the state dismissed all charges against him after Judge Richard Walsh granted him a new trial in December 2013. Compl. at ¶¶ 69, 100. The complaint is silent, however, about why the state abandoned its case against Wrice. Wrice cannot ignore the reason(s) behind the state's abandonment because Illinois does not treat all *nolle prosequi* orders the same for purposes of malicious prosecution claims. *See Deng v. Sears Roebuck & Co.*, 552 F.3d 574, 576 (7th Cir. 2009). "A bare *nolle prosse* without more is not indicative of innocence." *Washington v. Summerville*, 127 F.3d 552, 558 (7th Cir. 1997).

In *Swick v. Liautaud*, 662 N.E.2d 1238 (Ill. 1996), the Illinois Supreme Court adopted the majority rule that "a criminal proceeding has been terminated in favor of the accused when a prosecutor formally abandons the proceeding via a *nolle prosequi,* unless the abandonment is for reasons not indicative of the innocence of the accused." *Id.* at 1242-43 (citing

Restatement (Second) of Torts §§ 659, 660, 661 (1977)). "The abandonment of the proceedings is not indicative of the innocence of the accused when the *nolle prosequi* is the result of...the impossibility or impracticability of bringing the accused to trial." *Id.* at 1243; *see also Northfield Ins. Co. v. City of Waukegan*, 701 F.3d 1124, 1132 (7th Cir. 2012) (noting that *nolle prosequi* order is not indicative of innocence if state abandoned its case because key witness was unavailable).

Count VIII must be dismissed, without prejudice, because the complaint does not support an inference that the *nolle prosequi* order entered in state court was indicative of Wrice's innocence. The more natural inference is that the state abandoned its case against Wrice because Kenny Lewis--the only prosecution witness whose testimony was not tainted by coercive interrogation practices--was no longer alive in December 2013. The state judge who denied Wrice a certificate of innocence held that Lewis's trial testimony, which he never recanted, was sufficient to defeat Wrice's claim of actual innocence. *See* Dkt. No. 42-1 at 11-12. If Wrice intends to replead his malicious prosecution claim, he must allege facts to overcome the natural inference that the *nolle prosequi* order entered in state court reflected nothing more than the impracticability of retrying Wrice without Kenny Lewis's testimony.

**8. Intentional infliction of emotional distress (Count IX)**

In Count IX, Wrice alleges that all nine individual Defendants engaged in "extreme and outrageous conduct" for their roles in his prosecution and allegedly wrongful conviction for K.B.'s rape. Compl. at ¶¶ 143-44. I agree with Defendants that Count IX is time barred.

"The limitations period for tort claims, such as intentional infliction of emotional distress, against governmental entities and their employees...is only one year pursuant to 745 ILCS 10/8-101." *Evans v. City of Chicago*, 434 F.3d 916, 934 (7th Cir. 2006). "[A] claim of intentional infliction of emotional distress in the course of arrest and prosecution accrues on the date of the arrest." *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013) (citing *Evans*, 434 F.3d at 934). Wrice counters that intentional infliction of emotional distress is a "continuing tort" that did not accrue until December 2013 when he was released from prison. Dkt. No. 43-1 at 37. The Seventh Circuit has squarely rejected the notion that an intentional infliction of emotion distress claim "accrue[s] anew every day" of an allegedly wrongful imprisonment. *Bridewell*, 730 F.3d at 678. "The idea that failing to reverse the ongoing effects of a tort restarts the period of limitations has no support in Illinois law—or in federal law either." *Id*.

Wrice's claim for intentional infliction of emotional distress accrued no later than May 1983 when he was convicted. Yet Wrice did not bring that claim until August 2014, well beyond the one year statute of limitations. Therefore, I dismiss Count IX as untimely.

### 9. Civil conspiracy (Count X)

I have dismissed all of Wrice's state law claims, so his civil conspiracy claims necessarily fails. *See Siegel v. Shell Oil Co.*, 656 F. Supp. 2d 825, 836 (N.D. Ill. 2009) (St. Eve, J.) (under Illinois law, "there must be an independent cause of action underlying a plaintiff's conspiracy claim").

### 10. Respondeat superior (Count XI)

Wrice's state law *respondeat superior* claim fails because none of his underlying state law claims are plausible. *See Lawlor v. N. Am. Corp. of Ill*, 983 N.E.2d 414, 427 (Ill. 2012) (employer cannot be liable under *respondeat superior* unless employee plausibly committed tort).

### 11. Indemnification claim (Count XII)

Wrice has sued Cook County and the Cook County State's Attorney's Office on the ground that they are responsible for any judgment entered against ASA Lampkin or Daley. Compl. at ¶ 159. Because I have granted ASA Lampkin's and Daley's respective motions to dismiss, *see supra* at §§ II.A and II.B, I

must dismiss Wrice's indemnification claim against Cook County and the Cook County State's Attorney's Office.

