IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STANLEY WRICE, | ) | |
|     Plaintiff, | ) | |
| | ) | No. 14 C 5934 |
| | ) | |
| v. | ) | |
| | ) | The Hon. Elaine E. Bucklo |
| | ) | |
| JON BURGE, et al., | ) | Magistrate Judge Sheila Finnegan |
|     Defendants. | ) | |

**MOTION TO QUASH SUBPOENAS OR IN THE ALTERNATIVE FOR A
PROTECTIVE ORDER ON BEHALF OF THIRD PARTIES
KAYLA BENSING, KIRA LIRNER, QUINN THACKER,
AND JAIMIE VAILLANCOURT**

Non-parties Kayla Bensing, Kira Lerner, Quinn Thacker, and Jaimie Vaillancourt (collectively "Students") move this Court to quash defendants' subpoenas for records and depositions. (*See* Notices of Deposition Pursuant to Subpoena, **Group Ex. A**; Subpoenas for Records, **Group Ex. B**.)[1] In the alternative, the Students move this Court for an entry of a protective order regarding the use of their documents, testimony, and videotaped depositions. This Court should quash the subpoenas or issue a protective order because the discovery sought subjects the Students, third parties who had, at most, tangential involvement with any issue in this case and no involvement with any relevant issue, to undue hardship and undue burden. Fed. R. Civ. P. 26(c), 45(d).

**BACKGROUND**

In early 2011, the Students took an undergraduate class at Northwestern University's Medill School of Journalism taught by David Protess, a professor and journalist whom defendants

---

[1] Defendants have not properly served non-party and movant Jaimie Vallaincourt with any subpoena, though, it has been provided to Kayla Bensing, Kira Lerner, and Quinn Thacker.

1

have already subpoenaed, who has sought and received relief from this Court, and who has produced documents to defendants. The class focused on investigative journalism, rather than legal theory or practice.

The student-journalists investigated the case of Stanley Wrice, who had at that time been in prison for nearly 28 years, following his 1983 conviction for the rape and sexual assault of K.B. The Students located and interviewed witnesses who had knowledge of facts related to Wrice's case. For their work in Protess's class, the Students received grades and college credit. More than five years after their participation in the class had come to a close, defense counsel served certain of the Students with subpoenas for both videotaped depositions and for records, including "[a]ll documents, including e-mail messages, that refer or relate, in any way, to the investigation of the Stanley Wrice case." (*See* Records Subpoenas, **Group Ex. B**.)

Meanwhile, defense counsel has also sought records and deposition testimony from Protess in this case. Protess, also a third party to this case, moved for a protective order covering documents produced and his deposition. (*See* E.C.F. Doc. 78-1.) In that motion, Protess highlighted defense counsel's secondary career as a documentary film producer, which Protess claimed involved splicing clips of Protess's prior video depositions from other cases in a manner that paints Protess in a negative light. (*See* E.C.F. Doc. 78-1, p. 6.) Protess's motion also reports the possibility of a sequel film. (*See id.*) The Students are therefore appropriately concerned that their documents, deposition transcripts, and videotaped depositions will end up in such a sequel, in other future documentaries, in other litigation unrelated to this case, and in the general public domain.

**ARGUMENT**

I.  **The Court Should Quash the Subpoenas Issued in this Case Because They Subject the Students, Third Parties, to an Undue Burden.**

The Court should limit discovery when it is unreasonably cumulative or duplicative, or when the burden of the discovery outweighs the benefit. *Moore v. Plasmacare, Inc.*, 2012 WL 602623, at *1 (S.D. Ind. Feb. 23, 2012) (citing Fed. R. Civ. P. 26(b)(2)(c)). "In the context of third party discovery, courts should be especially careful in protecting the parties from excessive or oppressive discovery." *Id.* at *2 (granting a motion for protective order when the information sought from a third party was duplicative and potentially prejudicial to one of the parties).

