# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| STANLEY WRICE, | ) | |
| Plaintiff, | ) | Case No. 14 CV 5934 |
| -vs- | ) | The Hon. Elaine E. Bucklo. |
| JON BURGE, *et al*., | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION *IN LIMINE* NO. 7 TO BAR THE TESTIMONY OF THE DEFENDANTS' EXPERT STEPHEN A. SALTZBURG**

Plaintiff, STANLEY WRICE, by his attorneys, respectfully requests that this Court bar the testimony of Defendants' expert witness Stephen A. Saltzburg at trial. In support of this Motion, Plaintiff states as follows:

## INTRODUCTION

Defendants' expert Stephen A. Saltzburg Plaintiff's is a criminal law professor at George Washington University, examining criminal justice issues and advising individuals concerning the privilege against self-incrimination in civil cases. *See Exh. 1, pgs. 1-2 (Saltzburg Expert Report)* At their depositions, in response to questions about whether they violated Plaintiff's constitutional rights, Defendants elected to assert their Fifth Amendment rights and declined to answer questions on the grounds that truthful answers could subject them to criminal liability.

As a result of Defendants' refusal to answer questions and participate in discovery in this matter, Plaintiff was deprived of the ability to develop evidence to support his claims, claims for which he bears the burden of proof. While all Americans undoubtedly have the right to avoid self-incrimination, having knowingly availed themselves of that right during discovery, Defendants must now live with the consequences of that election at trial. Under applicable law,

this includes the permissive adverse inference, which accompanies their silence. Specifically, the jury should be told that it is entitled to infer that truthful answers to questions Defendants refused to answer could incriminate them. *See In re High Fructose Corn Syrup Antitrust Litigation*, 295 F.3d 651, 663-664 (7th Cir. 2002) (the general rule is that an adverse inference may be drawn from such a refusal to answer in a civil case); *accord. Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); *Harris v. City of Chicago*, 266 F.3d 750, 753 (7th Cir. 2001). In order to be privileged by the Fifth Amendment, the answers a witness would give if he did answer the questions posed must have some tendency to subject that person to criminal liability. *Id*.

As an attempt blunt this adverse inference, Defendants would like Professor Saltzburg to testify at trial that "innocent" witnesses assert their Fifth Amendment rights and refuse to answer questions, and that after reviewing the 1983 trial record and the depositions taken in this case he "revealed clear reasons why these former officers might be well advised to claim the privilege.". *See Exh. 1, pgs. 7-9, citing Ohio v. Reiner*, 423 U.S. 17 (2001) (per curiam). Saltzburg did not speak to the Defendants in preparing his report, has conducted no studies about witnesses' invocations of their Fifth Amendment rights, and, by admission, has formed no opinion as to whether the Defendants violated Plaintiff's constitutional rights. *See Exh. 1, pgs. 2-7, 8-9; Exh. 2 (Saltzburg Resume).* Defendants nonetheless would like Saltzburg to testify at trial to his opinion as to Defendants' state of mind in invoking their privilege, which he believes is consistent with the principle that "innocent individuals have good reason to assert their privilege against self-incrimination in a civil case." *See Exh. 1, pgs. 11-12*.

Because under Rule 702, the proposed Defendants' expert testimony is neither relevant nor reliable, and it should be barred from trial. *See Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993) (a district court must ensure that expert evidence "both rests on a

reliable foundation and is relevant to the task at hand."); *Sanders v. City of Chicago Heights*, No. 13 C 0221, 2016 WL 4417257, at *4 (N.D. Ill. Aug. 19, 2016), *citing Higgins v. Koch Dev. Corp.*, 794 F.3d 697, 704 (7th Cir. 2015).

