# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STANLEY WRICE, ) | |
| ) | |
| Plaintiff, ) | Case No. 14 CV 5934 |
| ) | |
| -vs- ) | The Hon. Elaine E. Bucklo. |
| ) | |
| JON BURGE, *et al*., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S MOTION *IN LIMINE* NOS. 13-14 TO BAR CERTAIN
DEFENSE EXHIBITS AS SUBSTANTIVE AND DEMONSTRATIVE EVIDENCE**

Now comes Plaintiff, Stanley Wrice, by and through his counsel, and respectfully moves this Court to bar the introduction of certain defense exhibits into evidence. In support thereof, Plaintiff states as follows:

**Motion *In Limine* No. 13 – Motion to Bar the 1982 Police Reports of Defendants.**

Defendants Byrne and Dignan were the investigating officers on the Karen Byron assault, and, as such, conducted interviews and interrogations, and memorialized their impressions in their police reports. *See Exhs. 1-10 (Defts. Exhs. 27, 29-37)* At their depositions, both Defendants refused to answer any questions about the Byron investigation, including questions about their police reports, claiming their privilege against self-incrimination. Defendants will similarly invoke their Fifth Amendment rights at trial and refuse to answer questions about the Byron investigation. Despite Defendants refusal to participate, the defense would like to bolster Defendants credibility by admitting the police reports that they authored and endorsed with respect to their investigation, although they will not subject themselves to cross-examination about these police reports. *See Exhs. 1-10 (Defts. Exhs. 27, 29-37)* Where Defendants' self-created report are inadmissible hearsay, and untrustworthy, they should be barred.

Hearsay may not be admitted into evidence unless it meets a specific exception to the general rule. *See* Fed. R. Evid. 801-803. Police reports, in civil cases, are generally admissible and excluded as hearsay under the business records exception (FRE 803(6)) or the public records exception (FRE 803(8)). Fed.R.Evid. 803(6) & (8). Such public records may be excluded however if the party opposing admission establishes that the circumstances indicate a lack of trustworthiness. Fed.R.Evid. 803(6)(E) & (8)(B); *see also United States v. Romo*, 914 F.2d 889, 896 (7th Cir.1990). Further, FRE 803 does not remove the hearsay bar for a statement from a non-governmental third-party contained in a police report. This is because the presumption of reliability that serves as the premise for the public-records exception does not attach to third parties who themselves have no public duty to report. *Jordan v. Binns*, 712 F.3d 1123, 1133 (7th Cir. 2013). Accordingly, "third-party statements contained in a police report do not become admissible for their truth by virtue of their presence in a public record and instead must have an independent basis for admissibility." *Id*. at 1132; *Woods v. City of Chicago*, 234 F.3d 979, 986 (7th Cir. 2000) (noting same regarding third-party statements included in business records); *see also* Fed.R.Evid. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule.").

Here, the police reports authored by Defendants that the Defendants themselves seek to admit as substantive evidence are untrustworthy and contain third-party statements that are not excepted under the Rule.

First, the police reports were authored by the Defendant Byrne and attributed to Defendant Dignan, who at the time of the preparation of the reports, had an adversary relation to Plaintiff that they continue to maintain to this day. Thus, these records or reports created by, contributed to by, or containing an out-of-court statement by any Defendant in this case are

inherently untrustworthy and extremely prejudicial. Just as Plaintiff could not use a diary or other personal note to bolster his claim that Defendants coerced him into giving a fabricated confession to a crime he did not commit, so too must Defendants not be permitted to admit their own reports to prop up their defenses, especially where the Defendants refused to answer any questions about the Byron investigation during their depositions, instead invoking their Fifth Amendment rights against self-incrimination. The very nature of the claims at issue – including physically coercing a false and fabricated confession from Plaintiff, beating Bobby Joe Williams into falsely implicating Plaintiff, and the physically coerced statements of all three co-defendants, was the product of a conspiracy amongst Defendants, and the manipulation of evidence to ensure a conviction against Plaintiff for a crime he did not commit – calls into question the motivation of Defendants in the preparation of their reports. It would be unfair to admit these police reports where they were authored and attributed to Defendants who refuse to testify and stand-by their impressions. *See* Fed.R.Evid. 403; *see also Sanchez v. City of Chi.*, 880 F.3d 349, 359 (7th Cir. 2018) (Rule 403 allows the exclusion of otherwise relevant evidence "if its probative value is substantially outweighed by" various considerations, including unfair prejudice).

Second, the police reports contained in Defendants' Exhibits 33 and 37 (*Attached Exhs. 6 & 10*), contain hearsay within hearsay, as they go beyond the Defendants' first-hand recording of events, and incorporate statements made by third-parties. *Binns*, 712 F.3d at 1133 (third-party statements contained in a police report do not become admissible for their truth by virtue of their presence in a public record and instead must have an independent basis for admissibility) (citations omitted). These police reports contain summaries of statements made by non-party witnesses to the Defendants, and as interpreted by these Defendants. *United States v. Anderson*,

3

450 F.3d 294, 302 (7th Cir. 2006). Where witness statements made to Defendants, and recounted in the police reports are hearsay, they are not admissible.

