UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STANLEY WRICE, | ) | |
| | ) | No. 14 C 5934 |
| Plaintiff, | ) | |
| | ) | The Honorable Elaine E. Bucklo |
| vs. | ) | |
| | ) | |
| JON BURGE, et al. | ) | Magistrate Judge Sheila M. Finnegan |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION IN LIMINE NO. 1 TO BAR EVIDENCE OF ALLEGED PATTERN AND PRACTICE OF MISCONDUCT**

Defendants, Jon Burge, John Byrne and Peter Dignan, by their attorneys, move this Court, pursuant to Federal Rules of Evidence 401, 402, and 403, to bar any evidence of alleged police misconduct in other criminal investigations. In support of this motion, Defendants state:

**I. PLAINTIFF'S PURPORTED PATTERN AND PRACTICE BRADY CLAIM IS NOTHING MORE THAN A RE-LABELING OF HIS BIFURCATED MONELL CLAIM**

In ruling on the motions to dismiss plaintiff's original complaint, the Court noted that defendants did not move to dismiss plaintiff's claim that he was entitled, under *Brady*, to evidence of a larger pattern of torturing African American suspects into confessing. (Dkt. #59, p. 16 at n. 2.) Defendants, however, did not read the complaint to make such an allegation against them. While plaintiff did make a general allegation to that effect in one paragraph, plaintiff's forty-six paragraphs of pattern and suppression of the pattern allegations were directed specifically at the now dismissed defendants and were the factual foundation of plaintiff's *Monell* claim. (Dkt. #1, ¶¶54-90.) The allegations that were directed specifically at these defendants were limited to the suppression of Byrne and Dignan's alleged abuse of Bobby Joe Williams. (*Id*. at ¶¶92-94.)

1

In amending his allegations with respect to the dismissed claims, however, plaintiff also amended his *Brady* allegations regarding Williams to add the allegation that Byrne and Dignan withheld from prosecutors "that their abuse of Bobby Joe Williams was part of a pattern and practice of racially motivated police torture at Area 2." (Dkt. #63, ¶¶ 77, 79.) This is plainly nothing more than a re-labeled *Monell* claim. Indeed, plaintiff has identified a multitude of witnesses (with corresponding proposed exhibits) in the Final-Pretrial Order none of whom have any direct or personal knowledge of plaintiff's arrest, interrogation, prosecution, conviction or alleged violation of his constitutional rights (or Williams' arrest and interrogation) and whose testimony, therefore, could only be relevant to his *Monell* allegations (Dkt. #1, ¶¶10-17, 48-91, 128-133; Dkt. #63, ¶¶42-64, 102-107):

**Plaintiff's Witnesses**:

1. Michael Goldston
2. Francine Sanders
3. Richard M. Daley
4. Gayle Shines
5. Richard Brzeczek
6. Dick Devine
7. Flint Taylor
8. Joey Mogul
9. Frank Deboni
10. Michael Angarola
11. Tom Reed
12. Veronica Tillman
13. John Raba
14. Myles O'Rourke
15. Bill Dorsch
16. Raphael Bombino
17. Dennis Waller
18. Alonzo Smith
19. Eric Smith
20. Michael Tillman
21. Daryl Cannon
22. Ronald Kitchen
23. Alphonso Pinex
24. Jackie Wilson
25. Anthony Holmes
26. Gregory Banks
27. Phillip Adkins
28. Stanley Howard
29. Lavert Jones
30. Thomas Craft
31. Alex Moore
32. Steven Bell
33. David Bates
34. Alton Logan

**Plaintiff's Proposed Exhibits:**

8-14; 35-65; 77-78, 80-82, 90-98, 208, 211, 218, 222-223, 227.

As the Court may recall, it bifurcated plaintiff's *Monell* claim and stayed any further discovery related to the claim on January 9, 2017. (Dkt. #148.) The bifurcation issue was fully

2

briefed (Dkt. #113, 139, 145) and plaintiff had a full and fair opportunity to make the case that his *Monell* claim and the evidence he sought in connection with the claim were relevant to his direct claims against Defendant Officers (Dkt. #139). Nonetheless, the Court rejected plaintiff's arguments and found that the cost and burden of conducting discovery on the claim and the prejudice to defendants of trying the claim with plaintiff's direct claims outweighed any relevance to plaintiff's direct claims. (Dkt. #148.) Nothing has changed in this case that would cause the Court to reconsider its ruling.

