# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| STANLEY WRICE, | ) | |
| | ) | No. 14 C 5934 |
| Plaintiff, | ) | |
| | ) | The Honorable Elaine E. Bucklo |
| vs. | ) | |
| | ) | |
| JOHN BYRNE, et al. | ) | Magistrate Judge Sheila M. Finnegan |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION *IN LIMINE* NO. 3 TO BAR DENNIS WALLER

Defendants, John Byrne, ("Byrne"), and Peter Dignan, ("Dignan"), and Douglas Stalley, as the personal representative of the Estate of Jon Burge ("Burge"), by their attorneys, move this Court, *in limine*, for an order barring plaintiff's police procedures expert, Dennis Waller, from testifying at trial. In support of this motion, defendants state:

## INTRODUCTION

Plaintiff alleges that Byrne Dignan used physical force to coerce his statement, and has disclosed Dennis Waller to offer the expert opinion that physical coercion is not an accepted police practice. His testimony will not be helpful to the jury because compliance with police practices is not at issue in this trial. There is no dispute that coercing a witness through physical force is not proper police procedure, this is common knowledge. Mr. Waller offers no specialized knowledge or methodology which will assist the jury in determining a fact in issue. Fed. R. Evid. 702. Mr. Waller's opinions are: 1) the City's policies, training, custom and practice related to interrogation encouraged coercion of witnesses; 2) police should not use physical force to coerce a witness statement; 3) the police report did not properly document plaintiff's statement; and 4) various other unsupported conclusions related to plaintiff's arrest and conviction. (*See* Waller's report,

Ex. A). Mr. Waller's opinions are inadmissible pursuant to Federal Rules of Evidence 702 and 403, because they are not based on specialized knowledge, do not assist the jury in deciding the issues, and are conclusory, irrelevant, and/or unduly prejudicial.

**ARGUMENT**

Federal Rule of Evidence 702 governs the admissibility of expert opinions, and requires a finding that the opinion is based on "scientific, technical, or other specialized knowledge" and "will assist the trier of fact to understand the evidence or to determine a fact in issue an expert may testify thereto." Fed. R. Evid. 702. Prior to admitting expert testimony, the court must screen it for relevance and reliability. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-90 (1993). *Id*. Evidence which is not relevant to a contested issue or unreliable does not help the jury and is inadmissible. *Id*.

**I. Mr. Waller's opinions are not based on reliable expertise and methodology.**

Inquiry into the reliability of an expert's opinions focuses "solely on principles and methodology." *Daubert*, 509 U.S. at 595. To be admissible, expert testimony must be based on "scientific, technical, or other specialized knowledge." Rule 702. "'[S]cientific' implies a grounding in the methods and procedures of science." *Daubert*, 509 U.S. at 590. "Similarly, the word 'knowledge' connotes more than subjective belief or unsupported speculation." *Id*. An expert opinion which is not based on "scientific, technical, or other specialized knowledge" and "the product of reliable principles and methods" is inadmissible. Fed. R. Evid. 702.

Mr. Waller s report states that his opinions are based on his knowledge of police practices, however they are actually nothing more than his personal assessment of the facts of the case. Mr. Waller claims to have employed the following methodology: 1) Develop an understanding of the facts; 2) Analyze the actions of the officers; 3) Compare with standards of training and practice;

4) Define and explain inconsistencies/ consistencies. (Ex. A at 2-3.) This purported methodology is not an expert analysis, it is common sense in list form. *See Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 645 (7th Cir. 2010) (finding expert testimony unreliable because "[o]ther than common sense, there was no methodology to their etiology").

What Mr. Waller has done to evaluate this case is precisely what the jury will do. The jury is tasked with: 1) hearing the evidence (i.e. developing an understanding of the facts); 2) assessing credibility (analyzing the actions of the officers); 3) applying the law to the facts (comparing with standards); and 4) reach a conclusion as to whether the law was violated (define and explain inconsistencies/consistencies). He is no more qualified than the jury to apply his "methodology" to evaluate the evidence, draw inferences, apply the law, and reach a conclusion. *United States v. Benson,* 941 F.2d 598, 604 (7th Cir. 1991) (abuse of discretion to allow expert testimony which "consist[ed] of nothing more than drawing inferences from the evidence that he was no more qualified than the jury to draw"). Mr. Waller offers "simply an opinion broached by a purported expert" not "an expert opinion (that is, an opinion informed by the witness' expertise)." *Id.* Moreover, Mr. Waller's stated methodology necessarily involves judging the credibility of witnesses, which is never a proper subject of expert testimony. *United States v. Hall*, 165 F.3d 1095, 1107 (7th Cir. 1999) (citing *United States v. Kime*, 99 F.3d 870, 884 (8th Cir. 1996) ("It is the exclusive province of the jury to determine the believability of a witness . . . . An expert is not permitted to offer an opinion as to the believability or truthfulness of a victim's story."). Based on this unspecialized methodology and the fact that the vast majority of his report (approximately 14 of 19 pages) is dedicated to listing facts favorable to plaintiff, it is clear that the purpose of Mr. Waller's testimony is to advise the jury on how it should decide the case. (Ex. A.) "[T]he jury does

