IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STANLEY WRICE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 14 C 5934 |
| | ) | |
| -vs- | ) | The Hon. Elaine E. Bucklo. |
| | ) | |
| JON BURGE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* NO. 2**

Plaintiff, Stanley Wrice, by and through his counsel, responds to Defendants' motion *in limine* number 2 (Dkt. No. 388) to bar other bad-acts evidence as follows[1]:

**I.   OTHER BAD ACT EVIDENCE SHOULD BE ALLOWED AT TRIAL.**

Despite Plaintiff's corroborated physical injuries and despite the fact that three other co-defendants and two witnesses similarly reported being tortured by Defendants in connection with the investigation of Karen Byron's rape, Defendants have made it clear that they intend to defend this case by taking the position that Plaintiff, indeed no one, was tortured at Area 2 under the command of Jon Burge. Because Plaintiff must demonstrate to the jury that his shocking claims of physical abuse are, in fact, true, Plaintiff must be permitted to introduce 404(b) evidence for a number of non-propensity purposes, including motive, intent, preparation, plan, identity, knowledge and *modus operandi.*

Under Rule 404(b), relevant evidence of a crime, wrong, or other act is inadmissible if the proponent offers the evidence to show a person's propensity to act a certain way. Fed.R.Evid.

---

[1] Defendants assert in their Motion *In Limine* number 10 that some of the referenced witnesses were not properly disclosed under Rule 26, and Plaintiff has responded that motion. Defendants' also obliquely object to Plaintiff's co-defendants' torture being admitted at trial but make no substantive argument in this Motion. Plaintiff has responded to Defendants' Motion *In Limine* number 1, wherein Defendants expand their objection.

404(b). Regardless, the district court may admit other-act evidence if the evidence is offered for "another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *United States v. Ferrell*, 816 F.3d 433, 442-43 (7th Cir. 2015); *United States v. Gomez*, 763 F.3d 845, 853 (7th Cir. 2014). Other-act evidence need not be excluded whenever a propensity inference can be drawn. *Id.* But its relevance to "another purpose" must be established through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case. *Id*. If the proponent makes this initial showing, the court must then assess whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice. *Gomez*, 763 F.3d at 860.

Defendants maintain throughout their motion that the only "relevant time period" for purposes of Rule 404(b) is between September 9, 1982 (when Plaintiff and Williams were tortured during their interrogations) and May 1983 (Plaintiff's trial). *See Dfts. MIL No. 1*, pgs. 6, 7. Defendants assert that any bad act committed by Defendants that does not fall within these dates should be automatically precluded under 404(b). Defendants forget that "trial courts may admit evidence of prior or subsequent bad acts." *United States v. Brown*, 31 F.3d 484, 492 (7th Cir. 1994); *United States v. Macedo*, 406 F.3d 778, 793 (7th Cir. 2005) (Nine year-gap between prior conduct and conduct charge close enough in time to make prior act admissible); *see Hill v. City of Chicago*, Case No. 06 C 6772, 2011 WL 3840336, at *8 (N.D. Ill. Aug. 30, 2011) (allowing admission under Rule 404(b) of a witness who would testify that he was were beaten and interrogated in a manner similar to Plaintiff's beating where the witness was beaten three years after Plaintiff's interrogation).

Here, the proposed other bad acts evidence goes to the Defendants' *modus* operandi, intent, opportunity, preparation and plan, and is thus relevant. *See Wilson v. City of Chicago*, 6 F.3d 1233, 1238 (7th Cir. 1993) (where plaintiff claimed he was tortured into giving a confession, it was error for the district court to preclude evidence that the same officers, including Jon Burge, had tortured two other suspects in the same manner, around the same time where that evidence established Defendants intent, opportunity, preparation and plan).

