**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**STANLEY WRICE,**

**Plaintiff,**

**v.**

**JON BURGE, JOHN BYRNE, and PETER DIGNAN,**

**Defendants.**

**Case No. 14 C 5934**

**Judge Harry D. Leinenweber**

# ORDER

The parties' Motions *in Limine* are resolved as follows. Plaintiff's Motions *in Limine* numbers 1, 2, 5, 6, 7, 10, 13, 15, and 16 (Dkt. Nos. 380, 381, 382, 383, 384, 385, 386) are granted. Plaintiff's Motions *in Limine* numbers 3, 4, and 11 (Dkt. Nos. 380, 383) are granted in part. Plaintiff's Motions *in Limine* numbers 8, 9, 12, and 14 (Dkt. Nos. 383, 384) are denied. Defendants' Motions *in Limine* numbers 3, 5, 6, 9, 12, 13, 14, 15, 17, 18, 19, 20 and 22 (Dkt. Nos. 389, 400, 391, 393, 402, 403, 404, 405, 407, 408, 396, 397, 399) are granted. Defendants' Motions *in Limine* numbers 1, 2, 7, 8, and 10 (Dkt. Nos. 387, 388, 401, 392, 394) are granted in part. Defendants' Motions *in Limine* numbers 4, 11, 16, 20, and 21 (Dkt. Nos. 390, 395, 406, 397, 398) are denied.

## I. BACKGROUND

This case concerns Stanley Wrice's ("Wrice") allegations that Chicago police officers coerced him into giving a false confession through torture and beat another witness, Bobby Joe Williams, into falsely implicating him. As a result of this alleged coercion, Wrice served a 31-year prison sentence for a crime he says he did not commit. The crime at issue was a 1982 violent sexual assault of a woman, KB, which took place in the attic of Wrice's home. (Am. Compl., Dkt. No. 63, ¶ 13.) Wrice was in the house the night of the assault and went upstairs at least twice, where he saw KB on a bed with several of Wrice's acquaintances. *See Wrice v. Burge*, No. 1:14-CV-5934, 2019 WL 932024, at *2 (N.D. Ill. Feb. 26, 2019) (denying Defendants' motions for summary judgment) (vacated by Order, Dkt. No. 476). On September 9, 1982, Wrice was arrested and taken for questioning at the Area 2 precinct, where Jon Burge and other Chicago police officers under his command are now known to have engaged in a decades-long practice of torturing suspects to extract statements. *See generally United States v. Burge,* 711 F.3d 803, 807–08 (7th Cir. 2013) (affirming Burge's perjury conviction for lying about his knowledge of and participation in "horrific" abuse). Wrice claims he was a victim of this torture during his interrogation at Area 2, and that Defendants' brutality coerced him into making an incriminating statement to Assistant States

Attorney Kenneth McCurry that was later used against him at his trial in violation of his Fifth Amendment privilege against self-incrimination and his Fourteenth Amendment right to due process. (Am. Compl. at ¶¶ 14, 33, 34.) In 1983, a Cook County jury found Plaintiff Stanley Wrice guilty of rape. The judge sentenced Wrice to 100 years in prison. (Am. Compl. at ¶ 39, Dkt. No. 63.) Wrice went on to serve 31 years in prison.

In December 2013, Cook County Circuit Court Judge Richard Walsh found that two Area 2 detectives, retired sergeant John Byrne ("Byrne") and retired detective Peter Dignan ("Dignan"), had lied at Wrice's trial when they denied torturing Wrice until he confessed. (*Id.* at ¶ 52.) Judge Walsh granted Wrice a new trial, and state prosecutors agreed to dismiss the charges against him. (*Id.* at ¶ 53.) Wrice maintains that he did not see or hear anything unusual the night of KB's assault and continues to deny that he played a role in it. (*Id.* at ¶ 35.)

