**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **STANLEY WRICE,** | |
| Plaintiff, | |
| v. | Case No. 14 C 5934 |
| **JON BURGE, JOHN BYRNE, and PETER DIGNAN,** | Judge Harry D. Leinenweber |
| Defendants. | |

### MEMORANDUM OPINION AND ORDER

For the reasons stated herein, Defendant Burge's Motion for Summary Judgment (Dkt. No. 324) is granted.

### I. BACKGROUND

Plaintiff Stanley Wrice ("Wrice") claims that Chicago police officers tortured him until he falsely confessed to a brutal sexual assault of a woman that took place in the attic of Wrice's home in 1982. (Am. Compl., ¶ 13, Dkt. No. 63.) Wrice also claims that Chicago police beat another witness into falsely implicating him. Because of this alleged coercion, Wrice served a 31-year prison sentence for a crime he says he did not commit.

On September 9, 1982, Wrice was arrested and taken for questioning at the Area 2 precinct, where Jon Burge ("Burge") and other Chicago police officers under his command are now known to have engaged in a decades-long practice of torturing suspects in

their custody. *See United States v. Burge*, 711 F.3d 803, 807–08 (7th Cir. 2013) (affirming Burge's perjury conviction for lying about his knowledge of and participation in "horrific" abuse). Wrice claims he was a victim of this torture during his interrogation at Area 2, and that Defendants' brutality coerced him into making an incriminating statement to an Assistant States Attorney that was later used against him at his trial in violation of his Fifth Amendment privilege against self-incrimination and his Fourteenth Amendment right to due process. (Am. Compl., ¶¶ 14, 33, 34.) Wrice claims that two Chicago police officers, John Byrne ("Byrne") and Peter Dignan ("Dignan"), personally tortured him and the witness who implicated Wrice. (Am. Compl., ¶ 1.) Byrne and Dignan allegedly did this "acting under the direct supervision" of Burge. (*Id.*) Specifically, Wrice claims that Burge supervised, encouraged, and ratified Wrice's abuse, and conspired to cover up evidence that would have supported Wrice's innocence. (*Id.* ¶¶ 7, 94.)

Judge Elaine Bucklo first denied summary judgment as to all Defendants in February 2019. *See Wrice v. Burge*, No. 14-CV-5934, 2019 WL 932024, at *6 (N.D. Ill. Feb. 26, 2019) (vacated in part by Order, Dkt. No. 476). As to Defendant Burge, Judge Bucklo found that a jury "could reasonably conclude, on this record, that Burge was at the helm of an abusive 'interrogation regime' at the time

of Wrice's arrest." *Wrice*, 2019 WL 932024, at *6. Further, Wrice's co-defendant testified that Burge arrested him in September 1982, "suggesting that Burge was involved in investigating the specific crimes with which Wrice and his co-defendants were charged." *Id.* Finally, Judge Bucklo found that Burge's assertion of his Fifth Amendment privilege against self-incrimination at his deposition in this case entitled a jury to draw an adverse inference from his silence. *Id.* Put together, this evidence required denying summary judgment as to Burge.

During the parties' motions *in limine* arguments, however, it became clear that Wrice's co-defendant misspoke in testifying that Burge arrested him. As a result, Judge Bucklo concluded that "there is no genuine dispute on the evidence in this case that Burge neither arrested nor interrogated anyone who was at the Wrice house on the night in question." (Order at 4.) Because Burge was not personally involved in Wrice's arrest and interrogation, evidence Judge Bucklo cited as a basis for her summary judgment decision was incorrect. Accordingly, Judge Bucklo reversed her previous denial of summary judgment as to Defendant Burge.

Even though Burge was not personally involved in Wrice's interrogation and the doctrine of *respondeat superior* does not support liability under 42 U.S.C. § 1983, evidence showing that a supervisor knew about, facilitated, or even turned a "blind eye"

to constitutional violations can establish personal involvement in the unconstitutional conduct. *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). Thus, the question remains whether the record evidence allows for a genuine dispute of material fact about Burge's knowledge, condoning, or facilitation of Wrice's abuse. The Court now turns to that question.

## II. LEGAL STANDARD

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Liu v. T&H Mach., Inc.*, 191 F.3d 790, 794 (7th Cir. 1999) (citation omitted). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court construes all facts and reasonable inferences in the light most favorable to the nonmoving party. *See Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).

## III. ANALYSIS

Burge cannot be held liable solely for supervising Byrne and Dignan under § 1983 because "the doctrine of *respondeat superior*, which makes the employer liable without fault on his part for torts

committed by his employees in furtherance of their employment, [is] not applicable" in § 1983 actions. *McKinnon v. City of Berwyn*, 750 F.2d 1383, 1390 (7th Cir. 1984) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 691–94 (1978)). Nor can Burge be held liable under § 1983 for being merely negligent as a supervisor; instead, he must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he] might see. [He] must in other words act either knowingly or with deliberate, reckless indifference." *Jones*, 856 F.2d at 992–93. "[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

When a defendant invokes his Fifth Amendment privilege against self-incrimination, a jury can draw adverse inferences from the choice to remain silent. *See Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt Cty.*, 542 U.S. 177, 189 (2004) ("To qualify for the Fifth Amendment privilege, a communication *must* be testimonial, *incriminating*, and compelled.") (emphasis added). A plaintiff cannot fully rest on a Fifth Amendment invocation, however, because while "[s]ilence is a relevant factor to be considered in light of the proffered evidence, . . . the direct inference of guilt from silence is forbidden." *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 390 (7th Cir. 1995).

