1974

1        IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
2                   EASTERN DIVISION

3    STANLEY WRICE,                    )
                                       )
4                    Plaintiff,        )
     -vs-                              )    Case No. 14 C 5934
5                                      )
     JOHN BYRNE, former Chicago        )    Chicago, Illinois
6    Police Sergeant, et al.,          )    March 3, 2020
                                       )    10:00 a.m.
7                    Defendants.       )

8
                          VOLUME 9
9          TRANSCRIPT OF PROCEEDINGS - TRIAL
       BEFORE THE HONORABLE HARRY D. LEINENWEBER and a jury
10
     APPEARANCES:
11   For the Plaintiff:    MS. JENNIFER A. BONJEAN
                           MS. ASHLEY BLAIR COHEN
12                         Bonjean Law Group PLLC
                           467 Saint Johns Place
13                         Brooklyn, NY 11238
                           (718) 875-1850
14
                           MS. HEIDI LINN LAMBROS
15                         1169 S. Plymouth Court, Suite 123
                           Chicago, IL  60604
16                         (216) 318-4087

17   For the Individual
     Defendants:           MR. ANDREW M. HALE
18                         MR. SCOTT J. JEBSON
                           MS. AMY HIJJAWI
19                         MS. JENNIFER BITOY
                           Hale & Monico LLC
20                         53 W. Jackson Boulevard, Suite 330
                           Chicago, IL  60604
21                         (312) 341-9646

22   Court Reporter:
               KATHLEEN M. FENNELL, CSR, RPR, RMR, FCRR
23                    Official Court Reporter
                   United States District Court
24          219 South Dearborn Street, Suite 1426
                    Chicago, Illinois  60604
25            Telephone:   (312) 435-5569
              Kathleen_Fennell@ilnd.uscourts.gov

1975

1  APPEARANCES:  (Continued)

2  For Defendant
   City of Chicago:        MS. CARYN L. JACOBS
3                          Department of Law, City of Chicago
                           121 North LaSalle Street,  City Hall
4                          Suite 600
                           Chicago, IL  60602
5                          (312) 744-5128

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    (Proceedings heard in open court, jury out:)

2        MR. HALE:  Judge, we do object to -- would you mind

3    grabbing that OPS document?

4        MS. BONJEAN:  Mm-hmm.

09:57:40    5        MR. HALE:  Jennifer, do you know what exhibit this

6    is?

7        MS. BONJEAN:  Ash?

8        Plaintiff's Exhibit...

9        MR. HALE:  So while we're looking up the exhibit

09:57:51    10    number, Judge, this is the OPS two-page typed memo about Bobby

11    Joe Williams.  Our objection is it's the only document going

12    back that's like a document, and, you know, as opposed to

13    photographs and physical evidence.

14        We think this unhighly -- unfairly highlights one

09:58:09    15    particular piece of evidence.  For instance, the summaries

16    aren't going back.  You know, trial testimony is not going

17    back.  But them getting this and only this in terms of, you

18    know, textual documents, we think it unfairly highlights this

19    portion of the case.  And so we would object to it going back.

09:58:29    20        MS. BONJEAN:  Judge, I mean, it was admitted into

21    evidence.  I don't know -- it's a piece of evidence they

22    agreed to it being admitted, if you remember.  I don't know

23    what the grounds would be not to send a piece of evidence

24    back.

09:58:39    25        THE COURT:  I don't either.  I'll overrule the

1977

1  objection.

2          MS. BITOY:  Exhibit 27.

3          MS. COHEN:  It's Exhibit 27.

4          THE COURT:  Do you have the exhibits?  There's two

09:58:51  5  jurors missing at the moment.

6          (Off the record.)

7          MR. HALE:  I just have an objection to the extent

8  plaintiff's photographs of the Area 2 building and the inside

9  were not moved into evidence and that they shouldn't be going

10:02:16 10  back to the jury.  It's unclear to me at this point.  I'm just

11  preserving my objection.