### D. Section 1983's personal involvement requirement

"It is well-established that a plaintiff only may bring a § 1983 claim against those individuals personally responsible for the constitutional deprivation." *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 614 (7th Cir. 2002). Wrice "may not rely on the doctrine of respondeat superior to hold supervisory officials liable for the misconduct of their subordinates." *Id.* "Rather, the supervisory officials also must have had some personal involvement in the constitutional deprivation, essentially directing or consenting to the challenged conduct." *Id.* (citing *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)).

Three City Officials, Leroy Martin, and Jon Burge have moved for dismissal on the ground that they were not personally involved in either of Wrice's surviving constitutional claims: (1) his *Brady* claim in Count I based on the state's failure to disclose before trial that Williams had been tortured into implicating Wrice in K.B.'s rape and (2) his coerced confession claim in Count IV, a constitutional violation that was complete when the state introduced Wrice's confession at trial.

## 1. City Officials

Terry Hillard, Thomas Needham, and Gayle Shines (collectively, "the City Officials") argue that they were not personally involved in either the alleged *Brady* violation or Wrice's allegedly coerced confession and should be dismissed from the case. The City Officials did not assume office until seven to fifteen years after Wrice's conviction. Because they played no role in Wrice's arrest, interrogation, or prosecution, they cannot be held responsible for allegedly coercing him into confessing. *See Hill v. City of Chicago*, No. 06 C 6772, 2009 WL 174994, at *5 (N.D. Ill. Jan. 26, 2009) (St. Eve, J.) (dismissing coerced confession claim against police officers who "had no contact or interaction with Hill during his arrest and interrogation").

As for the City Officials' alleged concealment of *Brady* material, Wrice has not alleged that they came into possession of any exculpatory information relating to his case that was known to the state at the time of his original trial. *Cf. Kitchen*, 781 F. Supp. 2d at 729 (denying motion to dismiss *Brady* claim against City Officials because they allegedly suppressed evidence of Kitchen's innocence after assuming public office). In essence, Wrice is complaining that the City Officials failed to follow leads that may have uncovered *Brady* material known to the state at the time of his trial (i.e., that Sgt. Byrne and

Det. Dignan tortured Wrice).[8]  The failure to reinvestigate an old criminal case does not violate due process.  *See Whitlock*, 682 F.3d at 588-89.

In sum, the City Officials did not personally participate in Wrice's allegedly coerced confession or any alleged *Brady* violation, so I dismiss them from this case.

### 2. Leroy Martin

At the time of Wrice's prosecution, Leroy Martin ("Martin") was Commander of the Area 2 Detective Division.  Compl. at ¶ 10. In that capacity, Martin directly supervised Lieutenant Jon Burge and was the command supervisor of Sgt. Byrne.  *Id*.  Martin later served as Superintendent of the Chicago Police Department from 1987 to 1992.  *Id*.

Martin knew about Wrice's allegations that Sgt. Byrne and Det. Dignan had tortured him, yet Martin failed to investigate those allegations and allowed Wrice's confession to be used against him at trial.  *Id*. at ¶ 66.  Martin's apparent ratification of coercive interrogation practices allegedly used to obtain Wrice confession makes him a plausible participant in the underlying Fifth Amendment violation that occurred when the

---

[8] *See* Compl. at ¶ 82 (faulting Shines for failing to investigate allegations of police torture that were brought to her attention); ¶ 88 (accusing Shines of concealing sustained findings of torture and abuse of other suspects); ¶ 90 (criticizing Hillard and Needham for overturning torture findings and refusing to investigate other allegations of torture).

confession was used against Wrice at trial.  *See Kitchen*, 781 F.
Supp. 2d at 736 (denying Martin's motion to dismiss § 1983 claim
based on supposed lack of personal participation).

Martin's failure to investigate allegations of police
torture against black suspects also makes him a plausible
participant in concealing *Brady* material that Wrice could have
used to cast doubt on the voluntariness of his own confession
and Williams's trial testimony.

### 3. Jon Burge

Jon Burge, the commanding officer of the Area 2 violent
crimes unit, was a more active participant in the alleged *Brady*
and Fifth Amendment violations than Martin.  Burge allegedly hid
from prosecutors that Wrice's confession and Williams's
statement were the products of torture.  Compl. at ¶ 45.  These
coercive interrogations were allegedly carried out with Burge's
"encouragement, participation, and ratification."  *Id.* at ¶ 47.
In light of these allegations, there is a plausible factual
basis for holding Burge personally responsible for suppressing
*Brady* material and violating his Fifth Amendment right against
self-incrimination.

### III. Conclusion

For the reasons stated above, I dismiss Richard M. Daley,
Terry Hillard, Bertina Lampkin, Thomas Needham, and Gayle Shines
from the case and grant the City Defendants' motion to dismiss

as to Count I (except the embedded *Brady* claim); Counts II;

Count III, Count V (except §§ 1985 and 1986 claims); Count VI

(except as to the *Brady* and coerced confession claims); Count

VII; Count VIII (without prejudice); Count IX, Count X, Count

XI, and Count XII (except against the City).

**ENTER ORDER:**

_____

**Elaine E. Bucklo**
United States District Judge

Dated: September 25, 2015