The court should quash a subpoena to a non-party witness if the subpoena subjects a person to an undue burden. *Uppal v. Rosalind Franklin Univ. of Med. and Sci.*, 124 F. Supp. 3d 811, 813 (N.D. Ill. 2015) (citing Fed. R. Civ. P. 45(d)(3)(A)(iv)). The subpoenaed individual's status as a third party is a significant factor to be considered in determining whether the discovery presents an undue burden. *U.S. v. Amerigroup Illinois, Inc.*, 2005 WL 3111972, at *4 (N.D. Ill. Oct. 21, 2005) (holding that the "special weight" afforded a third party was important in quashing a subpoena to that party); *see also Cusimano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) (holding that "[n]on-parties have a different set of [discovery] expectations [than parties]. Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight" in evaluating a motion to quash). Furthermore, quashing a subpoena is justified when the materials sought are unlikely to lead to probative or relevant information. *Northwestern Mem. Hosp. v. Ashcroft*, 362 F.3d 923, 930-31 (7th Cir. 2004) (affirming the quashing of a subpoena where the party who had issued the subpoena sought records that had "meager" probative value); *Uppal*, 124 F. Supp. 3d at 815 (quashing a subpoena to a third party when the third party's knowledge was irrelevant to the claims of the underlying lawsuit).

3

The Students, wholly uninvolved in the conflict between the parties in this case, would be subjected to an undue burden if forced to comply with the Subpoenas. First, a search for the records requested by counsel would be unduly burdensome. The Records Subpoenas seek "all documents" referring in any way to the Students' investigation of the Stanley Wrice case. Complying with the Records Subpoenas would require the Students to sift through emails, computers, and paper documents that are over half a decade old and not be easily accessible, if at all. Such a search would be costly in terms of both time and effort. Second, preparing for and appearing at a deposition would be unduly burdensome to the Students, both in terms of time and energy expended.

There is nothing to weigh on the other side of the ledger. The students have nothing – neither documents nor testimony – that would likely lead to relevant information in this case. The underlying complaint in this case seeks relief as a result of alleged police misconduct which occurred thirty years ago, before the Students were born. The Students have no information that is relevant to Stanley Wrice's claims that he was tortured by police officers in the 1980s or to any defense to those claims. Any investigation the Students performed regarding the identity of the person who actually committed the crime of which Stanley Wrice was convicted in the 1980s has nothing to do with whether Stanley Wrice was tortured by police officers—the heart of the claim at issue in this case. Because the information sought does not bear on any material issue in the instant lawsuit, the subpoena should be quashed. *Envtl. Law and Policy Ctr. v. Syngenta Crop Prot., LLC*, 2011 WL 2837414, at *1 (N.D. Ill. July 13, 2011) (citing *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 993 (7th Cir. 2002)) (noting that subpoenas must be quashed if the information sought would not assist in the exploration of a material issue).

Judge Cole's opinion in *Uppal* is instructive. Uppal had been terminated from a hospital's residency program in 2005, and later sued her medical school for failing to help place her in another residency program. *Uppal*, 124 F. Supp. 3d at 812. Uppal subpoenaed a third party doctor who was employed by the hospital that had terminated her on the theory that the doctor might have information about the plaintiff's behavior during her residency. *Id.* at 812-13. The court began by reciting the system's protection of third parties:

> The rationale for the undoubted solicitude accorded non-parties is that, although discovery is by definition invasive, parties to a law suit must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations. Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to *special weight* in evaluating the balance of competing needs.

124 F. Supp. 3d at 813 (emphasis in original) (citing *Cusimano*, 162 F.3d at 717). The court held that any misconduct that the plaintiff engaged in during her residency in 2005 had nothing to do with her lawsuit against her medical school for its subsequent unrelated conduct years later. *Id.* at 815. The court therefore quashed the subpoena to the third party doctor. *Id.* The same holds true here, where the Students' 2011 investigation into who actually committed the crime for which Stanley Wrice was convicted has nothing to do with alleged police torture of Stanley Wrice that took place in 1983.[2]

---

[2] Not only did the Students' work have no bearing on the underlying events that led to the instant § 1983 suit, but that work has also not impacted the winding legal proceedings in Wrice's case. Indeed, as noted by Protess in his motion seeking a protective order,

> In February 2012, the Illinois Supreme Court remanded Wrice's petition to the trial court for further proceedings under the Post-Conviction Hearing Act, 725 ILCS § 5/122-1, *et seq.*, giving no consideration to the [Students' work] supplied in [an amicus brief filed by the Chicago Innocence Project]. On January 25, 2013, the Circuit Court of Cook County found that Wrice was entitled to an evidentiary hearing. After a hearing on December 10, 2013, the court granted Wrice a new trial. The ruling was not based on [the Students' work] submitted during post-conviction proceedings or a determination of innocence. On December 12, 2013, the State dismissed all charges against Wrice.