**EXPERT REPORT OF STEPHAN A. SALTZBURG**

Saltzburg's expert report begins with a citation to a United States Supreme Court case where, in a criminal trial, the Court found that a non-party witness who was given immunity by the government could assert her Fifth Amendment rights and refuse to answer questions at trial, even though that witness believed herself "innocent" of any wrongdoing, where the witness' testimony could subject her to criminal liability. *See Exh. 1, pgs. 7-8, citing Ohio v. Reiner*, 423 U.S. 17 (2001) (per curiam). From there, Saltzburg opines two "reasons" why Defendants "might be well advised to claim privilege even if the conduct alleged against them is untrue." *See Exh. 1, pgs. 8-9*. Saltzburg notes that Defendants may "fear that there may be statutes of limitations that have not expired" and that they would possibly face criminal prosecution. *See Exh., p. 9.* He opines that because Defendants' conduct against Plaintiff occurred 36 years ago, if they were to testify truthfully, they may make mistakes in recalling the facts due to "memory loss" and would be susceptible to being charged with perjury or obstruction as a result of their faulty memories "even if such charge would be mistaken." *See Exh. 1, pgs. 9-10*.

The second reason that Saltzburg opines for Defendants refusal to answer questions is because "criminal defense lawyers" will advise "virtually any individual who has been alleged to have committed criminal acts and alleged to have falsely denied them to invoke the privilege." *See Exh. 1 pgs. 10-11*. Thus, Saltzburg notes, lawyers will encourage their clients to invoke their Fifth Amendment rights at civil depositions to prevent them from making "mistakes and inconsistencies" in recalling events that are "ancient." *See Exh. 1, p. 11.* In conclusion,

3

Saltzburg maintains that the trier of fact "should be aware than an invocation of the privilege is not necessarily an admission of guilt or responsibility." *See Exh. 1, p. 11*. Saltzburg opines that since jurors are ignorant of the fact that "innocent" people are advised to assert the privilege against self-incrimination, they may "leap to an erroneous conclusion as to why the privilege was exercised and fail to recognize that innocent individuals may have good reason to rely upon the privilege when deposed in a civil case." *See Exh. 1, p. 12.* As set forth below, Saltzburg's proposed testimony is inadmissible because it is not helpful to the jury nor is it reliable.

**ARGUMENT**

Federal Rule of Evidence 702 provides that an expert witness may testify as to "scientific, technical, or other specialized knowledge" where such testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. In *Daubert*, the Supreme Court established a framework for determining whether proffered expert testimony meets the standard established by Rule 702. "*Daubert*, as extended to all expert testimony including non-scientific expert testimony, requires the district court to perform the role of gatekeeper and to 'ensure the reliability and relevancy of expert testimony.'" *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 607 (7th Cir. 2006), *quoting Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999); *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015). Rule 702 requires the district court judge to act as a gatekeeper to ensure that admitted expert testimony is relevant, reliable, and has a factual basis. *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 809 (7th Cir. 2012); *see also Daubert*, 509 U.S. at 589.

    A.    **Saltzburg's Expert Opinion is Not Relevant.**

An expert's legal conclusions and credibility determinations go to the relevancy requirement under *Daubert* and Rule 702. *See Jimenez v. City of Chicago*, 732 F.3d 710, 721

4

(7th Cir. 2013); Fed.R.Evid. 702(a). Rule 702 "requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue,'" which "goes primarily to relevance." *Daubert*, 509 U.S. at 591 (citation omitted). "An expert's testimony qualifies as relevant under Rule 702 so long as it assists the jury in determining any fact at issue in the case." *Stuhlmacher v. Home Depot U.S.A., Inc.*, 774 F.3d 405, 409 (7th Cir. 2014).

First, Saltzburg's proposed testimony is essentially being used as a stand-in for Defendants' testimony, as he will be testifying about the mental state of Defendants and their reasons for invoking their Fifth Amendment privilege. Saltzburg would like to inform the jury that Defendants assertions of their privilege and refusal to answer questions is likely due to "memory loss" and because their lawyers told them not to testify, not because of their culpability in violating Plaintiff's constitutional rights. *See Exh. 1, pgs. 8-12*. Thus, Saltzburg – not Defendants – will testify as to the reasons why they invoked their privilege.

Saltzburg's opinions thus purport to tell the jury what Defendants' silence means, what the Defendants' understand or believe the import of their own silence to be, and why they are invoking their Fifth Amendment rights. Expert assertions about another's subjective intent or knowledge are not helpful to the jury, which is equally if not much better suited to make these assessments than a party's paid expert. *See Isom v. Howmedica, Inc.*, No. 00 C 5872, 2002 WL 1052030, *1 (N.D. Ill. May 22, 2002) (barring proffered expert testimony concerning party's intent). Commentary about the Defendants' state of mind should be barred as it would effectively allow the plaintiff's expert:

> to substitute his inferences for those that the trier of fact can and should draw on its own. This is not permitted. Indeed, it is well established that 'testimony that does little more than tell the jury what result to reach' is unhelpful and thus inadmissible, and testimony regarding intent – essentially an inference from other facts – is even more likely to be unhelpful to the trier of fact.