Thirdly, these police reports are inherently prejudicial as they were created by Defendants, who are alleged to have manufactured false evidence against Plaintiff to wrongfully convict him and contain references to the evidence that Plaintiff claims was falsely created by Defendants. To admit the Defendants' police reports given that Defendants are unwilling to stand by them and testify at trial about the Byron investigation, is fundamentally unfair and prejudices Plaintiff who has no means to question Defendants' about the accuracy and veracity of the reports. *See* Fed.R.Evid. 403. For these reasons, that this Court grant his motion *in limine* and bar the admission of Defendants' police reports.

**Motion *In Limine* No. 14 – Motion to Bar the Defendants' Substantive and Demonstrative Exhibits of Karen Byron's Injuries.**

Due to no fault of the Plaintiff, photographs of Karen Byron's injuries suffered as a result of her assault that were taken at the hospital on September 10, 1982 were lost by the Circuit Court of Cook County. However, pictorial documentation of Byron's injuries from 1982 does exist – in the form of a diagram contained in Defense Exhibit 183, a chart that shows the burn patterns on Byron's body. *See Exh. 11 (Karen Byron Burn Sheet)* Plaintiff is also not objecting to the entirety of Ms. Byron's hospital records being admitted into evidence. *Defts. Exh. 183 (DEF 17191-17362)* Also, Byron's 1983 trial testimony, which includes information about her injuries, will be admitted at trial, as well as testimony from the trial describing the lost photos, and Dr. Nolan Lewis, Byron's physician in 1982, will also testify as to the injuries Byron sustained.

Despite the multitude of evidence to be admitted about Byron's injuries – injuries that Plaintiff does not contest Byron suffered – Defendants seek to admit as substantive evidence or as demonstrative exhibits, medical illustrations created specifically for this litigation by Pat

4

Thomas. *See Exhs. 12-15 (Defts. Sub. Exhs. 23-26; Defts. Demon. Exhs. A, B, C, D, Medical Illunstrations*) Undisputedly, Pat Thomas did not see Byron's injuries, and did not see photographs of Byron's injuries. Ms. Thomas created her medical illustrations from reading the 1983 trial testimony of Dr. Nolan Lewis, and then drawing what she believes Byron's injuries would have looked like on September 10, 1982.

But the four graphic illustrations Ms. Thomas created are unnecessary, as the 1982 pictorial document of Ms. Byron's injuries is already in the record. *See Exh. 11*. Moreover, the jury will hear Byron's prior trial testimony regarding her injuries, as well as evidence from the 1983 describing the pictures of her injuries, and Dr. Lewis will testify at trial about the injuries. Since four other pieces of evidence exist to provide context of the injuries, including a picture of Byron's injuries created around the date of her assault, the import of these graphic illustrations serves only to inflame and prejudice the jury against Plaintiff such their disturbing nature readily renders them substantially more prejudicial than probative. *See* Fed.R.Evid. 402, 403.

Instructive on this point is *Scott v. City of Chicago*, 724 F. Supp. 2d 917, 926 (N.D. Ill. 2010). In *Scott*, autopsy photos of the murder victim from the underlying criminal case were barred due to their graphic and prejudicial nature. Like here, *Scott* was a Section 1983 action initiated against a City and Chicago police officer after the plaintiff was coerced into falsely confessing to murder. *Id*. at 917. "It should be remembered," the Court said, "as defense counsel themselves point out, just what the parties' dispute really comes down to – whether to credit the scenario testified to by [Defendant officer] or the very different version of events by [Plaintiff]." *Id*.

The Court continued, "That being so, nothing but a diversion (and an overly prejudicial diversion at that) would appear to be created by introduction of the disputed photographs – they

make it neither more nor less probable that the version by one side or the other is credible." *Id*. This rationale applies equally here.