Plaintiff's ploy is obvious: he wants to call these witnesses and offer these exhibits under the guise of a "*Brady* pattern and practice" claim in an attempt to adjudicate the bifurcated *Monell* claim *now* to maximize the prejudice to defendants in hopes that the fog of shock and outrage this purported evidence generates will obscure the real issue here: whether defendants violated *plaintiff's* constitutional rights. (*See* Fed. R. Evid. 403; Defendants' Motion In Limine No. 2). Indeed, as one of the *Monell* witnesses himself has testified, his conclusions in the infamous Goldston report were based on nothing more than the volume of allegations made and the information he obtained from the People's Law Office. (See Plaintiff's Proposed Exhibit 218.)

Because the witnesses and exhibits identified above have no relevance outside the bifurcated *Monell* claim, they should be barred.

## II. POLICE OFFICERS HAVE NO BRADY DUTY TO DISCLOSE THEIR MISCONDUCT OR TELL THE TRUTH ABOUT THE CIRCUMSTANCES OF THEIR INVESTIGATIONS

That the purported *Brady* pattern and practice claim is really a *Monell* claim in disguise becomes even clearer in the context of the specific allegation that Byrne and Dignan had a *Brady* duty to disclose that their alleged abuse of plaintiff, his co-defendants and Bobby Joe Williams was part of a pattern and practice of abuse. But whether a "pattern and practice" of abuse existed at the time of plaintiff's trial is a legal conclusion; it is not evidence. And there is simply no *Brady*

3

duty imposed on police officers to determine as a matter of law, and then disclose, that Williams' alleged abuse was part of a "pattern" that existed at the time of plaintiff's trial.

Thus, plaintiff's actual claim is that Byrne and Dignan had a duty to disclose the alleged abuse of Bobby Joe Williams, his co-defendants and the individuals identified above as witnesses #18-34. Plaintiff's new spin on his *Brady* claim fails, however, because nothing in *Brady* requires police officers to disclose their own misconduct in investigating crimes much less the misconduct of other officers in other cases. *Brady v. Maryland,* 373 U.S. 83 (1963). And the Seventh Circuit itself has held as much. *Saunders-El v. Rohde*, 778 F.3d 556, 562 (7th Cir. 2015) (*Brady* does not require police officers to disclose their misconduct whether that misconduct occurs in or out of the interrogation room); *see also Gauger v. Hendle*, 349 F.3d 354, 360 (7th Cir. 2003), overruled in part on other grounds, *Wallace v. City of Chicago*, 440 F.3d 421 (7th Cir. 2006).

Indeed, although *Gauger* is frequently cited for the principle that information known to a plaintiff cannot be "suppressed" under *Brady*, the case actually stands for a broader and much more comprehensive principle of law: police officers do not have a *Brady* duty to tell the truth (*i.e.*, accurately disclose the results of their investigations) or to create truthful evidence by disclosing the truth (*i.e.*, that they allegedly abused other criminal suspects). *Gauger*, 349 F.3d 354, 360 ("Gauger wants to make every false statement by a prosecution witness the basis for a civil rights suit, on the theory that by failing to correct the statement the prosecution deprived the defendant of *Brady* material, that is, the correction itself."); *see also Harris v. Kuba*, 486 F.3d 1010, 1017 (7th Cir. 2007) ("Harris essentially seeks an extension of *Brady* to provide relief if a police officer makes a false statement to a prosecutor by arguing that an officer is "suppressing" evidence of the truth by making the false statement. This court has already foreclosed this extension.")

4

The plaintiff in *Gauger* attempted to bring a *Brady* claim based on the defendant police officers' failure to tell the truth about his interrogation. *Gauger*, 349 F.3d at 360. The Seventh Circuit rejected the *Brady* claim stating:

> Gauger argues that *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), a due process case that entitles criminal defendants to be shown any exculpatory evidence (including evidence usable to impeach a prosecution witness) in the possession of the prosecutors, required the detectives to give truthful versions of Gauger's statements at the interrogation to the prosecutors to be forwarded to his counsel at his criminal trial. *We find the proposed extension of Brady difficult even to understand. It implies that the state has a duty not merely to disclose but also to create truthful exculpatory evidence*." (emphasis added)

*Id*. Thus, *Gauger* expressly identified and rejected the plaintiff's attempt to conflate the *Brady* duty to disclose exculpatory or impeaching evidence with a *Brady* duty to tell the truth about an investigation or create evidence for the criminal defendant. *Id.* To emphasize this point of law, the court observed that adopting the proposed extension of *Brady* would not benefit that particular plaintiff in any event: "Indeed [even if the court were to adopt the extension] the duty to disclose falls out, because Gauger knew what he had said at the interrogation." *Id*.