not need an expert to tell it whom to believe, and the expert's "stamp of approval" on a particular witness' testimony may unduly influence the jury." *Benson,* 941 F.2d at 604.

Because Mr. Waller's purported expertise adds nothing to assist the jury in conducting their own analysis of the facts and the law, he "at best is offering a gratuitous opinion, and at worst is exerting undue influence on the jury that would be subject to control under Rule 403." *United States v. Hall*, 93 F.3d 1337, 1343 (7th Cir. 1996). As a result, Mr. Waller's opinions, which are all based on this non-expert methodology, are inadmissible. *Id.*, Ex. A at 2.

**II. Mr. Waller's opinions are not relevant to any issue in this case.**

To be relevant, expert testimony must be helpful to the jury. *Daubert*, 509 U.S. at 591. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* An expert opinion is also not helpful unless it concerns a matter beyond the understanding of the average person. *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 329 (N.D. Ill. 2008) ("no expert testimony is needed when the subject matter of the testimony is clearly within the average person's grasp") (citing *Gil v. Reed*, 381 F.3d 649, 659 (7th Cir. 2004)). Mr. Waller's opinions do not meet this standard because they are not related to an issue in this case, and/or they do not employ concepts beyond the understanding of the average juror. These opinions fall into four categories: 1) the City's policies, training, custom and practice related to interrogation encouraged coercion of witnesses; 2) police should not use physical force to coerce a witness statement; 3) the police report did not properly document plaintiff's statement; and 4) various unsupported conclusions related to plaintiff's arrest and conviction. None of these opinions survive scrutiny for relevance as mandated by Rule 702. Fed. R. Evid. 702. As a result, Mr. Waller's testimony as a whole is inadmissible.

**A. Mr. Waller's opinions on the City's policies and practices are not relevant because plaintiff's *Monell* claims have been bifurcated.**

Mr. Waller's first, and most prominent, opinion is that the City's policies and customs condoned the use of improper interrogation techniques which employed physical violence, threats and torture. (Ex. A at 6, 7.) He opines that training, supervision, discipline and report writing policies were inadequate and lead to a culture where abuse was encouraged, condoned and covered up. *Id*. at 6-8. However, he does not rely on any specialized knowledge of police practices to support this opinion. Rather, he simply recounts the allegations of other suspects who claim to have been physically coerced into confessing and wrongfully convicted and the related findings of various investigative agencies. (Ex. A at 9-19.) Moreover, these opinions are irrelevant because they relate solely to the City's *Monell* policy claim, which has been bifurcated from the current trial. (Dkt. #148.) To the extent a trial on *Monell* claims becomes necessary, whether there is anything of value in Mr. Waller's opinions will be addressed at that time. Further, to the extent that plaintiff claims Mr. Waller's opinions on pattern and practice implicate his *Brady* claim, or that evidence of other acts is otherwise relevant, such evidence is barred as addressed in Defendant's Motions in Limine Numbers 1 and 2, incorporated herein.

**B. Mr. Waller's opinion condemning the use of physical coercion to obtain statements does not aid the jury in resolving an issue in this case.**

To the extent that Mr. Waller can offer an opinion on police practices related to an issue in this trial, the opinion is this: physical abuse of witnesses to coerce a statement is wrong. However, even this opinion is not based on police practices, but on the law regarding involuntary confessions. That physical abuse of witnesses is wrong is so obvious, that it does not even deserve mention in police general orders. There is certainly no mention of physical abuse in the Chicago Police Department's ("CPD") general order, and Mr. Waller cites no others. (Ex. at at 7.) Instead, Mr.

Waller supports his opinion by summarizing the law that statements must be voluntary, focusing largely on the requirements of *Miranda*. (*See, e.g.* Ex. A at 6 ("Statements and confessions must be given freely and voluntarily") Ex. A at 9 ("Statements obtained as a result of physical coercion, threats and actual torture are illegal").) Mr. Waller is not qualified to opine on legal conclusions, nor may he do so as an expert. *RLJCS Enters. v. Prof'l Ben. Tr. Multiple Emplr. Welfare Ben. Plan & Tr.*, 487 F.3d 494, 498 (7th Cir. 2007) (expert opinion which stated "legal rather than 'expert' opinions" properly excluded). The Court will instruct on the applicable law, and Mr. Waller's opinions in this area will not aid the jury.