      A.      **Plaintiff's Torture By Defendants Byrne and Dignan.**

Plaintiff will testify that he was first questioned on September 9 in an upstairs room at Area 2 and when he denied participating in the crimes, he was brought to the basement by Defendants Byrne and Dignan. He was told that he was going to experience some "police brutality." Once in the basement, Plaintiff was sat in a chair and handcuffed behind his back. Byrne and Dignan began the questioning by asking him to "tell them what happened" at his house that night. After Plaintiff told them he was not involved, Byrne hit him in the head with a flashlight and Dignan hit him with a black rubber object, demanding that he admit to the crimes. Defendants kept telling Plaintiff that he was lying while they were hitting him, calling him a "nigger." Plaintiff was taken back upstairs. Sometime later, Defendants took Plaintiff back to the basement. Byrne and Dignan again sat Plaintiff in a chair and told him that he was going to tell the prosecutor that he raped and burned Byron. Defendants fed him details about the crimes and told him to repeat these facts to the state's attorney. Plaintiff kept telling them that he did not hurt Byron, and Byrne and Dignan told him he was lying, and hit him multiple times.

Defendants then stood Plaintiff up and chained him to the bars in the basement. His hands were handcuffed above his head and Defendants struck him repeatedly in the groin with the flashlight and the nightstick. Defendants kept hitting him and told Plaintiff that when he spoke to

3

the assistant state's attorney, he was going to tell him that he did it. Plaintiff was terrified, confused, and in fear for his life. Plaintiff was taken back upstairs where, in the presence of Dignan, Plaintiff falsely confessed to the state's attorney so that he would not be tortured again by Defendants. Plaintiff's false confession was used against him at trial, and he was convicted and sentenced to 100 years imprisonment.

### B. Live Witnesses Who Were Beaten By Defendants Byrne and Dignan

There are six witnesses who will testify that they were beaten by both Defendants Byrne and Dignan during their interrogations, under the direct supervision of Defendant Burge, and forced to give a false confession that was used against them at their trial. All of these men were young and black, and each interrogation occurred in a closed interrogation room where the witness was segregated from outside observers. Each witness was subjected to prolonged physical abuse while being interrogated and were each restrained and unable to use their hands to defend himself against the physical assault. Defendants specifically targeted the genital area of each man during the abuse. In each instance, Defendants resorted to abuse after losing their tempers when the person being interrogated refused to provide the information that the Defendants wanted them to provide. In each instance, more than one police officer was in the room, causing the person being interrogated to believe that no other police officer would come to his aid and thereby rendering him even more vulnerable to coercion. In each instance, Defendants told the person being interrogated the details that they wanted them to provide or confess to, and in each instance, the person falsely confessed as a result of the police torture. Plaintiff proffers that the following witnesses will testify at trial as follows:

**1.     Alonzo Smith**

Alonzo Smith will testify that he went to Area 2 on January 21, 1983, to be questioned about a murder. Defendants Byrne and Dignan confronted him in an upstairs interrogation room, and then took him to the basement. *See* Exhibit A – 2000 Testimony of Alonzo Smith in *People v. Cannon,* 92 CR 28009.[2] *See also, Smith v. Burge*, 222 F. Supp. 3d 669, 677-678 (N.D. Ill. 2016) Once in the basement, Smith was placed in a chair, and handcuffed behind his back. Dignan brandished a black rubber nightstick. Smith was asked about the murder and denied all involvement. *Id*. Dignan told Smith that he was lying and said that Smith would tell them "what they wanted to hear." *Id*. Dignan then hit Smith several times between his legs with the rubber nightstick, while Byrne kicked him. Dignan and Byrne took turns hitting Smith in the legs with the nightstick. *Id*. Byrne and Dignan then put a plastic bag over Smith's head. Byrne and Dignan again asked him about the murder, and when Smith denied his participation, Byrne and Dignan bagged and beat him again. *Id*. Byrne and Dignan kept ordering him to "tell the truth," and Smith told them what they wanted to hear so that they would stop torturing him. *Id*. Smith was then taken upstairs to an interrogation room where, in the presence of Byrne and Dignan, he repeated the false confession fed to him by Byrne and Dignan to a prosecutor. *Id*. Smith's false confession was used against him at trial to wrongfully convict him of murder. *Id*. Smith was exonerated.