Wrice now seeks damages for these constitutional violations pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 and Illinois state law against three individuals: Jon Burge's estate, Byrne, and Dignan. Specifically, Wrice alleges that Defendants conspired to withhold that they fabricated evidence against him in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and violated his Fifth and Fourteenth Amendment rights by torturing Wrice into confessing to

a crime he did not commit. He also brings state law conspiracy and respondeat superior claims. Finally, Wrice brings claims under *Monell v. Department of Social Service of City of New York*, 436 U.S. 658 (1978) against the City of Chicago; pursuant to Judge Elaine Bucklo's January 9, 2017, Order (Dkt. No. 148), however, those claims are bifurcated and stayed pending resolution of Wrice's § 1983 claims against the individual officers.

Below are the Court's rulings on the parties' Motions *in limine* for a jury trial set for February 18, 2020.

## II. LEGAL STANDARD

A motion *in limine* is a request for the court's guidance concerning an evidentiary question. *Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999); *Kiswani v. Phoenix Security Agency, Inc.*, 247 F.R.D. 554, 557 (N.D. Ill. 2008). The Court may give such guidance by issuing a preliminary ruling regarding admissibility. *Wilson*, 182 F.3d at 571. Trial judges are authorized to rule on motions *in limine* pursuant to their authority to manage trials, even though such rulings are not explicitly authorized by the Federal Rules of Evidence. *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984). Judges have broad discretion when ruling on motions *in limine*. *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir.2002). However, evidence may be excluded on a motion *in limine* only when the evidence is inadmissible on all potential

grounds. *Townsend v. Benya*, 287 F.Supp.2d 868, 872 (N.D. Ill. 2003). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT & T Techs., Inc.*, 831 F.Supp. 1398, 1400 (N.D. Ill. 1993). Thus, the party moving to exclude evidence *in limine* has the burden of establishing that the evidence is not admissible for any purpose. *Robenhorst v. Dematic Corp.*, No. 05-CV-3192, 2008 WL 1821519, at *3 (N.D. Ill. April 22, 2008).

This proceeding is not a retrial of Wrice's guilt or innocence. Nevertheless, Wrice's claim of innocence is central to his constitutional theories. He asserts that Defendants "fabricated" evidence against him by using abusive interrogation techniques to obtain testimony that they knew to be false. This theory requires Wrice to prove not only that Defendants coerced his and Williams's inculpatory statements, but that Defendants knew the inculpatory statements obtained as a result of their coercion were untrue. *See Fields v. Wharrie*, 740 F.3d 1107, 1110 (7th Cir. 2014) ("Coerced testimony . . . may be true or false. Fabricated testimony . . . is invariably false. False testimony is . . . known to be untrue by the witness and by whoever cajoled or coerced the witness to give it.") And while Wrice is correct that

the vacatur of his conviction restores his presumption of innocence for criminal purposes, *see Nelson v. Colorado*, 137 S.Ct. 1249, 1255–56 (2017), for purposes of this civil proceeding, the burden rests on him to establish the facts necessary to prove the theories he advances. If, as a factual matter, Wrice was indeed involved in KB's attack, then Defendants cannot have "known" of his innocence at the time they interrogated him and Williams. Accordingly, evidence supporting Wrice's involvement in the attack is relevant to the current proceedings because it tends to disprove an essential element of his fabrication of evidence claim.

With this framework in mind, the Court turns to the specific evidence the parties seek to exclude in these motions *in limine*.

**A. Plaintiff's Motions *in Limine***

1. *Motion to bar prior convictions*. Granted. The primary issues for trial are whether Defendants physically coerced Wrice into falsely confessing to KB's assault and similarly beat another witness, Bobby Joe Williams, into falsely implicating Wrice. Wrice seeks to bar evidence of his prior convictions and bad acts. Specifically, Wrice testified at his criminal trial that he pleaded guilty to three armed robberies in 1976 and spent several years in custody as a result of these convictions. Wrice argues that this evidence is irrelevant and prejudicial; in his view, Defendants

only seek to admit this evidence for the impermissible purpose of showing Wrice's propensity to criminal conduct.

To succeed on his *Brady* claim, Wrice must demonstrate that the government did not "disclose evidence materially favorable to the accused." *Youngblood v. West Virginia*, 547 U.S. 867, 869 (2006). Defendants argue that evidence of Wrice's prior convictions and previous bad acts is relevant and admissible to rebut the materiality element of Wrice's due process claims under *Brady*, to rebut his claim for damages, to challenge his credibility, or for other permissible purposes.