Accordingly, Wrice's § 1983 supervisory liability claims against Burge cannot survive unless he can identify evidence, in addition to Burge's silence, that Burge knew or turned a blind eye to Byrne's and Dignan's actions against Wrice.

Wrice argues that the evidence in the record, considered as a whole, is more than sufficient to meet his summary judgment burden. First, Wrice cites Burge's previous Fifth Amendment invocations. Burge declined to answer questions about his relationship with Defendants Byrne and Dignan and would not say whether he trained his detectives to use violence against suspects that included bagging, suffocation, electric shock, and use of a blackjack. Burge also invoked the Fifth Amendment to avoid answering questions about whether he closely monitored interrogations in the 1980s by standing outside the door and refused to say whether he had knowledge that Byrne and Dignan beat Wrice at Area 2.

Second, Wrice cites Burge's, Dignan's, and Byrne's prior sworn testimony as evidence. In a prior deposition, Burge testified that detectives at Area 2 were always under his close supervision. Burge claimed that he often listened to ongoing interrogations by standing immediately outside the door. Further, both Dignan and Byrne testified that Burge worked 15- or 16-hour days and kept a close eye on ongoing investigations. Byrne also admitted he was

close to Burge, and that Burge brought Byrne to Area 2 in 1982 to supervise detectives under Burge's command.

Third, Wrice points to Gregory Banks ("Banks"), who was identified as a witness to testify to his own interrogation at Area 2 in October 1983. According to Wrice, Banks was to testify that Byrne and Dignan put a plastic bag over his head, stuck a gun in his mouth, and beat him until he made inculpatory statements. During the interrogation, Burge briefly came into the room. (The Court barred Banks's testimony, *see* Motions *in limine* Order, 18–19, Dkt. No. 482.)

Finally, Wrice notes findings from an Office of Professional Standards investigation of torture claims against Burge. The investigation report, known as the "Goldston Report," identified 50 victims of Area 2 torture between 1973 and 1986, over half of which involved Burge's personal participation. The report also implicated Byrne and Dignan and concluded that systematic abuse occurred—abuse that was condoned, encouraged, or willfully ignored by supervising officers, including Burge. The Seventh Circuit affirmed these findings in *Burge*, 711 F.3d 803, and wrote that Burge "presided over an interrogation regime" that resulted in the torturing of suspects for the purposes of obtaining confessions. (The Court also barred presentation of the Goldston Report, *see* Motions *in limine* Order, 18–19.)

Burge argues that there is not enough evidence beyond his Fifth Amendment invocation to establish supervisory liability. He also argues that the Goldston Report, Banks's testimony, and Byrne's and Dignan's prior testimony is at best relevant to Wrice's *Monell* claim and constitutes pattern evidence, and gives no indication whether Burge had personal knowledge of Wrice's interrogation.

Another case in this District is instructive and distinguishable. *Kluppelberg v. Burge*, No. 13-CV-3963, 2017 WL 3142757 (N.D. Ill. July 25, 2017). The *Kluppelberg* case involved a 1984 fire that killed six people. Kluppelberg gave a false confession after being tortured in police custody, was wrongly convicted of arson, and served 23 years in prison. After his exoneration, Kluppelberg filed suit against the City of Chicago and a number of individual defendants; this included supervisory liability claims under § 1983 against Burge. *Id.* at *1–*3. Kluppelberg's supervisory liability claims against Burge survived summary judgment in part because of Burge's Fifth Amendment invocation and prior testimony that Burge was an involved, hands-on supervisor. *Id.* at *6–*7. But Kluppelberg also presented evidence showing that the arson case was high-profile and had a police practices expert opine that because of the publicity, Burge would have been given status updates and spoken to investigators.

*Id* at *7. Because of this, the *Kluppelberg* court concluded that there was enough evidence "that Burge knew of or turned a blind eye to the actions of [the detectives under his supervision]." *Id.*

To survive summary judgment on his § 1983 supervisory liability claim against Burge, Wrice must do more than present general evidence that Burge knew of and condoned the torture his subordinates were committing. There can be no doubt that Burge was at the helm of a vast and vicious torture regime, or that Burge and his subordinates regularly committed horrific abuses of power to extract confessions from the people in their custody. But that fact on its own is not enough for Wrice's claim to survive. Wrice must present evidence, beyond Burge's silence, that Burge knew *specifically* of Wrice's interrogation and torture.

Wrice has not presented that evidence. In *Kluppelberg*, evidence that the high-profile nature of the case meant that an already hands-on supervisor such as Burge would be much more likely to be involved. By contrast, Wrice has presented nothing specific to his own case: he has not presented evidence that Burge worked the day of his interrogation, that some unique circumstances of the case meant that Burge would be particularly likely to keep close tabs, or anything else beyond general pattern and practice evidence. For this reason, Wrice's supervisory liability claim against Burge cannot survive.

## IV. CONCLUSION

For the reasons stated herein, Defendant Burge's Motion for Summary Judgment (Dkt. No. 324) is granted.

**IT IS SO ORDERED.**

                                      Harry D. Leinenweber, Judge
                                      United States District Court

Dated: 1/27/2020