12          MS. BITOY:  It's Exhibit 8.  It's our position that

13  it was moved into evidence and on the record in -- on February

14  27, 2020, Ms. Bonjean said, "Okay, at this point, Judge, I

10:02:31 15  would like to not only introduce it into evidence but ask that

16  it be published to the jury.  The Court said, "All right.  You

17  may publish it.  You may publish it to the jury."  And that's

18  to Exhibit 38 A, B, C, D.

19          THE COURT:  They're waiting for one juror.  According

10:02:53 20  to my watch, he's one minute late, or it could be a she.

21          MS. BONJEAN:  We're done?

22          MR. HALE:  Yes.

23          (Off the record.)

24          THE COURT:  All jurors are here, and they are

10:05:46 25  commencing to deliberate.

1978

1     MS. BONJEAN:  All right.

2     (Jury commenced deliberations at 10:06 a.m.)

3     (Parties reconvened in open court at 10:09 a.m. as

4     follows:)

10:09:21   5     THE COURT:  Question from the jury.  Jacqueline

6   Williams, the African American, I don't know if she's -- the

7   question is:

8         "What are the responsibility of a juror foreman?"

9         MR. HALE:  All right.

10:09:35  10        So, Judge, I think that's probably something --

11        THE COURT:  The instruction says the foreman presides

12   over your deliberations.  I don't know what more.

13        MR. HALE:  I would be happy if you want to go back

14   there and just read them the instruction.

10:09:52  15        THE COURT:  I'll tell them to re-read the

16   instructions because it says clearly that the foreman is the

17   presiding juror over your deliberations.  I don't know what

18   else.

19        MS. BONJEAN:  It's going to be a long couple of days.

10:10:04  20        THE COURT:  This is a strange one.

21        MR. HALE:  That's fine, Judge.

22        THE COURT:  Is that all right?

23        MS. BONJEAN:  Yes.

24        THE COURT:  I'll tell them to re-read the

10:10:12  25   instructions.

1   MR. HALE:  Well, I would just tell them to re-read
2   that particular instruction.
3   MS. BONJEAN:  That's fine.
4   THE COURT:  It's the -- here we go.  Let me find it.
10:10:56   5   Here it is.  The selection of the presiding juror.
6   Upon retiring to the jury room, you must select the presiding
7   juror.  The presiding juror will preside over your
8   deliberations and will be your representative during court.
9   MR. HALE:  Yeah.
10:11:11   10   THE COURT:  I'll just say re-read the instruction
11   entitled "selection of the presiding juror."
12   MR. HALE:  Yes.
13   THE COURT:  All right.
14   MR. HALE:  Thank you, Judge.
10:11:18   15   THE COURT:  Okay.
16   (Jury recommenced deliberations at 10:11 a.m.)
17   (Parties reconvened in open court at 11:01 a.m. as
18   follows:)
19   THE COURT:  Okay.  The question is:
11:26:58   20   "Can we please get the summary of Kenny Lewis?"
21   The question was at 11:20.  It's signed by -- not by
22   Jacqueline Williams, but I'm trying to read.  It could be
23   Antonina North.
24   So anyway, comment on that?  They want to read --
11:27:38   25   they want Kenny Lewis's summary.

1    MR. HALE:  So we have no objection to that.  I think
2  we should give it to them.
3    MS. BONJEAN:  Judge, give them the summary or read it
4  to them again?  I mean, I think we would be okay with reading
11:28:03    5  it to them.  Let me consult with --
6    THE COURT:  Pardon?
7    MS. BONJEAN:  I'm just going to consult.
8    THE COURT:  All right.
9    (Counsel conferring.)
11:28:12   10    MS. BONJEAN:  I would be reluctant to give it to them
11  because they're not getting all the summaries.  But I would --
12    THE COURT:  I could bring the jury out and read it to
13  them.
14    MR. HALE:  I think we should give it to them so they
11:28:26   15  can have it, and they could use it to talk about it.  They
16  want it.  We've given them that whole box of exhibits.
17    THE COURT:  It's sort of like a transcript though.
18    MR. HALE:  But that was my point with the OPS
19  transcript.  We gave them that transcript, and at the time I
11:28:39   20  made that argument --
21    THE COURT:  Here's what I will do.  I will bring the
22  jury out and then I will read the summary.  Does somebody have
23  it available?  If not, make sure we get the right one because
24  there were several versions, I think.  I'll see if I could
11:28:58   25  find it.