Mot. Seeking a Protectice Order, E.C.F. Doc. 78-1, at 3-4. Accordingly, at every stage of the facts leading to the instant case—the initial alleged torture of Wrice, his conviction in the 1980s, and his eventual release—the students'

The Students' status as third parties entitles them to special consideration by this court. They have no interest at stake in this case, and no desire to be pulled into a dispute in which they were only tangentially involved – for an extremely brief period of time – as undergraduate students standing on the sidelines. *See Cusimano*, 162 F.3d at 717 (holding that third party status is entitled to special weight in the undue burden analysis, particularly when the third party "ha[s] no dog in the fight."). The Students' third party status, when coupled with the time-consuming nature of compliance with the subpoenas and the lack of relevance or probative value of any information obtained from the Students, demonstrate that the subpoenas constitute an undue burden to the Students. The Court should quash those subpoenas.

## II. Alternatively, the Court Has Good Cause to Limit the Dissemination of the Students' Documents, Deposition Video and Transcript for Use in This Case Only.

As explained above, third parties are entitled to special protection in the discovery process. This status applies to protective orders as well as subpoenas. Furthermore, as noted above, defense counsel in this case has, in the past, used video depositions of individuals taken in connection with civil cases in a widely distributed and publicized documentary of which counsel was a producer (and that is available on Showtime and Amazon and has been reviewed by, among others, the *Chicago Tribune* and *New York Times*). (*See* E.C.F. Doc. 78-1.) If defense counsel follows past practice and uses material obtained through discovery for publicity and personal benefit, the Students could be harassed, oppressed, and embarrassed. For multiple reasons, including applicable Supreme Court precedent, the Students must be protected from counsel's potential actions.

---

work has been, at best, completely tangential and certainly of no legal relevance to this civil suit against police offers whom he alleges tortured him into producing a confession.

### A. Supreme Court Precedent Does Not Allow Unrestricted Dissemination of All Materials Obtained in Discovery.

Given defense counsel's track record, there is a risk that materials obtained through the discovery processes in this case will be widely disseminated to the public. The Students are young professionals in the beginning years of their careers in law, journalism, and business. They do not want – nor is it appropriate – for communications and work they conducted as college students to be widely circulated, cemented in the public sphere, and become part of any Google search associated with their names. A protective order is appropriate under these circumstances.

The Supreme Court has held that a litigant does not have an unrestrained right to disseminate information that has been obtained through pretrial discovery. *Seattle Times v. Rhinehart*, 467 U.S. 20, 31 (1984). The Court specified that discovery itself is provided only for the purpose of assisting and preparing for trial. *Id.* at 34. The Court noted that the trial court must have the ability to enforce protective orders due to the significant potential for abuse in pretrial discovery and depositions. *Id.* The court found that such potential is particularly acute in pretrial phases when litigants may obtain information that could be damaging to reputation and privacy if publicly released. *Id.* at 34-35. The government thus has a substantial interest—unrelated to expression—in preventing these abuses. *Id.* at 35. Such an interest, one that is grounded in privacy interests and the prevention of abuses that accompany discovery, is the authorization and use of protective orders. *Id.* at 35-36.

Courts within this district, interpreting *Seattle Times*, have granted protective orders when personal information could be used for purposes outside the instant litigation. *See O'Malley v. Village of Oak Brook*, 2008 WL 345607, at *2 (N.D. Ill. Feb. 6, 2008) (prohibiting dissemination of police personnel records that could contain personal information or constitute an invasion of privacy); *Sasu v. Yoshimura*, 147 F.R.D. 173, 176 (N.D. Ill. 1993) (forbidding the attorneys

7

involved in the case from using confidential information for other cases than the one at bar). Good cause for a protective order exists here in order to protect these students against the real potential of discovery abuse. A protective order in this case would ensure that the pretrial discovery conducted with respect to the Students is used for the only appropriate purpose – preparing for the trial of this cause – and not for some other purpose having nothing to do with this litigation.

    **B. A Protective Order is Necessary to Prevent Embarrassment and Oppression to the Students.**

The Students are concerned that counsel will use and potentially rearrange sections of their videotaped depositions to paint the Students or others in a negative light, potentially in the use of an upcoming documentary film, as others have argued he has done in the past. (*See* E.C.F. Doc. 78-1.) The plain language of Federal Rule of Civil Procedure 26 states that the Court has good cause to issue a protective order when doing so would prevent embarrassment or oppression. Fed. R. Civ. P. 26(c)(1). In an age when words are easily taken out of context, rearranged to make a point, and instantly disseminated to the world at large, protection of these young persons is particularly important.