5

*Hershey v. Pac. Inv. Mgmt. Co. LLC*, 697 F. Supp. 2d 945, 949-950 (N.D. Ill. 2010), *quoting Dahlin v. Evangelical Child & Family Agency*, 2002 WL 31834881, at *3 (N.D. Ill. Dec. 18, 2002). It is for the jury to determine the import of Defendants' silence, and whether it raises the inference that they violated Plaintiff's constitutional rights, not Saltzburg, and his opinion as to Defendants' motivation for invoking their Fifth Amendment rights will not help the jury make this determination. *United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991) (the touchstone of admissibility under Rule 702 is helpfulness to the jury).

Second, it will be for this Court, and not Saltzburg, to instruct the jury about whether, and to what extent, they may take an adverse inference from Defendants invocation of their Fifth Amendment rights. *See Panter v. Marshall Field Co.*, 646 F.2d 271, 294 n. 6 (7th Cir. 1981) ("It is not for witnesses to instruct the jury as to applicable principles of law, but the judge."). To admit Saltzburg's testimony about the import to place on Defendants' silence would improperly signal to the jury that it is appropriate to look to Saltzburg, not this Court, for legal guidance. *See Harbor Ins. Co. v. Cont'l Bank Corp.*, 922 F.2d 357, 366 (7th Cir. 1990). "The only legal expert in a federal courtroom is the judge," and as such, Saltzburg's legal opinion as to why Defendants are invoking their privilege is not relevant where this Court will instruct the jury regarding any adverse inference. *See e.g.*, *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003) ("The district court correctly ruled that expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible."), *citing United States v. Sinclair*, 74 F.3d 753, 758 n. 1 (7th Cir. 1996); *accord*, *Niebur v. Town of Cicero*, 136 F. Supp. 2d. 915, 920 (N.D. Ill. 2001) ("[T]he Court of Appeals is crystal clear that an expert may not 'improperly tell the jury why [a party's] conduct was illegal.' Expert witnesses are not allowed to

draw 'legal conclusions'"), *quoting Haley v. Gross*, 86 F.3d 630, 645 (7th Cir. 1996), and *West v. Waymire*, 114 F.3d 646, 652 (7th Cir. 1997).

Third, the "reasons" that Saltzburg opines for Defendants' invocation of their rights against self-incrimination – memory loss and because their lawyers told them to – are pure speculation, as Saltzburg did not actually speak to the Defendants. *See U.S. v. Kladouris*, 964 F.2d 658, 669-70 (7th Cir.1992) (District courts must ensure that expert opinion testimony is in fact expert opinion, not merely opinion given by an expert). The only valid "reason" that Defendants have for asserting his Fifth Amendment rights is because they believe that giving *truthful* answers to questions posed – such as, did you beat Plaintiff in the basement of Area 2 to coerce a false confession to be used against him and wrongfully incarcerate him for 31 years – may subject them to criminal liability. *See In re High Fructose Corn Syrup*, 295 F.3d at 663-664 (the Fifth Amendment may be invoked only where giving a truthful answer would have some tendency to subject the person being asked to criminal liability). Informing the jury that the Defendants invoked their Fifth Amendment rights simply because their memory was fuzzy is an improper opinion and irrelevant.

Fourth, Saltzburg's opinions about Defendants' "innocent" silence, and his explanations for why they refused to answer questions about Plaintiff's wrongful conviction, amount to improper credibility determinations. *United States v. Longstreet*, 567 F.3d 911, 919 (7th Cir. 2009) ("it is the jury's role to determine the credibility of the witnesses and weigh the evidence."); *Goodwin v. MTD Prods., Inc.*, 232 F.3d 600, 609 (7th Cir. 2000) (an expert may not tell the jury whom to believe, nor can he make credibility determinations). By informing the jury that there are other "innocent" reasons for the Defendants' silence, Saltzburg is opining that Defendants did not beat and coerce Plaintiff and others to provide false evidence against Plaintiff