Plaintiff's trial is about whether Defendants beat Plaintiff and Bobby Joe Williams to coerce false evidence against Plaintiff that was used to wrongfully convict him of the Byron assault. The question is not whether Byron was actually assaulted, in fact, it is not in dispute that Rodney Benson, Michael Fowler, and Lee Holmes pled guilty to assaulting Byron. This case also does not present any question related to how severe Byron's injuries were – meaning that the extent of Byron injuries has no bearing on whether Defendants beat Plaintiff and Williams and manufactured false evidence. Defendants' desire to inundate the jury with graphic illustrations of Byron's injuries, which Plaintiff does not dispute, should be curtailed as irrelevant to the issues presented, given that these illustrations do not have a "tendency to make a fact more or less probable than it would be without the evidence" and where the illustrations do not relate to a fact that is "of consequence in determining the action." Fed.R.Evid. 401. Moreover, any minimal probative value of these illustrations is outweighed by the undue prejudice of presenting these graphic drawings to the jury. Fed.R.Evid. 403 (relevant evidence may be excluded where it is substantially outweighed by a danger of *** "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

Evidence is unfairly prejudicial where "its admission makes it likely that the jury will be induced to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *Smith v. Hunt*, 707 F.3d 803, 810 (7th Cir.2013), *quoting Thompson v. City of Chicago*, 472 F.3d 444, 456–57 (7th Cir.2006). Images, in particular, can be unfairly prejudicial if they are "sufficiently shocking or repulsive" to necessarily elicit an emotional response from the jury. *United States v. Souffront*, 338 F.3d 809, 825 (7th Cir. 2003). The four

6

medical illustrations are shocking, especially as they are in color, and would cause an emotional reaction in the jury that would prejudice Plaintiff.

Also, evidence of Byron's injuries will be admitted by *four* other pieces of evidence – Byron's medical records including the "burn sheet" showing a chart of her burns, Byron's 1983 trial testimony wherein she describes her own injuries, through Dr. Lewis, her treating physician, who will testify at Plaintiff's trial, through the admission of testimony from the 1983 trial describing the lost photographs of Byron's injuries. Further, admission of the medical illustrations may cause jury confusion, where the jury may think that they must consider how serious Byron's injuries were to decide the constitutional issues presented, and will waste judicial resources where Ms. Thomas will be called to authenticate her drawings and Dr. Lewis will further need to validate that the drawings represent his 1982 diagnosis of Byron's injuries. This will create an unnecessary diversion and a mini-trial on a collateral issue at best. *See, e.g., Soller v. Moore*, 84 F.3d 964, 968 (7th Cir. 1996) (recognizing the need to prevent a "trial within a trial"); *Sims v. Mulcahy*, 902 F.2d 524, 531 (7th Cir. 1990) ("Exclusion of evidence under Rule 403 is . . . important to avoid significant litigation on issues that are collateral to those required to be tried.").

The admission of the medical illustrations is unnecessary where there are four pieces of evidence that more than adequately show the extent of Byron's injuries, most importantly a pictorial exhibit from 1982 that shows the placement of the burns. Again, the questions in this case do not revolve around the extent and detail of Byron's injuries, and admission of the medical illustrations is not necessary to prove a contested point of fact. These additional, and quite horrifying, artistic renderings are prejudicial and cumulative to evidence that will already be presented. especially where Plaintiff does not dispute that she was injured.

7

Additionally, Defendants have offered no evidence that Ms. Thomas' medical illustrations and expert testimony satisfy the requirements of Rule 702. Expert testimony is admissible if offered by "a witness qualified as an expert by knowledge, skill, experience, training, or education," and "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702. Other than her name, Defendants have offered no evidence that Pat Thomas has specialized training in medical illustrating, nor have they offered any evidence as to whether her method of basing the illustrations on the prior testimony of Dr. Nolan was a reliable method for creating these exhibits. Thomas did not use the actual medical records in Byron's case to create these illustrations, and thus Defendants failed to provide any evidence that Thomas' illustrations were based on "sufficient facts or data" or stemmed from recognized methods in the area of medical illustrating. *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007) ("[T]he expert's reasoning or methodology underlying the testimony must be scientifically reliable … and the testimony must assist the trier of fact to understand the evidence or to determine a fact in issue.").

Since the medical illustrations were based on Thomas' opinion that they were representative of the injuries described by Dr. Lewis in his 1983 trial testimony, Defendants should have, but failed, to provide any basis or rationale for why Thomas' illustrations are reliable. *Manpower, Inc. v. Ins. Co. of Pennsylvania*, 732 F.3d 796, 806 (7th Cir. 2013) (Rule 702 "requires that the trial judge ensure that any and all expert testimony or evidence admitted is not only relevant, but reliable."). For this reason as well, Thomas' illustrations should be barred.

Thus, this Court should bar admission of the medical illustrations as both substantive evidence and as a demonstrative evidence at trial.

WHEREFORE, Plaintiff requests that this Court grant Plaintiff's Motion *In Limine* Nos. 13 and 14.

Respectfully submitted,

/s/ Jennifer Bonjean
One of Attorneys for Plaintiff

Jennifer Bonjean
THE BONJEAN LAW GROUP
1000 Dean Street, Suite 422
Brooklyn, NY 11238
(917) 566-3926

**CERTIFICATE OF SERVICE**

I, Jennifer Bonjean, an attorney, hereby certify that on June 10, 2019, I filed the foregoing via the Court's CM/ECF system and thereby served a copy on all counsel of record.

/s/ Jennifer Bonjean