As such, *Gauger* does not merely stand for the principle that there is no *Brady* duty to disclose that which is known to a criminal defendant—this principle is a fundamental element of the claim itself and is neither new nor groundbreaking nor even clarifying. *Brady,* 373 U.S. 83, 87. Instead, *Gauger* rejects any attempt to conflate the *Brady* duty to disclose evidence (exculpatory or impeaching) with a duty to create such evidence by requiring police officers to "disclose" the truth and thus makes explicit the obvious corollary to the long-standing principle of law that the State has no duty to conduct an investigation or assist in the preparation of a defendant's case.[1]

---

[1] *See, e.g., United States v. Tadros*, 310 F.3d 999, 1005 (7th Cir. 2002) ("*Brady* prohibits suppression of evidence, it does not require the government to act as a private investigator and valet for the defendant, gathering evidence and delivering it to opposing counsel."); *Harris*, 486 F.3d at 1015 (*Brady* "'does not place any burden upon the government to conduct a defendant's investigation or assist in the presentation of the defense's case'" (internal citations omitted)).

The corollary is that police officers do not have a *Brady* duty to tell the truth or to create truthful exculpatory or impeaching evidence. *Gauger*, 349 F.3d at 360; *Harris*, 486 F.3d at 1017. In short, allegations of police dishonesty do not state a claim under *Brady*. *Id.*; *Saunders-El v. Rohde*, 778 F.3d 556, 562 (*Brady* does not require police officers to disclose their misconduct whether that misconduct occurs in or out of the interrogation room).

To the extent there could have been any question as to the holding in *Gauger*, that question was put to bed in *Saunders-El*. There, the plaintiff also attempted to base a *Brady* claim on allegations that the defendant police officers failed to disclose their misconduct (planting blood evidence at the crime scene to frame plaintiff for a crime he did not commit) in his criminal investigation to the prosecutor. 778 F.3d 556, 561. The plaintiff claimed "that the police officers' failure to admit their misdeeds to the prosecution amounts to a withholding of exculpatory evidence in violation of *Brady*." *Id.* The court rejected the claim explaining:

> We have dealt on several occasions with similar *Brady* claims concerning accusations of police dishonesty. In *Gauger v. Hendle,* for instance, we rejected the plaintiff's argument that *Brady* requires police to disclose truthful versions of statements made during interrogations, finding "the proposed extension of *Brady* ... difficult even to understand," since "[i]t implies that the state has a duty not merely to disclose but also to create truthful exculpatory evidence." 349 F.3d 354, 360 (7th Cir. 2003), *overruled in part on other grounds by Wallace v. City of Chicago,* 440 F.3d 421, 423 (7th Cir. 2006). Later, in *Sornberger v. City of Knoxville,* we determined that *Brady* cannot "serve as the basis of a cause of action against [police] officers for failing to disclose [the circumstances surrounding a coerced confession] to [a] prosecutor...." 434 F.3d 1006, 1029 (7th Cir. 2006) (citation and internal quotation marks omitted).

*Id.* at 562. The court continued:

> Consequently, in *Harris v. Kuba,* 486 F.3d 1010, 1017 (7th Cir. 2007), we upheld the dismissal of a *Brady* claim premised on an argument "that an officer is 'suppressing' evidence of the truth by making [a] false statement to a prosecutor," noting that "[t]his court has already foreclosed this extension" of *Brady*.
>
> In the end, Saunders– El seeks to charge the officers with a *Brady* violation for keeping quiet about their wrongdoing, not for failing to disclose any existing piece of *evidence* to the prosecution. But our case law makes clear that *Brady* does not

> require the creation of exculpatory evidence, nor does it compel police officers to accurately disclose the circumstances of their investigations to the prosecution.

*Id.* (emphasis original). Thus, under *Saunders-El* and *Gauger*, a police officer's silence or dishonesty regarding his or her misconduct in an investigation is simply not a violation of *Brady*.