Moreover, Mr. Waller's opinion that using physical coercion, threats and torture to coerce a statement from a witness is wrong is not a concept beyond the understanding of the average juror. *Sommerfield*, 254 F.R.D. at 329. Any layperson perceiving such conduct would recognize it as wrongful, the jury does not need Mr. Waller to impart this common knowledge. Although Mr. Waller claims to be enlightening the jury on "how physically coerced interrogation undermine the integrity of criminal investigations" he offers no such explanation beyond the simple conclusion that physical coercion may lead to a false confession. (Ex. A at 6.) His report contains no insight into how or why that might happen, nor could he so opine as he has no expertise in the psychology of false confessions. (Ex. A at 1-2.) He simply concludes, with no rationale or specialized reasoning, that "statements and confessions which are physically coerced lead to wrongful conviction and a miscarriage of justice." (Ex. A at 11.) This is simply a restatement of the long-standing law, to which Mr. Waller is not qualified to opine, which prohibits an involuntary confession from being used at a criminal trial. *Bram v. United States*, 168 U.S. 532, 542 (1897) ("a confession, in order to be admissible, must be free and voluntary"); *RLJCS Enters.*, 487 F.3d at 498 (experts may not testify to legal conclusions). The concept that physical coercion may lead

to an individual falsely confessing needs no expert explanation. As a result, Mr. Waller's opinions condemning physical abuse, torture and involuntary confessions will not aid the jury in deciding a fact in issue and are inadmissible.

### C. Mr. Waller's opinions regarding the preparation of police reports are irrelevant.

Mr. Waller offers two opinions on the adequacy of the reporting on plaintiff's statement: 1) it is "best practice" to document the giving of Miranda warnings; and 2) "whenever possible, any admission or confession by a suspect should be memorialized, signed or documented in some manner." (Ex. A at 7.) Neither opinion is based on a standard of police conduct which existed at the time of plaintiff's arrest, or even one which currently exists anywhere. Although Mr. Waller claims an "established protocol" existed for the documentation of *Miranda* warnings and witness statements, he does not cite a single document reflecting this protocol. (*Id.* at 8.) As Mr. Waller purports to be an expert in police practices, the only logical assumption is that his research on this issue did not uncover a single police department, in any jurisdiction, which has ever mandated the reporting protocol he suggests in his report. In fact, the law does not require such documentation. *United States v. Crisp*, 435 F.2d 354, 358 (7th Cir. 1970) ("Miranda does not. . . require … a written indication of waiver").

Mr. Waller does not cite any standards applicable to the CPD at the time of plaintiff's arrest in 1983. The only standard on documenting or recording statements cited by Mr. Waller is an Illinois statute, enacted in 2005 and incorporated into CPD policies, requiring certain documentation of statements in certain homicide cases. 725 ILCS 5/103-2.1(b) (applicable to certain provisions of 720 ILCS 5/9 "Homicide"); (Ex. A at 8.) This standard is inapplicable not only because it post dates the incident by more than twenty years, but also because plaintiff was not giving a statement about a homicide. Thus, Mr. Waller's conclusion that the lack of

documentation makes defendants conduct "subject to question" is not based on his specialized knowledge of police practices, but on an improper assessment of credibility. (Ex. A at 7.) Instead, it is a credibility assessment, which is not a proper subject of expert testimony. *See Hall*, 165 F.3d at 1107. Mr. Waller provides no foundation, in the form of an identifiable and applicable standard police practice, to support his report-writing opinions. Thus Mr. Waller's opinions regarding how the police report should have been completed are not reliable.

Moreover, Mr. Waller's opinions on reporting will not aid the jury in resolving a fact in issue. To be relevant, expert testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Downing*, 753 F.2d 1224, 1242 (3d. Dist. 1985). Mr. Waller did not identify any report-writing standard applicable to defendants, much less any violation. Further, there is no connection between Mr. Waller's undocumented opinions on "best practices" in report writing and defendants conduct in this case. A proper expert opinion involves "a process of reasoning beginning from a firm foundation." *Mid-State Fertilizer Co. v. Exch. Nat'l Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989). Mr. Waller's report is devoid of any reasoning which connects his opinion on best practices in preparing a police report to defendants. He cites no published standards, and no explanation for how defendants would have become aware of Mr. Waller's "best practices" standard. "[O]pinion evidence that is connected to existing [facts] only by the ipse dixit of the expert" is inadmissible. *GE v. Joiner*, 522 U.S. 136, 146 (1997) Thus, Mr. Waller's opinion that defendants should have conformed their conduct to Mr. Waller's proclaimed standard is baseless.