Plaintiff's interrogation was virtually identical to Smith's interrogation. Both were brought from the second floor to the basement of Area 2. Both men were sat in a chair and handcuffed. Both Smith and Plaintiff were struck by Dignan with a black rubber nightstick in the

---

[2] The proposed 404(b) witnesses have testified numerous times in connection with the abuse they suffered at the hands of Burge, Byrne, and Dignan at Area 2. The witnesses' prior in-court testimony and numerous depositions have been produced in discovery. For the purpose of this motion, Plaintiff has simply attached a single example of testimony given by these witnesses. Plaintiff also cites to cases where the testimony is referenced. With the exception of Melvin Jones who is deceased, these exhibits are meant to provide a proffer of what these witnesses' testimony will be so the court can determine the admissibility of the proposed 404(b) evidence.

legs. Both men were beaten by Byrne and Dignan while being told that their protestations of innocence were lies. Both men were told by Byrne and Dignan that they were going to confess to the crimes that they were innocent of and repeat to the story fed to them by Defendants to the state's attorney. Byrne and Dignan escalated the violence when Smith and Plaintiff would not agree to implicate themselves – Smith was bagged and Plaintiff was chained to a jail cell and beaten. After this escalation, and in fear of further beatings, both Smith and Plaintiff falsely confessed to a prosecutor while Dignan loomed over them to ensure that the men repeated the false narrative of their guilt. And both men were wrongfully convicted based on their false confessions, coerced by Byrne and Dignan.

Smith's testimony establishes Defendants Byrne and Dignan's *modus operandi* in coercing false confessions– they would take suspects to the basement of Area 2, handcuff them, Dignan would beat them with a blackjack in the legs and in the groin, and both Byrne and Dignan would beat them while accusing the men of lying about their innocence. *United States v. Robinson*, 161 F.3d 463, 467 (7th Cir. 1998) (evidence of *modus operandi* is evidence that shows a defendant's distinctive method of operation); *United States v. Carson*, 870 F.3d 584, 599 (7th Cir. 2017) (noting that although *modus operandi* evidence is commonly used to demonstrate the identity of the defendant, it is not "exclusively" used for this purpose).

Smith's testimony, as noted by the Court in *Wilson*, is also relevant to establish Defendants Byrne and Dignan's "intent, opportunity, preparation, and plan." *Wilson*, 6 F.3d at 1238. In *Wilson,* the Seventh Circuit found the district court's erred in precluding two 404(b) witnesses who would have testified that Jon Burge and other officers beat them in a manner similar to Plaintiff Wilson, after Wilson's torture, especially where Burge used the same implements of torture (an electroshock device) on Wilson as the proposed witnesses. The Court

6

concluded that the witnesses proposed testimony was relevant to "all four" exceptions under Rule 404(b) – "intent, opportunity, preparation and plan," and it was error for the district court to bar their testimony *Id*.; *see also Hill*, 2011 WL 3840336, at *8 (allowing admission of four other bad-act witnesses who would testify that they were beaten and interrogated in a manner similar to Plaintiff, noting that the evidence was relevant to establish the Defendant Officers "plan and preparation."). Thus, Alonzo Smith's testimony should be allowed.

### 2. and 3. Gregory Banks and David Bates

Gregory Banks was interrogated at Area 2 for a murder, along with his co-defendant Davis Bates. *See* Exhibit B – 2000 Gregory Banks Testimony in *People v. Cannon,* 92 CR 28009. *See also, States v. Burge*, No. 08 CR 846 (Dckt. No. 395, Banks Testimony, 6/10/2010, pgs. 140-149) Banks will testify that Defendants Byrne and Dignan tortured Banks during his interrogation and forced him to confess, while Burge "peeked" into the interrogation room to witness Banks' physical abuse. *Id.* Banks said that Byrne and Dignan struck him repeatedly with a flashlight while he was handcuffed, placed a plastic bag over his head, all while Banks denied his participation in the crime. They also called him a "nigger" repeatedly. *Id.* Banks gave a false confession to the murder as a result of Defendants Byrne and Dignan's beating. Banks also testified against Defendant Burge at Burge's perjury trial, and the jury then convicted Burge of perjury and obstruction of justice for not just personally abusing suspects at Area 2, but also for lying when he said that he did not witness other officers (including, as Banks' testified, Defendants Byrne and Dignan) physically abuse suspects. *See United States v. Burge*, No. 08 CR 846 (Dckt. Nos. 1, 291). Banks was subsequently exonerated of the murder.