It is true that evidence of prior convictions and other misconduct may be admissible to rebut a § 1983 plaintiff's claim for damages. *See Cobige v. City of Chicago*, 651 F.3d 780 (7th Cir. 2011). In *Cobige*, the Seventh Circuit held that when a plaintiff's damages claim rests on evidence suggesting a "rosy view" of an individual's "character and life prospects," defendants are entitled to counter that evidence by showing the individual's record of "imprisonment, arrests, and addiction." *Id.* at 784. In those circumstances, the Seventh Circuit reasoned, the evidence of criminal conduct is not used "to establish propensity to commit another [crime]," but instead "is relevant to how much loss" the plaintiff suffered as a result of his injury. *Id.*

However, the Court is not persuaded that Wrice's past convictions are relevant to the materiality element of his due process claims. Further, admitting convictions more than ten years old for impeachment purposes is generally disfavored. FED. R. EVID. 609(b). While the jury in this case will indeed be asked to decide whether the outcome of the criminal trial would likely have been different were it not for the constitutional violations Wrice alleges, Wrice's brief testimony about his 1976 convictions played too minimal a role in his trial to warrant admission of the convictions in this case. The Court is also not persuaded that the 1976 convictions are admissible for the purpose of bolstering co-defendant Rodney Bearson's testimony about a statement Wrice allegedly made to him during their joint arrest. Finally, Wrice denies that his damages claim will open the door to the type of rebuttal evidence allowed under *Cobige*. Unless he opens the door to this rebuttal evidence, the marginal relevance of his past convictions to his damages claim is outweighed by its potential for unfair prejudice.

2. *Motion to bar prison violations*. Granted. The Court will revisit this if Wrice opens the door to the kind of rebuttal evidence described above. In addition, prison records are generally inadmissible as hearsay unless Defendants "establish the necessary foundation for the admissibility of such records under

an exception of the hearsay rule." *See Fields v. City of Chicago*, No. 1:10-CV-1168, 2014 WL 12778835, at *2 (N.D. Ill. Apr. 29, 2014) (granting motion *in limine* to exclude prison disciplinary records). It is not clear how Defendants intend to offer evidence of prison rule violations, so the Court is unable to determine if the evidence would be barred by the hearsay rule.

3. *Motion to bar evidence of Wrice's abuse of Jennifer Scott and evidence of Scott's age*. Granted in part. Wrice testified at his criminal trial that he was on the phone with his fiancé Jennifer Scott—whom he called from a phone booth in the alley near his house—at the time KB was attacked inside his home. At her deposition in this case, Scott testified that she was never Wrice's fiancé, nor even his girlfriend, and that although she shares three children with Wrice, the children are the fruits of a violent and abusive relationship that began when she was 14. Scott further testified that she did not speak to Wrice on the night of KB's attack because his ongoing abuse led her to cut all ties with him three months earlier, after the birth of their third child in June 1982.

Wrice does not dispute that Defendants may call Scott to rebut Wrice's alibi and to dispute that she was Wrice's fiancé or talked to him on the night in question. Wrice insists, however, that Scott's testimony about the violent nature of her relationship

with Wrice is irrelevant to any issue to be tried and serves only to paint Wrice in a bad light and suggest a propensity to commit violent crimes against women. The Court is aware that Scott's testimony about Wrice's abuse presents such a risk and may enflame the jurors' passions. Nevertheless, evidence of the nature of their relationship is relevant because it bears on the jury's assessment of the alibi Wrice presented at his trial. *See Fields*, 2014 WL 12778835 at *1 (admission of "evidence that plaintiff and other witnesses offered a false alibi" during criminal trial "was admissible on the question of plaintiff's credibility"). Therefore, Scott may testify, as she did at her deposition, that she cut all ties with Wrice once their third child was born. And Scott can explain why she had cut off ties with Wrice. However, the Court will closely monitor this subject of testimony to ensure that it does not become too prejudicial.

Evidence of Scott's age at the time they started their relationship, on the other hand, is irrelevant and prejudicial relative to its probative value.