1981

1          MR. HALE:  Judge, I know that your clerk --

2          THE COURT:  Pardon?

3          MR. HALE:  I know that your clerk had e-mailed us all

4     the final summaries that were read.

11:29:44    5          THE COURT:  There's two versions.  One is longer than

6     the other, which I'm sure that's the one.

7          MS. BONJEAN:  We'll make sure.

8          THE COURT:  Pardon?

9          MS. BONJEAN:  We'll make sure which one it is.

11:29:55   10          THE COURT:  It would be -- okay.

11          MS. BONJEAN:  Is this the one that was read?

12          MR. HALE:  Let's check -- are you able to pull it up?

13          MS. BONJEAN:  Yes, we can check.

14       (Counsel conferring.)

11:30:32   15          MS. BONJEAN:  Judge, do you have one that's five

16     pages?  Is that the longer one?

17          MR. HALE:  We're just checking the transcript, Judge.

18          THE COURT:  Make sure we got the right one.

19          MS. BONJEAN:  I believe this is the one that was

11:30:46   20     read.  Yes.  Is that the longer one for you?

21          THE COURT:  Yeah.

22          MS. BONJEAN:  Uh-huh.  We'll double-check.

23          THE COURT:  I'll bring the jury in and read it to

24     them.

11:30:59   25          MR. HALE:  Judge, we're just confirming this is the

1982

| | |
|---|---|
| 1 | one that was read.  I'm pretty sure it was. |
| 2 | THE COURT:  Yeah, okay.  We want to make sure it's |
| 3 | the right one. |
| 4 | (Counsel conferring.) |
| 11:31:39   5 | MR. HALE:  We got it, Judge.  We're pulling it up |
| 6 | real quick. |
| 7 | You got it? |
| 8 | MS. BITOY:  On my phone. |
| 9 | MR. HALE:  Why don't you just take a look real quick. |
| 11:32:53  10 | THE COURT:  Okay.  We verified this is the one? |
| 11 | MS. BONJEAN:  Yes. |
| 12 | MR. HALE:  Yes. |
| 13 | THE COURT:  Okay.  I'm going to put my robe on and |
| 14 | then we'll get the jury out. |
| 11:33:07  15 | (Off the record.) |
| 16 | (Jury enters.) |
| 17 | THE COURT:  Please be seated. |
| 18 | Good morning, members of the jury.  We received the |
| 19 | note that says, "Can we please get the summary of |
| 11:35:40  20 | Kenny Lewis?"  And it's signed by -- I believe is it |
| 21 | Ms. North? |
| 22 | JUROR NORTH:  Yes. |
| 23 | THE COURT:  You are the foreman? |
| 24 | JUROR NORTH:  Yes, Your Honor. |
| 11:35:50  25 | THE COURT:  Okay. |

1983

1    Kenneth Lewis testified at Stanley Wrice's criminal

2  trial on May 13, 1983 as follows:

3    "I am Kenneth 'Kenny' Lewis.  I am 19 years old, and

4  on September 8, 1982, I lived at 7526 South Chappel with my

5  mother, father, three brothers, and two sisters approximately

6  a block from the Wrice residence.  I work for United Van Lines

7  as a mover and have worked there for about a year.  I knew

8  Stanley Wrice at the time.  I knew him for less than ten

9  years.  I knew him from the neighborhood, and my mother and

10  his mother were good friends.  On September 10, 1982, I was

11  friends with Charles and Patricia Wrice.  They are the younger

12  siblings of Stanley Wrice.  I consider Stanley an

13  acquaintance.