Indeed, district courts within the Seventh Circuit have entered protective orders when such well-founded concerns have been raised. *See, e.g., Shultz v. Dart*, 2015 WL 4934552, at *3 (N.D. Ill. Aug. 18, 2015) (noting the increase in concerns for abuses in videotapes since *Felling*, including the posting of videos to the internet, where they are "virtually impossible" to remove, and may be published in "out-of-context snippets"); *Hobley v. Burge*, 225 F.R.D. 221, 226 (N.D. Ill. 2004) (granting motion for protective order over video transcripts in light of the potential embarrassment the third parties faced as a result of their depositions being played in the news media); *Felling v. Knight*, 2001 WL 1782360, at *3 (S.D. Ind. Dec. 21, 2001) (granting non-

parties' motion for protective order sealing deposition videos in light of potential abuse of cutting and splicing video transcripts to cause embarrassment to non-parties).

In fact, Judge Grady has explained that a party cannot use a deposition for purposes unrelated to the lawsuit at hand. *Jennings v. Peters*, 162 F.R.D 120, 122 (N.D. Ill. 1995). In *Jennings*, the court expressed concern that portions of the deposition of a union trustee would find its way into advertising materials for the union, and noted the plaintiff's concern that such materials would be reduced to soundbites and broadcast at union meetings. *Id.* at 121, 123. Use of the deposition for a purpose unrelated to trial preparation or settlement could cause the individual embarrassment, which justified the entry of a protective order. *Id.* at 123.

Counsel may not take the Students' depositions in this case for any purpose other than for preparation for trial or settlement. As set forth above, there is no plausible relevant reason why defense counsel is interested in discovery from the Students. It is also clear that the use of the Students' depositions outside of this case creates a serious and substantive risk of embarrassment and unwanted attention. The Students participated in this project for class credit. Indeed, despite the notoriety and attention the case received when Mr. Wrice's conviction was overturned, the Students sought no publicity for their brief involvement with the case. Defense counsel should not be allowed to drag them into the fray, and then—without their permission—use their likenesses outside the context of this case.

The dangers inherent in video editing have been explored by the courts of the Seventh Circuit, and defense counsel should not be permitted to create his own highlight reel of the Students' testimony and documents to suit his own interests, as he has done in the past with the

9

testimony of others. (*See* E.C.F. Doc. 78-1.)[3] Indeed, there is no reason for defense counsel, or anyone else, to use the Students' testimony outside the context of this case.

### CONCLUSION

**WHEREFORE**, non-party movants Kayla Bensing, Kira Lerner, Quinn Thacker, and Jaimie Vaillancourt request that this Court enter an Order quashing the subpoenas issued by defendants, or, in the alternative, for an Order prohibiting any party or person from disclosing or disseminating their documents, as well as the video and transcript of their depositions for any purpose other than prosecuting or defending this action.

Respectfully submitted,

Dated: September 14, 2016  /s/ Matthew V. Chimienti
One of the Attorneys for the Students

Ronald S. Safer
Kelly M. Warner
Matthew V. Chimienti
**Riley Safer Holmes & Cancila LLP**
Three First National Plaza
70 W. Madison St., Suite 2900
Chicago, IL 60602

---

[3] Nor may defense counsel profit off of the Students' videotaped testimony, whether it be through inclusion in a documentary or otherwise. *See Paisley Park Enters., Inc. v. Uptown Productions*, 54 F. Supp. 2d 347 (S.D.N.Y. 1999) (entering a protective order for the videotaped deposition of a rock star when one of the concerns surrounding the deposition was greater economic returns for the party seeking the deposition).

## **CERTIFICATE OF SERVICE**

I hereby certify that on **September 14, 2016**, I electronically filed the foregoing **Motion to Quash Subpoenas or in the Alternative for a Protective Order on Behalf of Third Parties Kayla Bensing, Kira Lerner, Quinn Thacker, and Jaimie Vaillancourt** with the Clerk of the Court using the ECF system, which sent electronic notification of filing on the same day to the individual attorneys of record.

/s/ Matthew V. Chimienti

4822-6792-4536, v. 4