7

and would testify to that fact absent "memory loss" and advice from counsel. It is for the jury to decide, based on this Court's instruction on the law, whether Defendants' violated Plaintiff's constitutional rights, and Saltzburg's opinions are not "helpful" on this question. *See Benson*, 941 F.2d at 604 ("[T]he jury does not need an expert to tell it whom to believe, and the expert's 'stamp of approval' on a particular witness' testimony may unduly influence the jury."); *United States v. Scheffer*, 523 U.S. 303, 313 (1998) (credibility determinations are for the jury who "are presumed to be fitted for the task by their natural intelligence and their practical knowledge of the affairs of life.").

      **B.**     **Saltzburg's Opinions Are Not Reliable.**

Although Plaintiff does not disagree that Professor Saltzburg is a distinguished scholar, his opinions fail in this case because they are not reliable. An expert must "substantiate his opinion" with sufficient facts. *Huey v. United Parcel Serv., Inc.*, 165 F.3d 1084, 1087 (7th Cir. 1999). Should the expert fail to meet this requirement, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). In his report, Saltzburg opines that Defendants invocation of their Fifth Amendment privilege is consistent with their "innocence," relying on the evidence from Plaintiff's 1983 trial and the transcripts from the depositions conducted in this case. *See Exh. 1, pgs. 2-7.* But Saltzburg did little more than the jury will be asked to do in Plaintiff's case – review the evidence and make a conclusion. *See Benson*, 941 F.2d at 604 ("An expert's opinion is helpful only to the extent the expert draws on some special skill, knowledge, or experience to formulate that opinion; the opinion must be an expert opinion (that is, an opinion informed by the witness' expertise) rather than simply an opinion broached by a purported expert."). Since it is the jury's responsibility to review the evidence and make its own

conclusions. *Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006) (proper to bar expert testimony regarding whether certain conduct constituted excessive force, as jury could make that determination on its own without assistance).

Saltzburg further stated that his opinion was based on his personal experience in "advising individuals concerning the privilege against self-incrimination in civil cases," and though his resume shows that he has been prolific in publishing legal articles, curiously none of his published words relate to the invocation of Fifth Amendment rights. *See Exh. 1, pgs. 2; Exh 2*. Saltzburg has conducted no studies nor interpreted any other such data regarding a witness' reasons for invoking the Fifth Amendment privilege and provided no detail as to the methodology involved in reaching his conclusions as to why Defendants' invoked their Fifth Amendment rights. *See Brown v. Burlington No. Santa Fe Ry. Co.*, 765 F.3d 765, 772 (7th Cir. 2014) ("Rule 703 requires the expert to rely on 'facts or data,' as opposed to subjective impressions"). Saltzburg failed to specify how his personal experience in "advising individuals" about the privilege gives him any specialized expertise in this area, beyond what every other attorney, or even law student, would have regarding this issue. *Deimer v. Cincinnati Sub-Zero Products, Inc.*, 58 F.3d 341, 344 (7th Cir. 1995) (as the gatekeeper, the trial court must "rule out" expert opinions based on "subjective belief or unsupported speculation."). Thus, where Saltzburg's opinion rests on nothing more than his say-so is reason to bar it. *Manpower, Inc. v. Ins. Co. of Pennsylvania*, 732 F.3d 796, 806 (7th Cir. 2013) ("The critical inquiry is whether there is a connection between the data employed and the opinion offered; it is the opinion connected to existing data only by the *ipse dixit* of the expert, that is properly excluded under Rule 702.").

WHEREFORE, Plaintiff respectfully requests that this Court grant Plaintiff's Motion *In Limine* No. 7, and bar the expert testimony of Stephen A. Saltzburg.

Respectfully submitted,

/s/ Jennifer Bonjean
One of Attorneys for Plaintiff

Jennifer Bonjean
THE BONJEAN LAW GROUP
1000 Dean Street, Suite 422
Brooklyn, NY 11238
(917) 566-3926

**CERTIFICATE OF SERVICE**

I, Jennifer Bonjean, an attorney, hereby certify that on June 10, 2019, I filed the foregoing via the Court's CM/ECF system and thereby served a copy on all counsel of record.

/s/ Jennifer Bonjean