All plaintiff has alleged here is that Byrne and Dignan either were silent or lied about their alleged misconduct in his and other cases. Again, under Seventh Circuit precedent, *and consistent with their own constitutional rights under the Fifth Amendment*, "keeping quiet about their own wrongdoing" is not a violation of *Brady*. *Saunders-El*, 778 F.3d at 562. Nor is lying about it— even under oath. *Sornberger v. City of Knoxville,* 434 F.3d 1006, 1029 (7th Cir. 2006) ("The Constitution does not require that police officers testify *truthfully*." (emphasis original)). Whether in plaintiff's criminal case or others, defendants had no constitutional duty to disclose their misconduct hence any evidence of such alleged misconduct is not relevant to any *Brady* claim.

Byrne and Dignan also had no duty to investigate allegations of misconduct against *other* officers in *other* cases (assuming they even knew about them) because "[p]olice officers are not constitutionally mandated to conduct an investigation at all." *Bandari v. City of Chicago*, 2000 WL 89135, at *6 (N.D. Ill. 2000) (rejecting the allegation that defendants failed to conduct an investigation into alleged police misconduct, and noting that a failure to investigate "does not rise to the level of a constitutional violation"); *see also Slagel v. Shell Oil Refinery*, 811 F. Supp. 378, 382 (N.D. Ill. 1993), *aff'd* 23 F.3d 410 (1994) (noting there is no federal constitutional mandate for police officer to conduct investigation into the plaintiff's assault claim). And even if Byrne and Dignan had conducted an investigation into allegations of misconduct against other officers or at some point had become aware of the results of any such investigation, they had no constitutional duty to disclose the results. *See e.g.*, *Williams v. City of Boston*, 784 F.2d 430, 435 (1st Cir. 1986) (there is no constitutional duty to share the results of a police investigation with the public).

Thus, to read plaintiff's pattern and practice allegations as anything other than a *Monell* claim, the Court must ignore *Gauger* and *Saunders-El*, abrogate the Fifth Amendment rights of police officers and extend *Brady* to require every police officer to contact every criminal defendant and disclose any misconduct he or she or any *other* police officer assigned to the same station has ever engaged in *or been accused of* just in case such disclosure might help that defendant's case. And if this new duty now applies to police , it would also apply to prosecutors—the original holders of the *Brady* duty. They too then would be required to disclose to every criminal defendant every alleged instance of police misconduct they became aware of during the course of their daily practice just in case that alleged misconduct could be useful to that defendant. That sounds just like a duty to investigate and a duty to create evidence—duties that no circuit has ever found to exist under *Brady* indeed duties that our circuit has expressly rejected. Simply put, even if some of the allegations of torture at Area 2 were true, the shocking and appalling nature of those allegations cannot and should not be used to abrogate the constitutional rights of police officers or to create constitutional rights that simply do not exist or to implausibly expand rights that do exist.

Because failing to disclose their alleged misconduct is not a violation of *Brady*, the purported evidence of such misconduct is not relevant to whatever *Brady* claim the Court can glean from plaintiff's non-pattern and practice allegations and should be barred.

### III. EVEN IF THE COURT WERE TO ADOPT THE PROPOSED EXTENSION OF *BRADY* REJECTED BY *GAUGER* AND *SAUNDERS-EL*, PLAINTIFF'S PURPORTED EVIDENCE OF MISCONDUCT IS NOT RELEVANT TO PLAINTIFF'S PATTERN AND PRACTICE BRADY CLAIM

"A plaintiff must show three elements in order to prove a *Brady* violation: (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) the evidence must have been material, meaning there is a reasonable probability that the result of

the proceeding would have been different." *Beaman v. Freesmeyer*, 776 F.3d 500, 506 (7th Cir. 2015). Evidence is only "suppressed for *Brady* purposes if plaintiff did not know of the evidence or, in the exercise of reasonable diligence, could not have discovered the evidence on his own. *United States v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002). Moreover, any *Brady* duty to disclose only extends to evidence that was known and that existed at the time of plaintiff's trial. *Whitlock v. Brueggemann*, 682 F.3d 567, 587-88 (7th Cir. 2012) Finally, only admissible evidence is *Brady* material. *United States v. Morales*, 746 F.3d 310, 314-15 (7th Cir. 2014).

Plaintiff has identified seventeen witnesses (#18-34 above) who claim they were abused during police interrogations in cases unrelated to plaintiff and numerous exhibits relating to those claims. Plaintiff also intends to offer evidence of abuse allegations his co-defendants made. None of this evidence is relevant to plaintiff's *Brady* pattern and practice claim and should be barred.