Finally, Mr. Waller's report lacks any expertise, methodology, or reliable data to support an opinion regarding the reason defendants did or did not include certain information in their reports. Such an opinion exceeds even the bounds of Mr. Waller's self-described methodology,

which limits his qualifications to explaining inconsistencies/consistencies between conduct and applicable standards. (Ex. A at 3.) Nonetheless, Mr. Waller offers the conclusory opinion that "what was said in the CPD report, as well as what was not said, is consistent with the use of coercive and abusive interrogation techniques by CPD detectives." His report does not indicate what, if any, qualifications or reasoning supports this conclusion. Even if Mr. Waller intended this conclusion to be an inference from his experience, it is unsupported speculation, because his report fails to "explain what specific experience supports his conclusions or how that experience has been reliably applied here." *In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.,* No. 14-cv-5696, 2017 U.S. Dist. LEXIS 48792, at *34 (N.D. Ill. Mar. 31, 2017). "Expertise is a rational process and a rational process implies expressed reasons for judgment." *Mid-State Fertilizer Co.*, 877 F.2d at 1339. An expert report is "worthless" if it does not substantiate an opinion. *Minasian v. Standard Chtd. Bank, P.L.C.*, 109 F.3d 1212, 1216 (7th Cir. 1997). "An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Mid-State Fertilizer Co.,* 877 F.2d at 1339.

**D. Mr. Waller's remaining conclusory opinions are unreliable and irrelevant.**

Mr. Waller attempts to use the context of police practices to offer several unsubstantiated conclusory opinions with regard to plaintiff's arrest and interrogation, all of which are inadmissible. *Mid-State Fertilizer Co.,* 877 F.2d at 1339. For example, he opines that plaintiff was wrongfully convicted; that defendants deliberately and intentionally slanted the investigation to implicate plaintiff rather than seeking the truth; that plaintiff was falsely arrested and maliciously prosecuted without probable cause; that defendants conspired with others to coerce plaintiff's confession; and, by implication in the foregoing, that plaintiff was innocent of the crimes against KB. (Ex. A at 11, 17, 18.) These comments exemplify the intent of Mr. Waller's testimony,

addressed at the outset of this motion, to advise the jury as to his personal opinions on the credibility of the evidence and influence a decision in accordance therewith. No explanation at all, and certainly none grounded in an expertise in police practices, is offered for these conclusions, thus they are worthless to the jury. *Minasian*, 109 F.3d at 1216; *accord Mid-State Fertilizer Co.,* 877 F.2d at 1339 ("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.").

**III. Even if Mr. Waller's testimony had probative value, it would be outweighed by undue prejudice and confusion of issues, and inadmissible.**

Allowing Mr. Waller to conduct his proposed analysis of the evidence and advise the jury of his personal opinions under the guise of police practices would prejudice defendants far beyond any probative value in assisting the jury. Fed. R. Evid. 403. In short, the jury does not need this testimony. "Jurors do not leave their knowledge of the world behind when they enter a courtroom and they do not need to have the obvious spelled out in painstaking detail." *Dawson v. Delaware*, 503 U.S. 159, 171 (1992). Excluding unnecessary expert testimony is important because "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. at 595. "Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Id*. Given that a jury is inclined to give undue weight to expert testimony, without considering the validity or the bases therefore, it could easily be misled to adopt plaintiff's version of facts simply because it has the approval of Mr. Waller, a purported expert police officer. Such prejudice far outweighs any probative value plaintiff may attempt to attribute to his testimony. As a result, Federal Rule of Evidence 403 also compels that Mr. Waller be barred from testifying. Fed. R. Evid. 403.

Wherefore, for all of the foregoing reasons, defendants request the Court to issue an order *in limine* barring the testimony of Dennis Waller at trial.

Respectfully submitted,
DEFENDANTS

BY:     /s/ Scott Jebson

Andrew M. Hale
Scott Jebson
Amy A. Hijjawi
Jennifer Bitoy
Hale & Monico LLC
53 West Jackson Blvd., Suite 330
(312) 870-6926

## CERTIFICATE OF SERVICE

I, Scott Jebson, an attorney hereby certify that I filed the attached document on the date stamped in the above margin, with the Court's CM/ECF system, which sent electronic copies of the same to all counsel of record.

/s/ *Scott Jebson*