David Bates is the co-defendant of Banks and was arrested in October 1983 at his home and taken to Area 2. *See* Exhibit C – 2000 Testimony of David Bates in *People v. Cannon,* 92

7

CR 28009. Bates will testify that while Area 2, Defendant Byrne and another officer questioned him about the murder while he was handcuffed. When Bates denied any knowledge of the crime, Defendant Byrne punched him repeatedly, put a plastic bag over Bates' head, and punched him in the abdomen and groin. When Bates continued to protest that he was innocent, the officers left the room. But they later returned and over the next several hours, Bates later testified, he was kicked in the testicles, punched repeatedly and nearly suffocated with the plastic bag three more times. Finally, Bates, fearing he would be killed, gave a false confession. Bates was later acquitted of the murder and pardoned.

Banks' and Bates' testimony is relevant to establishing Defendants Byrne and Dignan's *modus operandi* in beating suspects with implements, while telling them to confess to crimes they did not commit – similar to Plaintiff's coercive interrogation. *Robinson*, 161 F.3d at 467. Byrne and Dignan also called Banks a "nigger" while beating him, much like they did Plaintiff, establishing facts relevant to Plaintiff's conspiracy claim, that all three Defendants engaged in a conspiracy to violate Plaintiff's constitutional rights because of his race. *See Dkt. No. 74, Wrice v Burge*, No. 1:14-cv-5934 (this Court allowing Plaintiff's conspiracy claim to advance). Also, Banks will testify that Byrne and Dignan used a flashlight to beat him, like they did Plaintiff, and escalated the violence by bagging him, as Defendants escalated the violence in Plaintiff's case by chaining him to a wall and beating him. Bates will testify that Defendant Byrne conducted many "beating sessions" designed to coerce a false confession from him, beating his repeatedly in the groin and escalating the violence to force Bates to falsely confess to the crimes. *See United States v. Long,* 86 F.3d 81, 84 (7th Cir. 1996) (the similarity prong of 404(b) is not unduly rigid and "[s]imple differences in the type of conduct or charge at issue cannot defeat the similarity requirement."). Given the sameness of methods, especially that the "groin" areas of these men

were targeted by Defendants, and the recency to Plaintiff's interrogation, just 13 months after Plaintiff's interrogation, shows that Banks and Bates' testimony is relevant and should be admitted. *See Wilson*, 6 F.3d at 1238; *see also Hill*, 2011 WL 3840336, at *8 (allowing admission of four other-act witnesses who would testify that they were beaten and interrogated in manner similar to Plaintiff, as it was relevant to establish the Defendant Officers "plan and preparation.").

Moreover, Banks will testify that Defendant Burge looked in on his interrogation and did nothing to stop it, similar to Plaintiff's claim of Burge's supervisory liability for similarly condoning these physically abusive practices against Plaintiff, making this evidence relevant to all three Defendants. Also, a jury then convicted Burge of perjury and obstruction of justice for not just personally abusing suspects at Area 2, but also for lying when he said that he did not witness other officers (including, as Banks' testified, Defendants Byrne and Dignan) at Area 2 physically abuse suspects. *See also Plaintiff's Response to Defendants' MIL No. 4*.