4. *Motion to bar letters between Wrice and Scott*. Granted in part. Defendants will not be permitted to conduct a side-trial about Wrice's alleged abuse of Scott. However, Defendants may introduce letters between Wrice and Scott if the letters include

any evidence tending to suggest the veracity of Wrice's alibi, or Wrice's guilt or innocence in KB's assault.

5. *Motion to bar testimony of Lois Lewis*. Granted. Kenny Lewis was a witness for the state in Wrice's criminal case. Lois Lewis testified at her deposition in this case that "around September of 1982," her late son told her that he saw Wrice upstairs in his house assaulting a white woman. Kenny's statements to Lois are hearsay. Defendants argue that they do not intend to offer Lois's testimony for the truth of Kenny's statements, but instead to rebut Wrice's anticipated attack on Kenny's trial testimony. Defendants expect Wrice to argue that Kenny's trial testimony is not believable for reasons including that he was not actually present for KB's attack and was improperly called to testify about events he did not witness. In Defendants' view, Lois's testimony about what Kenny told her is admissible as a prior consistent statement under Federal Rule of Evidence 801, to rebut Wrice's anticipated arguments of recent fabrication and improper motive. But Rule 801(d)(1)(B) contemplates the admission of prior consistent statements only when four criteria are met: "(1) the declarant testifies at trial and is subject to cross-examination; (2) his prior statement is indeed consistent with his trial testimony; (3) the statement is offered to rebut an explicit or implicit accusation of recent fabrication; and (4) the statement was made

before the declarant had a motive to fabricate." *United States v. Alviar*, 573 F.3d 526, 541 (7th Cir. 2019). These criteria are not satisfied here, as Kenny is unavailable to testify. Nor does Lois's testimony support Defendants' argument that Kenny's statements fall within Rule 803(b)'s "excited utterance" exception. Lois testified that she couldn't recall when Kenny told her what he saw, and that it was probably the day after the event.

Finally, Lois's testimony that Wrice was "the neighborhood thief" who was "always in trouble, always doing something stupid," and that she once saw him with a sawed-off shotgun, is inadmissible propensity evidence. Even if, as Defendants argue, this evidence is marginally relevant to damages under *Cobige*, any relevance it may have in this regard is clearly outweighed by its prejudicial value.

6. *Motion to bar reference to the Certificate of Innocence findings.* Granted. Wrice petitioned the State of Illinois for a Certificate of Innocence, which the State denied. Inherent in Wrice's fabrication of evidence theory is the assumption that Defendants knew he was innocent of KB's attack. Accordingly, evidence of Wrice's guilt is admissible. But a petitioner must prove his innocence by a preponderance of the evidence to obtain a Certificate of Innocence; the fact that Wrice failed to meet this burden does not suggest guilt, particularly when Illinois law

stipulates that the denial of a Certificate of Innocence "shall not have a res judicata effect on any other proceedings." 735 ILCS 5/2-702(j).

7. *Motion to bar expert testimony of Stephen Saltzburg*. Granted. Defendants seek Stephen Saltzburg to testify as an expert witness regarding the legal reasons for invoking the Fifth Amendment. It is the Court's role, not an expert's, to instruct the jury as to the proper inferences that may be drawn by Defendants' invocation of the Fifth Amendment. *See Panter v. Marshall Field Co.*, 646 F.2d 271, 294 n.6 (7th Cir. 1981). Furthermore, the "only valid reason to invoke the Fifth Amendment is a reasonable fear that truthful answers may incriminate the witness." *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 603 (7th Cir. 2019). The law is clear about when it is proper to invoke the Fifth Amendment, and for what purpose. Expert testimony on this point is unnecessary and will be confusing to the jury.

8. *Motion to bar transcript of Defendant Byrne's trial testimony.* Denied. If, as Wrice anticipates, Byrne invokes his Fifth Amendment privilege against self-incrimination in this trial, Wrice will be entitled to ask the jury to draw an adverse inference from that invocation. Byrne cannot offer his prior testimony for its truth while simultaneously invoking the Fifth Amendment as a shield against cross-examination. *See e.g., United*

*States v. Bennett*, 539 F.2d 45, 54 (10th Cir. 1976) ("The right not to testify is clearly his, but the defendant may not invoke that right and avoid cross-examination while claiming the right to have his testimony put before the jury.")