14    "On September 8, 1982, I knew a man named Rodney

15  Benson as Span, S-p-a-n, but no more than a couple of months

16  at most.  On that date, I knew a man named Little Mike, but I

17  did not know his full or correct name.  I knew him for a

18  couple of years.  On that date, I knew a man named Lee Anthony

19  Holmes.  I knew him for about ten years.  On that date, I knew

20  a man named Bobby Joe, but I did not know his full or correct

21  name.  I knew him for about six years.

22    "Stanley Wrice and Span (Rodney Benson) were friends.

23  Stanley Wrice was friends with Little Mike and Lee Anthony

24  Holmes.  Bobby Joe is Patricia Wrice's boyfriend.

25    "In the summer of 1982, I went to the Wrice residence

11:38:15

1  about three times a week.  Patricia Wrice slept in a first
2  floor bedroom on the left side of the room off the bathroom,
3  which is where the entrance to the dining room is.  Charles
4  Wrice slept in a first floor bedroom, and Stanley slept in the
5  attic.  I was also friendly with Patricia's boyfriend Bobby
6  Joe Williams.

7          I went to visit the Wrice residence at approximately
8  1:00 a.m. on September 9, 1982.  After being in front of the
9  house for a period of time, I walked inside through the living

11:38:34

10  and dining rooms which were dark.  I couldn't tell whether
11  anyone else was in those rooms.  I walked in the kitchen which
12  had the light on, and I saw Kim.  I don't know Kim's last
13  name, but she was Little Mike's girlfriend.  Lee Holmes was
14  also in the kitchen, and I can't recall who else.  We were

11:38:58

15  sitting there talking for about 30 minutes.  I had not yet
16  seen Charles, Patricia, and Stanley Wrice.

17          "Patricia came out of her bedroom so it was me, Kim,
18  Anthony Holmes and someone else, I cannot recall, in the
19  kitchen and Patricia asked where Bobby Joe was.  Kim told

11:39:22

20  Patricia that Bobby Joe was upstairs and that there was a
21  white woman downstairs.  Bobby Joe came downstairs, and he and
22  Patricia went into the bedroom.  The stairs go from the
23  upstairs and lead down in between the sink and the stove.

24          "I remained in the kitchen, and then me, Lee Holmes

11:39:41

25  and another person who I don't remember went upstairs.  There

1  were no lights on upstairs but there was light coming from a

2  window in the attic.  I observed the white woman on the bed,

3  unclothed.  She was lying on the bed, and there was some

4  conversation going on.  I have talked with Karen Byron on

5  several occasions.  I knew her boyfriend.  I heard Karen say

6  something about 'something to drink' or 'something to smoke.'

7  I observed her whole body and did not observe anything wrong

8  with her body at that time.  At this time, I observed Rodney

9  Benson ('Span'), Little Mike, Stanley Wrice ('Stan'), and the

10  'bicycle rider' upstairs around the bed.  I did not know the

11  'bicycle rider.'  The 'bicycle rider' was wearing shorts,

12  gloves, rider cap, shirt and a satchel bag over his back.

13         "I saw Rodney Benson having sexual intercourse with

14  Karen Byron.  When Little Mike got on top of the stairs, I saw

15  him start to have sexual intercourse with Karen Byron,

16  followed by 'bicycle rider' who then had sexual intercourse

17  with the woman.

18         After the 'bicycle rider' had sex with the woman, I

19  then heard the woman say 'no' more than one time.  I saw

20  movements towards the woman's face but could not see who was

21  moving towards her face.  The woman repeatedly said 'no' and

22  then I saw Stan hit the woman multiple times.  I pulled Stan

23  off of the woman and then I returned downstairs to the

24  kitchen, leaving Rodney Benson, Stan and the bicycle rider

25  upstairs.