### A. Alleged Abuse Against Individuals In Cases Unrelated To Plaintiff's Case That Occurred After Plaintiff's Trial

Of the seventeen other alleged victims, twelve (#20-23, 26-33) have claimed abuse during interrogations that occurred after plaintiff's trial: Michael Tillman, Darrell Cannon, Ronald Kitchen, Alphonso Pinex,[2] Gregory Banks, Philip Adkins, Stanley Howard, Lavert Jones, Thomas Craft, Alex Moore, Steven Bell and David Bates (the "Post-May 1983 Witnesses").

Any *Brady* duty to disclose, however, extends only to evidence *known and in existence at the time of plaintiff's trial*, even in post-trial proceedings. *Whitlock v. Brueggemann*, 682 F.3d 567, 587-88 (7th Cir. 2012) (". . . *Brady* continues to apply [in post-trial proceedings] to an assertion that one did not receive a fair trial because of the concealment of exculpatory evidence *known and in existence at the time of that trial*." (emphasis added)). And, to be clear, any alleged post-trial

---

[2] Pinex alleges he was abused in February 1982 and June 1985. His allegations of abuse in 1982 are addressed *infra* at Section III. (B).

9

misconduct (i.e., new evidence) is likewise not subject to disclosure under *Brady* at any time during plaintiff's post-trial proceedings because it did not exist at the time of plaintiff's trial. *Whitlock*, 682 F.3d at 587-88; *see also Steidl v. Fermon*, 494 F.3d 623, 625 (7th Cir. 2006) ("We agree with the district court that the *Brady* line of cases has clearly established a defendant's right to be informed about exculpatory evidence throughout the proceedings, including appeals and authorized post-conviction procedures, *when that exculpatory evidence was known to the state at the time of the original trial.*" (emphasis added)).

To state the obvious, Byrne and Dignan could not disclose evidence that did not exist at the time of plaintiff's trial, and because it did not exist at the time of his trial, Byrne and Dignan also had no duty to disclose such evidence during plaintiff's appeals or post-conviction proceedings. *Whitlock*, 682 F.3d at 587-88; *Steidl*, 494 F.3d at 625. Accordingly, any testimony or documentary evidence relating to the alleged abuse of the Post-May 1983 Witnesses, or any other individual who has alleged abuse that occurred after May 1983, is not relevant even under plaintiff's proposed extension of *Brady* and should be barred.

Likewise, plaintiff's witnesses identified as #1-17 above, all participated in investigations and/or generated reports based on investigations they or others conducted years after plaintiff's trial. Thus, even assuming plaintiff can somehow overcome his hearsay problem with respect to these witnesses, any testimony or documentary evidence through theses witnesses that relates to alleged abuse that occurred after May 1983 is not relevant and should be barred.

Finally, plaintiff failed to disclose Gregory Banks, Philip Adkins, Stanley Howard, Lavert Jones, Thomas Craft, Alex Moore, Steven Bell, David Bates and Alphonso Pinex as a potential witnesses in any of his pre-trial disclosures; thus, any evidence from or relating to them should also be barred for that reason alone. (See MIL #10.)

### B. Alleged Abuse Against Individuals In Cases Unrelated To Plaintiff's Case That Occurred Before Plaintiff's Alleged Abuse In September 1982

Plaintiff intends to call Alphonso Pinex (#23) and Jackie Wilson (#24) to testify they were abused in February 1982 during the search for Andrew Wilson. (Dkt. #63, ¶44.) However, neither Pinex nor Jackie Wilson have alleged they were abused by Byrne or Dignan (or Burge). Plaintiff also intends to call Anthony Holmes (#25) to testify he was abused by Burge in 1973. Like Pinex and Jackie Wilson, Holmes has made no allegations against Byrne or Dignan. Finally, plaintiff intends to call Alton Logan (#34) who was arrested for murder in February 1982 and alleges Burge and other officers (not Byrne or Dignan) suppressed an exculpatory statement in his case.