### 4. and 5.     Darrel Cannon and Lavert Jones

Darrell Cannon was arrested on November 2, 1983 for a murder and taken to Area 2 where he was interrogated by both Defendants Byrne and Dignan, and another officer. *See* Exhibit D - 1984 Suppression Hearing Testimony of Darrel. Cannon will testify that during his interrogation, Dignan beat him on the knee with a flashlight, played "Russian roulette" with him with a loaded shotgun, handcuffed him, and beat him repeatedly while calling him "nigger." *See Cannon v. Burge*, 752 F.3d 1079, 1083 (7th Cir. 2014). Defendants repeatedly pressed an electric cattle prod to his testicles and tried to lift him off the ground by the handcuffs that secured his hands behind his back. At another location, they drove the cattle prod into his mouth and hit him

9

with a police flashlight. Eventually, Cannon succumbed and falsely confessed to participating in the murder, which he later recanted.

Lavert Jones was interrogated for a murder case in January 1984 and was beaten by Defendants Byrne and Dignan at Area 2. *See* Exhibit E – 1987 Testimony of Lavert Jones in *People v. Jones,* 84 C 1497. Jones will testify that while he was handcuffed, Defendants beat him with a billyclub, their hands, and a telephone book. Jones was repeatedly beaten in the groin and kicked in his testicles, while being called a "nigger" and told he was a liar and to confess. Jones was forced to sign a confession to the murder, which he did not commit.

Cannon's and Jones' interrogations, like Plaintiff's was done while he was handcuffed, protesting his innocence, and secreted away from observers. Cannon and Jones were called a "nigger" and beaten with implements (a flashlight and a billyclub – Plaintiff was beaten with both), just as Plaintiff suffered. Cannon and Jones gave false confessions in response to the torture that they later recanted as fabricated. Thus, these similarities, and the closeness in time, show Defendants Byrne and Dignan's intent, opportunity, plan, and preparation. *See Wilson*, 6 F.3d at 1238; *see also Hill*, 2011 WL 3840336, at *8 (allowing admission of four other-act witnesses who would testify that they were beaten and interrogated in manner similar to Plaintiff, as it was relevant to establish the Defendant Officers "plan and preparation.").

### 6. Michael Tillman (related to Defendant Dignan)

Michael Tillman was interrogated on a murder charge by Defendant Dignan, and other officers, in July of 1986, under the supervision and direction Defendant Byrne. *Tillman v. Burge*, 813 F. Supp. 2d 946, 955-956 (N.D. Ill. 2011). *See* Exhibit F – Trial Testimony of Michael Tillman. Tillman was subjected to three days of torture and abuse. He was repeatedly punched while handcuffed to a wall, then later punched so violently in the head and stomach that he

10

vomited on his clothes and the floor. He was driven to a secluded location where he was forced to his knees, a gun was placed to his head, and the detectives threatened to kill him "like you killed that woman." Tillman was repeatedly kicked and struck with a flashlight; the detectives also pushed their thumbs against his ears, forcing his head back, and he was also suffocated with a plastic bag. Tillman was then forced to give a false confession to a state's attorney that was used against him at trial and resulted in his wrongful conviction.

Tillman and Plaintiff's interrogation both show Defendants intent, as well as their "plan and preparation" in beating suspects at Area 2 to coerced false confessions from them, and thus Tillman should be allowed to testify regarding Defendant's Dignan's misconduct. *See Wilson*, 6 F.3d at 1238; *see also Hill*, 2011 WL 3840336, at *8 (allowing admission of four other-act witnesses who would testify that they were beaten and interrogated in manner similar to Plaintiff, as it was relevant to establish the Defendant Officers "plan and preparation.").

In sum, Defendants repeatedly used physical violence and psychological coercion, including the specific peculiarity of giving information about the crime to the person being interrogated, during interrogations to force individuals to provide false information to Defendants that Defendants knew was false. This method of interrogation is both peculiar and idiosyncratic, and evinced their *modus* operandi, intent and along with a plan to abuse black suspects at Area 2 to secure false confessions to be used against them at trial. As such all of these witnesses should be permitted to testify at Plaintiff's trial. *United States v. Kieffer*, 68 F. App'x 726, 729 (7th Cir. 2003) ("Vaughn's testimony was also relevant to establish *modus operandi*, because it revealed Kieffer's distinctive way of luring his young victims into a situation where sexual contact would be easy to establish.").