Defendants are correct that a witness who invokes the Fifth Amendment is unavailable for the purposes of Federal Rule of Evidence 804, and that Rule 804(b)(1) allows introduction of an unavailable witness's previous trial testimony. But a witness who invokes his Fifth Amendment privilege against self-incrimination is "unavailable" to be called as a witness only by parties other than himself. *United States v. Peterson*, 100 F.3d 7, 13 (2d Cir. 1996) ("In general, a person who properly invokes his Fifth Amendment privilege, leaving others powerless to compel his testimony, is considered to be unavailable to others for purposes of Rule 804."). Thus, Byrne's previous trial testimony is allowed except where his invocation of his Fifth Amendment rights does not make him unavailable, a determination the Court will make when the specific question is presented. Finally, the jury will be instructed on the inferences it may draw from the expected invocation of the Fifth Amendment, as well as on the proper purposes for which it may consider Byrne's previous trial testimony.

9. *Motions to bar transcript of the trial testimony of witnesses Bobby Joe Williams, Frankie Peters, Jim Sanders, Elbert Harris, Charles Wrice, Labrenda White, and Dr. Nolan Lewis.* Denied. Wrice insists that Defendants seek witnesses from the 1983 trial to testify in this case and read their original testimony into the record in a manner that will elicit duplicative testimony. In response, Defendants state that two of these witnesses, Frankie Peters and LaBrenda White, are now deceased. Defendants further represent that they have not determined whether they will call Jim Sanders, Elbert Harris, or Charles Wrice to testify at trial, and that to the extent they call these witnesses to provide live testimony on "other matters," it will not be to elicit duplicative testimony. If the witnesses are called at trial, Wrice will be entitled to cross-examine them about their earlier statements. The witnesses' original trial testimony is highly relevant to the *Brady* materiality element, and the Court is not persuaded that it should be barred on the ground that the witnesses might also be called to provide live testimony in this case. However, the Court notes again that this trial will not be a repeat of Wrice's criminal trial, and to the extent that live testimony becomes unnecessarily cumulative or duplicative, the Court will limit it to not prejudice Wrice.

10. *Motion to bar Lee Holmes's bond hearing testimony.* Granted. Lee Holmes testified at Wrice's 1982 bond hearing. Defendants argue that Holmes's testimony is not being offered for its truth but instead for its effect on Defendants' state of mind. This undeveloped argument is unpersuasive: Defendants do not indicate how or when they became aware of Holmes's testimony or explain how it affected their "belief/knowledge" of Wrice's involvement in KB's attack.

11. *Motion to bar Rodney Benson's 2008 deposition testimony in Cannon v. Burge.* Granted in part. Rodney Benson was Wrice's co-defendant and was at Wrice's home on the night of KB's assault. At his deposition in this case, Benson was impeached with his prior inconsistent deposition testimony in *Cannon v. Burge*. This motion is granted to the extent that Benson's testimony is not substantive evidence in this case. However, Defendants may use Benson's 2008 deposition testimony in *Cannon v. Burge* to impeach Benson's testimony in this case.

12. *Motion to bar Kenny Lewis's 1983 trial testimony.* Denied. Because he is deceased, Lewis is unavailable for the purposes of Federal Rule of Evidence 804(b)(1). Defendants argue that Wrice has already had an opportunity to cross-examine Lewis to discredit his inculpatory statements. Wrice argues that new evidence has made Lewis's testimony unreliable: for example, Lewis became a

State witness only one week before trial, and Scott testified at a subsequent deposition that Lewis was part of a group of people who wanted to hurt Wrice and may have acted to remove Wrice from Scott's life. But with the exercise of diligence, this information could have been discovered at the time of trial, where Wrice had the chance to cross-examine Lewis. Wrice argues that Lewis's testimony is unreliable given this new evidence, but the Seventh Circuit has rejected the argument that the testimony of a witness otherwise admissible under Rule 804(b)(1) can be excluded if a court later deems it unreliable. *United States v. Pizarro*, 717 F.2d 336, 350 (7th Cir. 1983).