11:40:00

11:40:33

11:40:57

11:41:16

11:41:37

1    "I don't remember what Karen was saying or doing when
2  Span and Little Mike had sexual intercourse with her.  I don't
3  recall what Karen was saying or doing when the bicycle rider
4  was having sex with her.  I don't recall whether she was
5  thrashing about or trying to push somebody away.  Nobody was
6  hitting her at that time, but then I heard her say 'no.'  I
7  heard nothing before that.  I was in the room with everybody,
8  and I was looking at everything that was going on.

9    "When I got back down to the kitchen, I saw
10 Lee Holmes and Kim.  I heard movement upstairs.  Then Stan
11 came into the kitchen and was picking up bottles.  When
12 Stanley was picking up bottles, he said 'he hated fucking
13 white people.'  Stanley was picking up the bottles, and I was
14 taking the bottles from Stan.  When I took a bottle from Stan,
15 Stan would pick up another bottle.  This went on for three to
16 four minutes.  At the time there was an iron on the stove, and
17 the fire was on the stove under the iron.  I also saw a
18 two-pronged fork on the stove.  Stanley picked up the iron,
19 but I took the iron away from him.  Then Stanley went back
20 upstairs.

21   "I could hear slaps and smacks coming from upstairs.
22 Rodney Benson, Little Mike, Stan and bicycle rider were
23 upstairs.  While I was hearing smacks and slaps, Patricia
24 Wrice came into the kitchen and said she was going to call the
25 police.  I went back upstairs, and I observed Stan beating the

11:41:53

11:42:12

11:42:34

11:42:52

11:43:08

11:43:28

1  woman with his fist.  I stopped Stan and pulled him off of the
2  woman.  Stan broke loose and continued beating the woman.  I
3  again pulled Stanley off of her.  This happened three times.
4  I noticed the woman was lying there and there was no movement,
5  and I thought she was dead.

6              "I then went downstairs and left the house with a man
7  named Butch, Rodney Benson, Little Mike, and Kim.  I left in
8  my own car with Butch.  Rodney Benson, Little Mike, and Kim
9  left" -- I'm going to -- I'll restart that.

11:43:47

10             "I then went downstairs and left the house with a man
11  named Butch, Rodney Benson, Little Mike and Kim.  I left in my
12  own car with Butch.  Rodney Benson, Little Mike, and Kim left
13  in Rodney's car, a red Pinto.  I took Butch home to 70th and
14  Clyde.  Stan, Lee Holmes, and the bicycle rider were still in

11:44:07

15  the house when I left.  I then saw Benson and Kim at 75th and
16  Clyde.  Little Mike was not with him.  I then went back to the
17  76th and Chappel.  Rodney Benson and Kim were parked behind
18  me.  Then Kim got into my truck and she told me she was
19  hungry, and I told her I would take her to get something to
20  eat.  When Kim and I left, Rodney Benson stayed at 76th and

11:44:29

21  Chappel.

22             I took Kim to 83rd and Cottage Grove to Leon's
23  Barbecue.  I got something to eat there and then took her to
24  Stanley Wrice's house because she was staying there
25  temporarily.  About 15 to 20 minutes passed between leaving

11:44:42

1   76th and Chappel to get something and returning to 7618 South

2   Chappel.  I entered the house and the lights were still off in

3   the living room and dining room and still on in the kitchen.

4   We went to the kitchen, and we were talking.

11:45:02

5           "Then I went upstairs to see if the woman was still

6   there.  I saw the woman up there lying on the bed.  She was

7   not moving and she was burned from head to toe.  I saw iron

8   marks on the women's breasts and legs.  At that time I saw

9   Stan and the bicycle rider were upstairs in the room with the

11:45:18

10  woman who was burned from head to toe.