In Illinois, allegations of prior police brutality may be admissible if (1) the prior allegations of police brutality were *not unduly remote*; (2) the prior allegations of police brutality were *against the same officer,* and they were *similar* to the allegations put forth by the defendant; and (3) in both the prior allegations of abuse and the case before the court, there was evidence of injury consistent with police brutality. *People v. Hobley*, 159 Ill. 2d 272, 311–12 (1994); *People v. Porter-Boens*, 2013 IL App (1st) 111074, ¶17 ("prior allegations of abuse or misconduct are admissible when they are not unduly remote in time from the occurrence before the court, they involve the same officer and similar allegations of misconduct"). Because the allegations of abuse made by Pinex, Wilson and Holmes were not made against the same officers in plaintiff's case (Byrne and Dignan), their allegations would not have been admissible to impeach Byrne or Dignan as a matter of law. Moreover, the alleged abuse against Holmes occurred nearly a decade before plaintiff's alleged abuse which would have made his allegations unduly remote and hence inadmissible even if Byrne or Dignan had been involved. *Hobley*, 159 Ill. 2d 272, 311–12 (1994) (although allegations of abuse of another individual were similar and by the same officer, three years between the incidents made the allegations too remote for admission into evidence); *see also*

*People v. Patterson*, 192 Ill. 2d 93, 118-119 (2000) (allegations of abuse that occurred four years before defendant's alleged abuse too remote even though same officers involved and similar acts of abuse). Finally, Holmes' allegations that he was shocked with an electrical device and suffocated are not sufficiently similar to the acts of abuse alleged by plaintiff. *Hobley*, 159 Ill. 2d 272, 311–12. As a matter of law, therefore, any evidence relating to the alleged abuse of Pinex, Wilson or Holmes would have been inadmissible in plaintiff's criminal proceedings.

The rule in this circuit is that inadmissible evidence is immaterial and therefore cannot constitute *Brady* material. *See e.g.*, *United States v. Dimas,* 3 F.3d 1015, 1019 (7th Cir.1993) ("[M]ost important, the court must determine whether and to what extent [withheld] evidence ... would be admissible at trial."); *United States v. Silva,* 71 F.3d 667, 670 (7th Cir.1995) ("[E]vidence that would not have been admissible at trial is immaterial because it could not have affected the trial's outcome."); *United States v. Salem,* 578 F.3d 682, 686 (7th Cir.2009) ("Of course ... only admissible evidence can be material, for only admissible evidence could possibly lead to a different verdict."); *Jardine v. Dittmann,* 658 F.3d 772, 777 (7th Cir.2011) ("Logically, inadmissible evidence is immaterial under this rule."); *Morales*, 746 F.3d 310, 314-15 (discussing the split in the circuits on this issue but expressly declining to reconsider our circuit precedent). Thus, any testimony or documentary evidence of any alleged police abuse of Pinex, Wilson and Holmes that occurred prior to September 1982 is not *Brady* material and thus not relevant to plaintiff's purported *Brady* pattern and practice claim and should be barred. These witnesses, along with Logan, should also be barred because plaintiff failed to previously disclose them. (See MIL #10.)

Furthermore, plaintiff has not adduced any evidence that Byrne or Dignan were involved in the search for Andrew Wilson or the interrogations of any of the other individuals plaintiff has alleged were abused in that search. In fact, it is undisputed that Byrne was not assigned to Area 2

12

until April 26, 1982, over two months after the search. And neither Byrne nor Dignan were ever implicated in any findings related to Andrew Wilson or the individuals questioned during the search. Indeed, plaintiff himself has not alleged that Byrne and Dignan were involved in the search for Andrew Wilson or the interrogation of any individuals during the search. Dkt. #63, ¶¶44-45.)

Plaintiff has also not alleged or adduced any evidence that Byrne or Dignan were involved or implicated in any allegations of physical abuse at any time prior to plaintiff's alleged abuse in September 1982. As such, any evidence of alleged police abuse that occurred prior to September 1982 involved other police officers and therefore would also have been inadmissible at plaintiff's trial. Accordingly, any testimony or documentary evidence of any alleged police abuse of any individual that occurred prior to September 1982 is not relevant to plaintiff's purported *Brady* pattern and practice claim and should be barred.

Finally, any testimony from or relating to Alton Logan is not relevant because the misconduct alleged had nothing to do with any coercion whether physical or otherwise and Logan made no allegations against either Byrne or Dignan in any event. *See Logan v. City of Chicago*, 891 F. Supp. 2d 897 (N.D. Ill. 2012).