### B. Other Bad-Act Evidence Should Be Admitted Against Defendant Burge.

Plaintiff, in his Response to Defendants' Motion *In Limine* No. 4, argued that evidence of Defendant Burge's convictions for perjury and obstruction of justice for lying about beating suspects and lying about witnessing those under his command beating suspects should be admitted. Plaintiff will refer this Court to that Response.

Plaintiff maintains that the prior sworn testimony of Melvin Jones, who testified against Burge at Burge's perjury trial, should be admitted under 404(b). *See* Exhibit G – 2000 Testimony of Melvin Jones in *People v. Cannon. See also United States v. Burge*, No. 08 CR 846 (Dkt. No. 388, Jones Testimony, pgs. 49-66) *attached* as Exhibit H. Jones testified that Defendant Burge subjected him to electroshock on his genitals while he interrogated at Area 2 in February 1982 (six months before Plaintiff's interrogation). Jones' testimony against Burge was used to convict Burge of perjury and obstruction of justice for not just personally abusing suspects at Area 2, but also for lying when he said that he did not witness other officers (including, as Banks' testified, Defendants Byrne and Dignan) at Area 2 physically abuse suspects. Moreover, Jones' testimony was erroneously barred in *Wilson,* where the Seventh Circuit found error in keeping out "on grounds of relevance the plainly relevant testimony of Melvin Jones, who claimed to have been subjected to electroshock by Burge and other officers nine days before the interrogation of Wilson. *Wilson* 6 F.3d at 1238. The Court found that Jones' testimony would have been relevant to the Defendants "intent, opportunity, preparation and plan and that the "exclusion of [Jones and another witness] incidentally doomed Wilson's case." *Id*.

Plaintiff is not asserting that because Burge and his subordinate previously abused a witness that Burge is more likely to have abused Plaintiff, which would be improper propensity evidence. Plaintiff has never alleged that Burge himself beat Plaintiff, instead, Plaintiff contends

12

that each instance in which Burge and those under his command abused suspects in order to fabricate evidence demonstrates the custom at issue here – a custom that Plaintiff is required to prove in order to succeed on his supervisor liability claim. Jones testimony is relevant to Defendant Burge's plan and preparation in beating suspects at Area 2 and in witnessing, and of condoning, other officers' torture of suspects while Burge was in charge.

**II.     The Other Bad-Act Evidence Can Be Proved By A Preponderance of the Evidence.**

The evidence is sufficient to support a jury finding that Defendants committed these other bad-acts. Each of Plaintiff's Rule 404(b) witnesses has testified in other sworn proceedings about the torture they experienced, and have prevailed in both state court and in federal civil court on their claims of torture Defendant Burge stands convicted of perjury for lying about his involvement in torturing suspects at Area 2 and has specifically found liable for torturing Andrew Wilson. Further, Defendants have exercised their Fifth Amendment rights in response to questioning about whether they abused other individuals at Area 2, adding to this analysis the inference from their exercise of their Fifth Amendment rights that their answers would have incriminated him. In short, there can be no legitimate fear that the Defendants are having false allegations leveled at them.

Moreover, Plaintiff's proposed other bad-act witnesses should not be barred from testifying because there is no "corroborating evidence" to find that these witnesses were beaten. *See Dfts. MIL No. 2*, pgs. 9-10. The evidence of their beatings is their own testimony. *See Okai v. Verfuth*, 275 F.3d 606, 611 (7th Cir. 2001) (explaining that instances of other misconduct could be admitted against defendant police officers when "the plaintiffs had actual evidence" in the form of "potential witness testimony, that they hoped to introduce."). Each of the live witnesses listed above have been *exonerated* of the crimes for which they were convicted, so they are not

13

"criminals" unworthy of belief as Defendants laughably claim. *Dfts. MIL* 2, pg. 9-10. The only reason that these men were "criminal defendants" in the first place was because the *Defendants fabricated evidence against* them (the witnesses physically tortured confessions) which were used to *wrongfully convict them*. For Defendants to claim that these men, many of whom have sued Defendants and prevailed, are not credible witnesses to their own torture at the hands of Byrne and Dignan because they are "murderers" or "criminals" is meritless.