13. *Motion to bar police reports.* Granted. Police reports are generally excluded as hearsay "except to the extent to which they incorporate firsthand observations of the officer." *Jordan v. Binns*, 712 F.3d 1123, 1133 (7th Cir. 2013).

14. *Motion to bar medical illustrations of KB's injuries.* Denied, but Defendants must lay the proper foundation to introduce these exhibits. The pictorial depiction of KB's injuries was part of the evidence considered by the jury in the criminal case and it is relevant to consideration of the credibility of various witnesses as to what happened on the night in question.

15. *Motion to bar reference to gang membership.* Granted. Defendants argue that Wrice opened the door to this evidence by

testifying at his criminal trial that the other men at his house on the night in question were in a gang together, and were with KB in the attic of his house until he, a peaceful bystander unaware of the conduct committed by men he barely knew, kicked them all out of his house. Defendants submit that Wrice's own membership in a gang is admissible to rebut Wrice's effort to distance himself from the other individuals at his house, but any probative value to Wrice's gang membership is substantially outweighed by the likelihood of unfair prejudice.

16. *Motion to bar reference to witness Bertina Lampkin as "Judge" or "Justice."* Granted to the extent Wrice seeks to bar counsel from addressing the witness as "Justice" or "Judge" during her examination. Wrice does not object to disclosing to the jury that the witness is currently an Appellate Court Justice in the Illinois First District Appellate Court.

**B. Defendants' Motions *in Limine***

1-2. *Motions to bar evidence of alleged pattern and practice.* Granted in part. Defendants had a duty to disclose to Wrice any physical interrogation of any witness at his criminal trial. Under *Thompson v. City of Chicago*, 722 F.3d 963 (7th Cir. 2013), evidence of a pattern and practice of beating suspects is *Brady* material. Testimony of citizen witnesses presented to demonstrate a pattern and practice of police misconduct is "highly probative" because it

helps "establish that critical impeachment evidence—the officers' involvement in a pattern of [misconduct]—existed and was withheld." *Thompson*, 722 F.3d at 974. There is tension with FED. R. EVID. 404(b), *see United States v. Gomez*, 763 F.3d 845 (7th Cir. 2014), but *Thompson* is the law. Wrice must be allowed to present evidence of a pattern and practice of police misconduct because it is highly probative. But it is important both that the amount of evidence presented does not arise to the level of unfair prejudice and that, relatedly, the focus of the trial stays on Wrice's experience at Area 2. Accordingly, Wrice may call Eric Smith and Alonzo Smith as witnesses.

3. *Motion to Bar Evidence from Dennis Waller*. Granted. Wrice concedes this evidence is in general relevant to the *Monell* claim, which has been bifurcated.

4. *Motion to bar evidence of Burge's 2011 conviction.* Denied. Federal Rule of Evidence 609 requires admission of a prior conviction if establishing the elements of that conviction required proof of a false statement or dishonest act. First, Defendants argue that Burge's perjury conviction falls outside this rule because he is deceased and, in his deposition in this case Burge invoked the Fifth Amendment to all questions, no testimony exists to impeach his conviction. Secondly, Defendants argue that allowing evidence of Burge's conviction is prejudicial

relative to its probative value because the jury will conclude that because Burge was found guilty of obstructing justice in previous cases, he obstructed justice in this case. Wrice counters that the probative value of this conviction is very high because it explains why Burge and other Defendants have invoked their Fifth Amendment rights during depositions. Defendants seem to plan to argue that there are valid reasons why an innocent person would invoke his Fifth Amendment rights. Because Defendants plan to make that argument, Wrice will be allowed to introduce Burge’s conviction as an explanation for why Defendants invoke their Fifth Amendment rights during depositions. Moreover, the jury will have to assess Burge’s credibility. His conviction is extremely probative in this assessment.