11          "I then went downstairs.  I heard Stan say, 'Where

12  are you going?'  Then I saw Stan coming downstairs into the

13  kitchen.  I saw Stan take a hot spoon off of the stove and the

14  stove was still on and then go back upstairs.  Then I heard

11:45:38

15  the woman say, 'Why are you burning me?

16          I next heard her falling down the steps.  She was at

17  the end of the stairs when I turned around.  She was -- she

18  had on pants and a top but no shoes.  The next thing I saw was

19  the woman standing on the back porch.  There is nothing behind

11:45:56

20  the kitchen other than the back porch.  I don't know how she

21  got on the back porch.  Stan was out there with her.  I heard

22  Stanley tell the woman she was on Yates and then he slapped

23  her and she fell.

24          "After the woman fell, I went home.  I did not call

11:46:13

25  the police, and I went to sleep.  I never called the police

1   and was never contacted by any police officer of any kind.

2          "I never saw Stanley Wrice again.  Until about four

3   or five days ago, I did not know who you, Bertina Lampkin, the

4   prosecutor, was.  I know of you, Bertina Lampkin, the

11:46:34  5   prosecutor, because you came by my house last week."

6          Thus concludes the summary of the testimony of

7   Kenneth Lewis.

8          You may take the jury back.

9      (Jury exits.)

11:47:07  10         THE COURT:  All right.  We will stand at ease.

11         Oftentimes after a request, the verdict comes in

12  relatively quickly.  I'll leave it up to your choices whether

13  you wish to stick around briefly or leave.

14         MR. HALE:  Thank you, Your Honor.

11:47:25  15         MS. BONJEAN:  Thank you.

16         THE COURT:  Okay.

17     (Jury recommenced deliberations at 11:47 a.m.)

18     (Parties reconvened in open court at 2:42 p.m. as

19     follows:)

02:42:50  20         THE COURT:  All right.  We have a question.

21         "If we are hung on one claim but unanimous on the

22  other two claims, does that disqualify the decision on the two

23  claims that we have unanimity?"

24         MR. HALE:  Could you read that again, Judge?

02:43:08  25         THE COURT:  "If we are hung on one claim but

1990

1    unanimous on the other two claims, does that disqualify the

2    decision on the two claims that we have unanimity?"

3         MR. HALE:  So we would like to have a chance to

4    huddle before we respond to that.

02:43:25    5         MS. BONJEAN:  Could we huddle?  Could we reconvene in

6    like five minutes, is that okay?

7         THE COURT:  Sure.

8       (Off the record.)

9         THE COURT:  What's your view, respective views?

02:57:19   10         MR. JEBSON:  Mr. Hale will convey that.

11         THE COURT:  Pardon?

12         MR. HALE:  So, Judge, I think, I don't know how to

13    exactly articulate it, but the jury can't come back -- they

14    have to be unanimous on all three counts.

02:57:38   15         THE COURT:  Pardon?

16         MR. HALE:  They have to be unanimous on all three

17    counts.  So, you know, we would not -- I don't think they can

18    render a partial verdict.  You agree with that, right?

19         MS. BONJEAN:  I think both of us would have to agree

02:57:52   20    to that, right?

21         MR. HALE:  We don't agree to that.

22         THE COURT:  My view is to continue to tell them to

23    deliberate with the idea of returning a verdict on all three

24    counts.

02:58:02   25         MR. HALE:  I think that's right.

1991

1        THE COURT:  And then give them some more time and see
2   what they come up with.

3        MR. HALE:  And see where we're at.

4        THE COURT:  Finally, I'll give them the instruction,
02:58:13   5   I'll re-read the instruction about deliberating.

6        MR. HALE:  But I think they need to know --

7        THE COURT:  Pardon?

8        MR. HALE:  Well, do you have --

9        THE COURT:  I'm trying to figure out how they could
02:58:26   10  divide the three.

11       MS. BONJEAN:  They could definitely divide the three.

12       THE COURT:  You can, but I'm trying to figure out
13  logically how you can.  Which one would you hang up on?

14       MR. HALE:  I don't know.

02:58:39   15       MS. BONJEAN:  The first one probably.  That's the
16  harder one.