**C. Alleged Abuse Against Individuals In Cases Unrelated To Plaintiff's Case That Occurred After Plaintiff's Alleged Abuse In September 1982 But Before His Trial**

Eric Smith (#18) and Alonzo Smith (#17) have alleged they were abused when questioned at Area 2 in January 1983. Plaintiff, however, failed to disclose Eric Smith as a potential witness and any evidence relating to his alleged abuse should be barred for that reason alone. (See MIL #10.) In addition, however, Smith has made no allegations against Byrne (or Burge). As such, Smith's allegations were inadmissible against Byrne—the only defendant who testified at trial.

As for Dignan, Eric Smith's allegations are not even remotely similar to allegations. Smith has alleged that over a three-day period, he was beaten with a lead pipe, stripped naked and

13

repeatedly electroshocked. Plaintiff claims he was hit, kicked and beaten with a flexible rubber hose and a flashlight. (Dkt. #63, ¶¶17-19.) Under Illinois law, Smith's allegations of abuse are not sufficiently similar to plaintiff's and therefore were inadmissible. *Hobley*, 159 Ill. 2d 272, 312. In *Hobley*, the defendant, who had alleged he had been hit, kicked and bagged with a typewriter cover until he blacked out, argued that the circuit court erred in not allowing him to present testimony from a witness who alleged that she had been choked by one of the officers who questioned him. *Id.* at 286, 311. The Illinois Supreme Court rejected the defendant's arguments with respect to this witness holding that her allegations of abuse "are dissimilar to the allegations of defendant, and therefore, are not relevant to the present case." *Id.* at 312. Thus, Eric Smith's allegations of abuse would not have been admissible against Dignan even if he had testified at plaintiff's criminal trial. Any testimony or documentary evidence relating to Eric Smith's alleged abuse therefore is not relevant to plaintiff's *Brady* claim and should be barred.

Likewise, and under the same authority, Alonzo Smith's allegations that he had been beaten and repeatedly bagged and suffocated are not sufficiently similar to plaintiff's allegations of abuse to have been admissible under Illinois law. Finally, even if Eric Smith and Alonzo Smith's allegations had been admissible at plaintiff's trial, two men do not a pattern make and therefore any evidence of the alleged abuse of these two men are not relevant to plaintiff's *Brady* pattern and practice claim and should be barred.

   **D. Any Evidence of The Alleged Abuse of Plaintiff's Co-Defendants Is Not Relevant To Plaintiff's *Brady* Claim Because Such Evidence Was Known To Plaintiff Before His Trial**

Any evidence of alleged abuse plaintiff knew or should have known about is not "suppressed" and is therefore not relevant to his *Brady* pattern and practice claim. *O'Hara*, 301 F.3d 563, 569. Plaintiff alleges he was arrested with three other men, Rodney Benson, Lee Holmes and Michael Fowler, who also alleged they were beaten and who, like plaintiff, filed motions to

suppress their statements to police. (Dkt. #63, ¶¶13, 49). Plaintiff further admits that these men were his co-defendants in his criminal proceedings. (Dkt. #63, ¶49). Critically, plaintiff does *not* allege that he did not know that his co-defendants were also claiming to have been beaten by Byrne and Dignan. Nor could he. As co-defendants, plaintiff and each of these men were parties to the same criminal proceeding. Indeed, plaintiff and Benson participated and testified in a joint hearing on their motions to suppress and plaintiff heard Benson's allegations directly from Benson himself. And, just as plaintiff claims former defendant Martin knew that he and his co-defendants were allegedly tortured by virtue of their publicly filed motions to suppress, he too had the same knowledge. (Dkt. #63, ¶49). Plaintiff's prosecutors and judge were also obviously aware of the motions and allegations of his co-defendants. Thus, any testimony or documentary evidence of allegations of abuse relating to Benson, Fowler and Lee Holmes is not relevant to plaintiff's pattern and practice *Brady* claim and should be barred.

Wherefore, for all of the foregoing reasons, defendants respectfully request that the Court issue an order barring any evidence of an alleged pattern and practice of misconduct.

Respectfully submitted,

DEFENDANTS

BY: /s/ Scott Jebson

Andrew M. Hale
Scott Jebson
Amy A. Hijjawi
Jennifer Bitoy
Hale & Monico LLC
53 West Jackson Blvd., Suite 330
(312) 870-6926

**CERTIFICATE OF SERVICE**

   I, Scott Jebson, an attorney hereby certify that I filed the attached document on the date stamped in the above margin, with the Court's CM/ECF system, which sent electronic copies of the same to all counsel of record.

                                /s/ *Scott Jebson*