Also, while Plaintiff maintains that no such "corroboration" is necessary, the 1990 Goldston/Sanders Report and the 2006 Office of the Special Prosecutors' Report Torture Report, attached as Exhibit A to *Plaintiff's Response to Defendant's MIL No. 1*, provides such "corroboration" of the witnesses claims that they were physically tortured by Defendants.[3] The Reports can be used to "rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground." *United States v. Davis*, 896 F.3d 784, 788 (7th Cir. 2018); Fed.R.Evid. 801(d)(1)(B). If Defendants challenge that the other bad-act witnesses testimony about the physical abuse suffered as a result of Defendants Byrne and Dignan's misconduct is false or newly fabricated, then Plaintiff should be allowed the rehabilitate these witnesses with evidence that they gave similar accounts of their torture to the OPS and to the OSP.

### III. Other Bad-Act Evidence Does Not Unfairly Prejudice Defendants.

Defendants' argument is that there is a danger of unfair prejudice by the introduction of this evidence that substantially outweighs its probative value. *Dfst. MIL 2*, pgs. 10-14. The key to though is that the prejudice must be "unfair" – meaning that the evidence has an undue tendency

---

[3] Defendants' object to the Goldston/Sanders report in their Motion *In Limine No. 1*, and Plaintiff has filed a Response to that motion.

to suggest decision on an improper basis. *Old Chief v. U.S.*, 519 U.S. 172, 180 (1997) (discussing Fed. R. Evid. 403 and the Committee notes therein). Here, the probative value of this evidence substantially outweighs any danger of prejudice associated with the evidence. As discussed above, courts have allowed this type of evidence because strong patterns of similar misconduct, close in time to the incident at issue in the complaint, are highly probative. Unlike the cases that Defendants cite in their Motion, the misconduct in these other cases is not unrelated disciplinary records or unrelated internal complaints. This evidence is live witness testimony, prior sworn testimony, and public reports. This is not evidence introduced to show mere "propensity" or otherwise suggest a decision to the jury on an improper basis. Instead, it is evidence which clearly lays Defendants *modus operandi*, intent, opportunity, preparation and plan. *Wilson*, 6 F.3d at 1238. The "unfair prejudice" prohibited by Rule 403 is not evidence that paints Defendants in a bad light. If that were so, no Rule 404(b) evidence would ever be admitted. *See United States v. Thompson*, 359 F.3d 470, 479 (7th Cir. 2004) ("all probative evidence is prejudicial to the party against whom it is offered"). Moreover, contrary to Defendants' claims, any prejudice that may result can be mitigated against by an appropriate cautionary instruction to the jury. *See United States v. Hernandez*, 84 F.3d 931, 935-36 (7th Cir. 1996).

     Finally, this is not evidence that will result in confusing mini-trials or forays into unrelated topics. Plaintiff will call a fraction of the available evidence of Defendants' other bad-acts. Instead, the above witnesses will briefly testify about the misconduct that occurred in their cases. Defendants are free to refute that evidence through cross-examination and providing their own version of what happened during those interrogations. Presenting this evidence will not require re-litigating the issues in those other cases, but simply presenting the evidence from these witnesses and allowing the jury to weigh its credibility.

WHEREFORE, Plaintiff respectfully requests that this Court deny Defendants' Motion *In Limine* No. 2, and allow Plaintiff to present evidence of Defendants' other misconduct.

Respectfully Submitted,

/s/ Jennifer Bonjean
One of the Attorneys for Plaintiff

Jennifer Bonjean
THE BONJEAN LAW GROUP
1000 Dean Street, Suite 422
Brooklyn, NY 11238
(917) 566-3926