5. *Motion to bar evidence of witnesses receiving reparations.* Granted. Defendants move to bar evidence of Wrice and other witnesses receiving reparations from the City of Chicago under the Reparations for the Chicago Police Torture Survivors Ordinance. Wrice filed a claim under this ordinance, the City disputed the claim, and an arbitral process followed, with Judge David Coar finding for Wrice and against the City. Judge Coar’s findings are hearsay. The public records exception does not apply because the proceedings before the arbitrator and under the ordinance were informal and non-adversarial. Moreover, Judge Coar’s findings are

highly prejudicial because there is significant issue overlap. It is for the jury to decide, after hearing all the evidence, whether the witnesses' torture claims are credible.

6. *Motion to bar evidence of Judge Walsh's findings.* Granted. Defendants move to bar Judge Richard Walsh's findings at the conclusion of Wrice's post-conviction hearing. In vacating Wrice's conviction, Judge Walsh commented on his views of conditions at Area 2 and compared it to the Abu Ghraib facility in Iraq. Judge Walsh's remarks at the conclusion of Wrice's post-conviction hearing are not relevant to this trial. Further, David Protess ("Protess"), a former professor at Northwestern University, led an independent investigation with his students on Wrice's behalf. Protess and his students interviewed witnesses and obtained affidavits that Wrice used in his post-conviction petition. Wrice argues that Judge Walsh's findings should be introduced if Defendants argue that Wrice secured his post-conviction relief through impropriety or coercion, or that Protess and his students used any improper tactics in the course of their investigation. The Court agrees. Accordingly, Judge Walsh's findings will only be admissible if Defendants suggest that Wrice's release from prison was due to any impropriety or coercion by David Protess, his students, or anyone else.

7. *Motion to bar evidence of invocation of Fifth Amendment Right by Defendants*. Granted in part. "To qualify for Fifth Amendment privilege, a communication *must* be testimonial, *incriminating*, and compelled." *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt Cty.*, 542 U.S. 177, 189 (2004) (emphasis added). A Fifth Amendment invocation is therefore important evidence. *See generally Ruiz-Cortez*, 931 F.3d at 603 (explaining that juries are permitted to draw adverse inferences from a defendant's invocation of the Fifth Amendment). However, it is important to be efficient and to not waste the jury's time. Accordingly, Wrice may call Defendants Byrne and Dignan to the witness stand and ask as many as 20 questions (objectionable questions will still count among that number).

8. *Motion to bar reference to indemnification by the City.* Granted in part. If Defendants testify as to their financial circumstances and inability to pay a judgment, Wrice will be permitted to introduce evidence that Defendants are indemnified by the City of Chicago.

9. *Motion to bar evidence of Wrice's prison finger amputation*. Granted by agreement of parties.

10. *Motion to bar witnesses not disclosed.* Granted in part, subject to the ruling in Defendants' Motions 1 and 2. Because of the Court's ruling above, the two witnesses left to be addressed

are Eric Smith, a pattern and practice witness, and Patricia Wrice, Plaintiff Wrice's sister. Defendants claim that Plaintiff did not properly disclose witnesses pursuant to FED. R. CIV. P. 26. Rule 26 requires disclosure of "the name, and if known, the address and telephone number of each individual likely to have discoverable information." FED. R. CIV. P. 26(a)(1)(A)(i). A party who fails to make these disclosures is barred from calling the witness at trial "unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1)(A). In deciding whether a failure to disclose was substantially justified or harmless, four factors guide a district court in using its discretion: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

Even if the Court assumes that Plaintiff failed to properly disclose Smith to Defendants, Smith should not be barred from testifying under Rule 37 because the failure was harmless. Plaintiff's use of citizen witnesses such as Eric Smith and Alonzo Smith to establish a pattern and practice of coercive interrogation practices is standard in cases involving torture allegations. *See e.g., Thompson*, 722 F.3d at 969 (noting that plaintiff called

citizen witnesses to establish pattern and practice of police malfeasance). Eric Smith is already known to Defendants as a survivor of Chicago Police torture. *See, e.g., Tillman v. Burge*, 813 F.Supp.2d 946, 958 n.6 (N.D. Ill. 2011) (listing Eric Smith as among the names of Burge torture victims). Defendants argue that they have not had a chance to depose Smith in this case, but this argument fails because pattern witnesses are used to establish a systematic practice of police violence separate from an individual plaintiff’s claim. In practice, this means that a pattern and practice witness should not need to be re-deposed in every case—a pattern witness’s testimonial consistency is part of what gives his story its credibility. Given that Defendants have been aware of Eric Smith’s allegations for years and the well-established principle that pattern and practice evidence of police misconduct is admissible, it should be unsurprising to Defendants that Plaintiff seeks to call a witness such as Smith. The Court finds that there is no real prejudice to Defendants by this lack of disclosure, and therefore no risk of trial disruption. Finally, the Court sees no bad faith or willfulness in any failure to disclose.