17       THE COURT:  But how do you commend with the
18  conspiracy count?

19       MS. BONJEAN:  They only have to find -- well, I
02:58:50   20  don't --

21       THE COURT:  I know.  I'll tell them to continue
22  deliberating because they have only been deliberating four and
23  a half hours.

24       MR. HALE:  I think what you propose is fine, Your
02:59:07   25  Honor.

| | |
|---|---|
| 1 | MR. JEBSON:  Then you're going to re-read that one |
| 2 | instruction, Judge, about -- |
| 3 | THE COURT:  Normally I would have them come in and I |
| 4 | read the instruction to them. |
| 02:59:14  5 | MS. BONJEAN:  Now? |
| 6 | THE COURT:  Well, I thought just tell them to |
| 7 | continue working. |
| 8 | MR. JEBSON:  Okay.  That's fine. |
| 9 | MS. BONJEAN:  Maybe at the end of the day or |
| 02:59:21  10 | something. |
| 11 | THE COURT:  Yeah, that's what I'm thinking. |
| 12 | (Jury recommenced deliberations at 2:59 p.m.) |
| 13 | (Parties reconvened in open court at 4:41 p.m. as |
| 14 | follows:) |
| 04:41:55  15 | THE COURT:  We have a verdict.  We have a verdict at |
| 16 | 4:35. |
| 17 | So bring the jury in, please. |
| 18 | (Jury enters.) |
| 19 | THE COURT:  Please be seated. |
| 04:43:47  20 | Ms. North, you are the foreman; is that correct? |
| 21 | JUROR NORTH:  Yes. |
| 22 | THE COURT:  The jury has reached a verdict? |
| 23 | JUROR NORTH:  Yes. |
| 24 | THE COURT:  Would you pass it to the marshal, please. |
| 04:44:02  25 | Thank you. |

1993

1    The verdict of the jury is as follows.

2    First claim, concealment and fabrication of evidence,

3    for defendant Byrne and for defendant Dignan.

4    Second claim, compelled self-incrimination, for

5    plaintiff Wrice.

6    Third claim, conspiracy, for plaintiff Wrice.

7    Compensation.  If you found in favor of plaintiff on

8    one or more of the claims, enter the amount of compensatory

9    damages: $4,000,000.  Punitive damages against John Byrne:

10   $600,000; against Peter Dignan: $600,000, signed by Ms. North

11   and the other eight jurors.

12   Either party wish the jury polled?

13   MR. JEBSON:  Yes, Your Honor.

14   MS. BONJEAN:  Plaintiffs do not.

15   THE COURT:  All right.  The defendants wish to have

16   the jury polled.

17   Members of the jury, when your name is called, stand

18   at your seat and answer in a yes-or-no fashion to the question

19   posed to you by the clerk.

20   After you answered his question, you may resume your

21   seat.

22   LAW CLERK:  Marina Bertog, was this and is this now

23   your verdict?

24   JUROR BERTOG:  Yes.

25   THE COURT:  You may be seated.

1          LAW CLERK:  Darren Burgener, was this and is this now

2  your verdict?

3          JUROR BURGENER:  Yes.

4          LAW CLERK:  Yan Cao, was this and is this now your

04:45:53  5  verdict?

6          JUROR CAO:  Yes.

7          LAW CLERK:  Mary Crout, was this and is this now your

8  verdict?

9          JUROR CROUT:  Yes.

04:46:02  10          LAW CLERK:  Claudia Gaona, was this and is this now

11  your verdict?

12          JUROR GAONA:  Yes.

13          LAW CLERK:  Jill Johnson, was this and is this now

14  your verdict?

04:46:09  15          JUROR JOHNSON:  Yes.