With respect to Patricia Wrice, the Court finds that Plaintiff did not violate Rule 26 by failing to properly disclose Patricia as a potential witness. Plaintiff only provided Patricia’s name,

telephone number, and general area of Chicago where Patricia had been last known to stay—Plaintiff claims that he did not know Patricia's actual address. Rule 26 only requires a name and "if known," a telephone number and address. Plaintiff claims he provided all information known to him; if Defendants thought this untrue, they might have moved to compel disclosure under Rule 37(a)(3)(A). Defendants do not claim to have made any attempt to contact Patricia despite having her phone number. Thus, Plaintiff will be allowed to call Patricia as a witness.

11. *Motion to bar evidence that Wrice did not receive Miranda warnings.* Denied. Defendants argue that the failure to read a criminal defendant his *Miranda* warnings does not violate a person's Constitutional rights and cannot form the basis of a Section 1983 action. However, in determining whether a confession was voluntary, courts look to the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). The Seventh Circuit has ruled that one of the factors in assessing voluntariness is whether a defendant was read his *Miranda* rights. *Conner v. McBride*, 375 F.3d 643, 651 (7th Cir. 2004). Defendants reply that Wrice does not claim he gave a false statement because he was not read his *Miranda* rights; rather, he claims he was physically coerced into giving a false statement. This argument misses the point. Whether a suspect has been read his *Miranda*

warnings is probative to the question whether coercion occurred. It is a symptom, not a cause, and Wrice will be allowed to argue that he did not receive his warnings.

12. *Motion to bar evidence regarding KB.* Granted. KB's sexual history and alleged alcoholism are not relevant to the Wrice's claims and are prejudicial.

13. *Motion to bar evidence that there was a duty to videotape interviews.* Granted. There was no duty to videotape interviews at the time Wrice was interrogated; Illinois law did not require interviews to be videotaped until 2005. 725 ILCS 5/103-2.1. Wrice may inquire as to whether the interrogations were in fact videotaped, and either side can ask appropriate witnesses whether the facility had videotape facility.

14. *Motion to bar evidence regarding CPD internal rules*. Granted. Neither party had indicated a desire to use CPD rules or regulations as evidence, and Wrice does not contend that there are any in issue.

15. *Motion to bar reference to a "Code of Silence."* Granted. Wrice is allowed to introduce evidence that Defendants conspired with each other to deprive Wrice of his constitutional rights, but he will not be allowed to make broad references to or allege a police "code of silence."

16. *Motion to bar evidence that the CPD improperly investigated the assault*. Denied. Evidence of an improper investigation may be appropriate, so this will be handled on a case-by-case basis.

17. *Motion to bar evidence that counsel acted improperly*. Granted by agreement of parties.

18. *Motion to bar mention of Fraternal Order of Police disclaimer.* Granted by agreement of parties.

19. *Motion to bar reference to Defendants' offer of judgment or any other settlement discussions.* Granted by agreement of parties.

20. *Motion to bar comment on a Defendant's absence during portions of the trial.* Granted. Wrice will not be allowed to comment on a Defendant's absence or argue that the jury should draw an adverse inference from any Defendant's absence during a part of trial.

21. *Motion to bar argument or implication that Defendants failed to call a witness or present evidence at trial.* Denied. Defendants do not argue this motion with specificity, and the Court cannot decide this motion in a vacuum. Thus, the Court will decide on a case-by-case basis whether Wrice will be allowed to argue or imply that Defendants did not call a particular witness or present specific evidence at trial.

22. *Motion to exclude witnesses and communication regarding testimony until conclusion of testimony.* Granted by agreement of parties.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: 1/7/2020