16          LAW CLERK:  Oliver Juarez, was this and is this now

17  your verdict?

18          JUROR JUAREZ:  Yes.

19          LAW CLERK:  Antonina North, was this and is this now

04:46:17  20  your verdict?

21          JUROR NORTH:  Yes.

22          LAW CLERK:  Jacqueline Williams, was this and is this

23  now your verdict?

24          JUROR WILLIAMS:  Yes.

04:46:25  25          LAW CLERK:  So say you all.

1         THE COURT:  Members of the jury, on behalf of the

2   court system and I believe the parties, we thank you for your

3   service in this case.  You were a very timely bunch.  You got

4   here on time, and you obviously gave very considered

5   deliberation to the issues that were presented to you.

6         Our system of justice involving a jury system occurs

7   when the parties can't agree.  They have a problem, and there

8   are several ways to resolve the problem.  And we have found

9   over the years it is better to have our peers, people from all

10  walks of life who respond and help us resolve issues that the

11  parties are unable to resolve through themselves.

12        So a lot of people try to get out of jury service,

13  and you folks did not; and for that, we are very appreciative.

14        So we won't keep you any longer so you're free to

15  leave.  If you wish to -- now you're free to talk to anybody

16  and discuss, broadcast or any way you want your opinions,

17  views, or you can keep them to yourselves.  But you're

18  excused, if you wish.

19        MR. JEBSON:  Judge, before you excuse the jury, could

20  I have a quick sidebar, please?

21        THE COURT:  Yeah.

22      (Sidebar.)

23        MR. JEBSON:  Judge, I think under the law, I have to

24  make this argument before the jury is excused.

25        I think it's an inconsistent verdict given the

04:46:43
04:47:02
04:47:21
04:47:42
04:48:00

1  damages because the jury found in favor of the officers for

2  the fabrication claim.  And the fabrication claim and the

3  coerced confession claim are talking essentially the same type

4  of elements.  So the jury, by finding in favor of the

04:48:19  5  defendants, essentially found that the outcome of the trial

6  would not have been different; in other words, they think he's

7  guilty.  And if he's guilty --

8  THE COURT:  Okay.  You've made your --

9  MR. JEBSON:  Excuse me.  If I --

04:48:30  10  THE COURT:  You're making your position.  That's

11  fine.

12  MR. JEBSON:  And if they believe he's guilty, a

13  $4,000,000 verdict would not be consistent with the nominal

14  amount which it should be given the verdict on claim 1 and

04:48:51  15  claim 2.

16  THE COURT:  That could be fought out on another day.

17  Thank you.

18  MR. JEBSON:  Thank you.

19  MS. BONJEAN:  Thank you.

04:48:57  20  (End of sidebar.)

21  THE COURT:  All right.  Members of the jury, you're

22  free to leave.  We have a certificate for you.

23  If you could give them to Pat.

24  Do you have them?

04:49:12  25  COURT SECURITY OFFICER:  Yes.

1997

1       THE COURT:  We have a certificate for you that
2   represented the fact that you actually served in this case and
3   that we appreciate you.

4       Have a great night, and you're free.  And I don't
5   believe -- until you get summoned again, you'll have no more
6   jury duty.

7       COURT SECURITY OFFICER:  All rise.
8       (Jury exits.)
9       (Trial adjourned at 4:50 p.m.)

10
11               C E R T I F I C A T E
12
13       I, Kelly Fitzgerald, do hereby certify that the
14   foregoing is a complete, true, and accurate transcript of the
15   proceedings had in the above-entitled case before the
16   Honorable HARRY D. LEINENWEBER, one of the judges of said
17   court, at Chicago, Illinois, on March 3, 2020.

18
19   */s/ Kelly Fitzgerald*                    March 4, 2020
20   Official Court Reporter
     United States District Court
21   Northern District of Illinois
     Eastern Division
22
23
24
25

04:49:24