**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| STANLEY WRICE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 14 CV 5934 |
| | ) | |
| -vs- | ) | The Hon. Harry D. Leinenweber |
| | ) | |
| BYRNE, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' RULE 59**
**MOTION FOR A NEW TRIAL**

Jennifer Bonjean
Ashley Cohen
THE BONJEAN LAW GROUP
467 St. Johns Place
Brooklyn, NY 11238

Heidi Linn Lambros
1169 South Plymouth Court
Chicago, IL 60605

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

ARGUMENT ......................................................................................................................2

   I.   This Court Properly Instructed the Jury. ............................................................3

       A.   The Fifth Amendment Instruction Was Proper. .......................................3

       B.   Defendants' Cannot Complain Of An Error They Introduced. .................6

   II. This Court's Evidentiary Rulings Were Proper. ................................................7

       A.   The Court Correctly Ruled on The Admissibility of Byrne's Prior Testimony ........7

       B.   The Use of Trial Witness Summaries Was Proper. ................................11

       C.   It Was Proper to Tell the Jury That Plaintiff's Convictions Were Reversed .........12

       D.   This Court Properly Excluded Plaintiff's Gang Membership. ...............13

            1.   Omitting Scott's Possible Abuse Testimony Was Proper. ...........16

            2.   Charles Wrice's Single Comment About Plaintiff Was Proper. .................18

       F.   This Court Properly Excluded the Non-Existent "Identification" of Plaintiff ........19

       G.   This Court Properly Allowed 404(b) Witnesses. ....................................21

   III. Plaintiff's Counsel Committed No Errors That Denied Defendants a Fair Trial. .............26

       A.   Comments About Kenny Lewis Were Not Error. ...................................27

       B.   Counsel Did Not Mispresent That Plaintiff Was Not Convicted of the Crimes ....27

       C.   Comments About Jennifer Scott Were Proper. .......................................28

       D.   There Were No Improper Speaking Objections. .....................................28

       E.   Counsel Did Not Make Improper Racist Comparisons. .........................29

       F.   There Was No Cumulative Error From Counsel's Comments. ...............30

CONCLUSION ................................................................................................................30

# TABLE OF AUTHORITIES

**CASES:**

*Aldridge v. Forest River, Inc.*, 635 F.3d 870  (7th Cir. 2011) ..........................................................3

*Arizona v. Fulminante*, 499 U.S. 279 (1991) ...................................................................................3

*Barber v. City of Chicago*, 725 F.3d 702 (7th Cir. 2013)..................................................16, 18, 19

*Bracey v. Herringa*, 466 F.2d 702 (7th Cir.1972) .........................................................................21

*Brandon v. Village of Maywood*, 179 F. Supp. 2d 847 (N.D. Ill. 2001) ........................................20

*Brown v. Mississippi*, 297 U.S. 278 (1936)......................................................................................4

*Chavez v. Martinez*, 538 U.S. 760 (2003) ........................................................................................5

*Christmas v. City of Chi.*, 682 F.3d 632 (7th Cir. 2012) ....................................................2, 15, 30

*Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011) ...............................................................2, 25

*Cobige v. City of Chi.*, 651 F.3d 780 (7th Cir. 2011) ...................................................15, 16, 18, 19

*Cruz v. Safford*, 579 F.3d 840  (7th Cir. 2009)...........................................................................4, 7

*Downie v. Klincar*, 759 F. Supp. 425 (N.D. Ill. 1991) ..................................................................21

*E.E.O.C. v. AutoZone, Inc.,* 809 F.3d 916 (7th Cir. 2016) .............................................................3

*Edwards v. Thomas*, 31 F. Supp.2d 1069 (N.D. Ill. 1999).................................................22, 23, 24

*Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852 (7th Cir. 2005) .............................................7

*Harris v. City of Chicago*, 266 F.3d 750 (7th Cir. 2001) ................................................................8

*Hasham v. Cal. State Bd. of Equalization*, 200 F.3d 1035 (7th Cir. 2000) ...............................4, 10

*Hill v. City of Chicago,*2011 WL 3840336  (N.D. Ill. Aug. 30, 2011) ............................22, 23, 24

*Jimenez v. City of Chicago*, 732 F. 3d 710 (7th Cir. 2013) ......................................................11, 12

*Jones v. Lincoln Electric Co.,* 188 F.3d 709 (7th Cir. 1999).................................13, 26, 27, 28, 30

*Jordan v. Binns*, 712 F.3d 1123 (7th Cir. 2013)..............................................................19, 20, 21

*Kunz v. DeFelice*, 538 F.3d 667  (7th Cir. 2008) ..........................................................27

*Latino v. Kaizer*, 58 F.3d 310 (7th Cir. 1995) ................................................................2

*Marcus & Millichap Inv. Servs. v. Sekulovski*, 639 F.3d 301 (7th Cir.2011)...............27

*Marshall v. Porter County Plan Comm'n*, 32 F.3d 1215 (7th Cir. 1994)......................28

*Maurer v. Speedway*, 774 F.3d 1132 (7th Cir. 2014) .....................................................7

*McDonough Power Equip., Inc. v Greenwood*, 464 U.S. 548  (1984).......................1, 2

*McGahee v. Massey*, 667 F.2d 1357 (11th Cir. 1982)....................................................8

*Mejia v. Cook County*, 650 F.3d 631 (7th Cir. 2011) .....................................................2

*Michelson v. United States*, 335 U.S. 469(1948) .........................................................16

*Morales v. Cadena*, 825 F.2d 1095 (7th Cir. 1987) .....................................................16

*Nelson v. City of Chicago*, 810 F.3d 1061 (7th Cir. 2016) ………………………………19

*Nelson v. Colorado*, 137 S. Ct. 1249 (2017) ……………………………………………...12, 13

*Okai v. Verfuth*, 275 F.3d 606  (7th Cir. 2001)………………………………………………..25

*Oostendorp v. Khanna*, 937 F.2d 1177 (7th Cir. 1991)................................................11

*Palmquist v. Selvik*, 111 F.3d 1332 (7th Cir.1997) .......................................................7

*Phoenix Bond & Indem. Co. v. Bridge*, 911 F. Supp. 2d 661  (N.D. Ill. 2012).............3

*Pickett v. Sheridan Health Care Ctr.*, 610 F.3d 434 (7th Cir. 2010) ...........................26

*Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258 (9th Cir. 2000) .........................10

*S.E.C. v. Ficken*, 546 F.3d 45  (1st Cir. 2008)................................................................8

*Sanchez v. City of Chi.*, 880 F.3d 349 (7th Cir. 2018)..................................................21

*Shutler v. Lake Forest Country Day School*, No. 07 CV 6553 (N.D. Ill. Sep. 9, 2011) ..............29

*Smith v. Hunt*, 707 F.3d 803 (7th Cir. 2013) ....................................................13, 17, 30

*Sornberger v. City of Knoxville*, 434 F.3d 1006 (7th Cir. 2006)....................................5

ii

*U.S. v. Alviar*, 573 F.3d 526 (7th Cir. 2009) ...............................................................14

*U.S. v. Bollin*, 264 F.3d 391 (4th Cir. 2001)...................................................................8

*U.S. v. Christ*, 513 F.3d 762 (7th Cir. 2008) .................................................................21

*U.S. v. Hands*, 184 F.3d 1322 (11th Cir. 1999)............................................................17

*U.S. v. Harvey*, 959 F.2d 1371 (7th Cir. 1992)..............................................................10

*U.S. v. Holm*, 326 F.3d 872 (7th Cir. 2003) ...........................................................5, 11

*U.S. v. Irvin*, 87 F.3d 860 (7th Cir. 1996).....................................................................14

*U.S. v. Lewis*, 641 F.3d 773 (7th Cir. 2011)................................................................8, 9

*U.S. v. Long,* 86 F.3d 81  (7th Cir. 1996) .....................................................................24

*U.S. v. Murry*, 395 F.3d 712 (7th Cir. 2005) ..................................................................6

*U.S. v. Peterson*, 100 F.3d 7 (2d Cir. 1996) ...............................................................8, 9

*U.S. v. Richardson*, 238 F.3d 837 (7th Cir. 2001) ......................................................6, 7

*U.S. v. Rylander*, 460 U.S. 752 (1983) ........................................................................10

*U.S. v. Taylor*, 975 F.2d 402 (7th Cir. 1992).................................................................8

*U.S. v. Vargas*, 689 F.3d 867 (7th Cir. 2012) ................................................................8

*U.S. v. Walker*, 652 F.2d 708 (7th Cir. 1981)................................................................9

*U.S. v. Brown*, 31 F.3d 484 (7th Cir. 1994)..................................................................22

*Valbert v. Pass*, 866 F.2d 237 (7th Cir. 1989)..........................................................2, 26

*Whiting v. Westray*, 294 F.3d 943 (7th Cir. 2002) .......................................................26

*Willis v. Lepine*, 687 F.3d 826 (7th Cir. 2012) ..............................................26, 27, 29

*Wilson v. City of Chicago*, 6 F.3d 1233 (7th Cir. 1993).............................5, 22, 23, 24

*Young v. James Green Mgmt. Inc.*, 327 F.3d 616 (7th Cir. 2003).........................2, 7, 25

## <u>PLAINTIFF'S REPSONSE TO DEFENDANTS' MOTION FOR A NEW TRIAL</u>

Plaintiff, Stanley Wrice, through his counsel, respectfully submits this response in opposition to Defendants motion for a new trial under Rule 59.

## INTRODUCTION

Following an eight-day jury trial, the jury returned a verdict for Plaintiff on his second and third claims, finding that Defendants violated his constitutional right against compelled self-incrimination and that Defendants conspired to deprive him of his constitutional rights. At the end of the day, this case was quite simple. The jury found that Defendants physically coerced Plaintiff to make a self-incriminating statement that was used against him at his criminal trial.

In seeking to overturn the jury's verdict, the Defendants rehash their worn arguments made prior and during trial but are ultimately unable to identify a single error made by this Court nor are they able to establish any prejudice that may have resulted from this Court's evidentiary rulings. *See Dkt. No. 594* (Defendants' Motion For A New Trial) ("*DMNT*").[1] In fact, Defendants fail to accept that they were their own undoing. Given the chance to explain the circumstances of Plaintiff's interrogation and his resultant confession, Defendants invoked their Fifth Amendment rights and refused to answer any questions about the underlying investigation. Instead, Defendants' strategy was to inflame the jury's prejudices by over-saturating them with irrelevant details about the victim's injuries, and to improperly persuade the jury that Plaintiff was an evil man, unworthy of justice. Defendants' strategies did not work, and although Defendants are unhappy with the jury's decision, this Court properly exercised its discretion in all of its rulings, and since there is no prejudice from any possible error, Defendants' motion for

---

[1] Because the majority of Defendants' Arguments were litigated during trial, Plaintiff incorporates those previously filed Motions by reference and cites to the Docket instead of attaching those Motions as Exhibits.

a new trial should be denied. *McDonough Power Equip., Inc. v Greenwood*, 464 U.S. 548, 553 (1984) ("[A party] is entitled to a fair trial, but not a perfect one.").

## ARGUMENT

This Court "has great discretion in determining whether to grant a new trial." *Valbert v. Pass*, 866 F.2d 237, 239 (7th Cir. 1989). A new trial is appropriate where the verdict was against the weight of the evidence or the trial was otherwise unfair to the moving party. *Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011). A trial is unfair if "improperly admitted evidence had a substantial influence over the jury, and the result reached was inconsistent with substantial justice." *Christmas v. City of Chi.*, 682 F.3d 632, 639-40 (7th Cir. 2012). The power to grant a new trial though "is not unlimited: a certain deference to the jury's conclusions is appropriate." *Mejia v. Cook County*, 650 F.3d 631, 633 n.1 (7th Cir. 2011). "This deference is encompassed within the manifest weight standard, which balances a decent respect for the collective wisdom of the jury against a duty not to approve miscarriages of justice." *Id*. Jury verdicts deserve "great deference" in cases, like here, with "simple issues but highly disputed facts." *Latino v. Kaizer*, 58 F.3d 310, 314 (7th Cir. 1995).

Defendants fail to challenge the sufficiency of the evidence, so this Court considers the challenged evidentiary errors in conjunction with Federal Rule of Civil Procedure 61. Rule 61 provides that "[u]nless justice requires otherwise, no error in admitting or excluding evidence— or any other error by the court or a party—is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment." Fed. R. Civ. P. 61; *see also Young v. James Green Mgmt. Inc.*, 327 F.3d 616, 621 (7th Cir. 2003) (error is harmless unless it had a "substantial and injurious effect or influence on the jury's verdict").

**I.      This Court Properly Instructed the Jury.** *Response to Arg. I and Arg. II.H.*

A Court considering a challenge to jury instructions reviews the instructions as a whole to determine if they adequately informed the jury of the applicable law. *Phoenix Bond & Indem. Co. v. Bridge*, 911 F. Supp. 2d 661, 677 (N.D. Ill. 2012). The Court examines whether the instructions, taken as a whole, misstated or failed to fully state the law; if so, the court must then determine whether the instructions confused or misled the jury, thereby causing prejudice. *Id.*, *citing Aldridge v. Forest River, Inc.*, 635 F.3d 870, 876 (7th Cir. 2011).

**A.      The Fifth Amendment Instruction Was Proper.**

Defendants complain that the compelled self-incrimination instruction was erroneous and prejudicial. *DMNT*, Arg. I., pgs. 2-5. The admitted compelled self-incrimination instruction informed the jury to find for Plaintiff if they believed that Defendant "coerced" a self-incriminating statement from Plaintiff that was used against him at trial. *Dkt. No. 589*, pgs. 1956:21-25; 1957:1-17. The jury was told that a statement is "coerced" if it is the result of physical or psychological abuse or the threat of such violence. *Dkt. No. 589*, pg. 1957:6-8.

*First*, Defendants maintain that this instruction was a misstatement of law because it omitted Defendants' language that the "quantum" of coercion must be enough to "*overcome the individual's free will.*" *DMNT*, pg. 3, *citing Arizona v. Fulminante*, 499 U.S. 279, 288 (1991) While Defendants' additional language defined the legal standard for "involuntariness," in light of the evidence at trial, and the defense theory of the case, it was unnecessary. *See E.E.O.C. v. AutoZone, Inc.,* 809 F.3d 916, 923 (7th Cir. 2016) (although an offered instruction may include correct statements of law, this does not mandate that the instruction be given, as "a judge need not deliver instructions describing all valid legal principles."). Given that Plaintiff was beaten all about his body, while handcuffed, on two separate occasions with hard objects, by Chicago

3

police officers in a secret basement, it is inconceivable that the jury would have concluded that the physical abuse was not "enough" to coerce Plaintiff into confessing. *Dkt. No. 589*, pgs. 1242:21-23; 1245:9-15; 1486:7-8; *Brown v. Mississippi*, 297 U.S. 278, 286 (1936) (that the use of a tortured confession at trial can never be harmless error).

Moreover, Defendants made no claim that the beatings that Plaintiff suffered at the hands of the Defendants, *if true*, were not severe "enough" to produce a confession. Rather, Defendants' argument was that Plaintiff was not beaten at all. *See Dkt. 589*, pgs. 1901:12-23; 1905:23-25; 1906:1, 20-25; 1911:11-23; *Hasham v. Cal. State Bd. of Equalization*, 200 F.3d 1035, 1051 (7th Cir. 2000) (rather than an instruction describing "each possible inference of the evidence, the judge may and usually should leave the subject of the interpretation of the evidence to the argument of counsel."). That Defendants themselves did not advance any argument that the "quantum" of physical abuse suffered by Plaintiff was not "enough" to "overcome [his] free will," shows that this particular consideration was not necessary to the defense and did not prejudice Defendants whatsoever.

Moreover, as noted by Plaintiff in his submitted jury instructions, three other district courts allowed nearly identical compelled self-incrimination instructions, absent any language requiring that the jury find that the coercion must have "overcome the individual's free will." *See Dkt. No. 562*, pgs. 11-13, Exhs. C, H, and I. Since the instruction as given did not mislead the jury such that any deficiency would have prejudiced the Defendants, this assertion has no merit. *See Cruz v. Safford*, 579 F.3d 840, 843 (7th Cir. 2009).

*Second,* Defendants' erroneously claim that the submitted Fifth Amendment instruction "created a new cause of action for 'torture' that does not require proof of causation or damages." *DMNT*, pg. 4. This is incorrect. A claim that a Plaintiff's Fifth Amendment rights were violated

can be raised in a Section 1983 action, as has been recognized by the United States Supreme

Court, as well as the Seventh Circuit. *See Chavez v. Martinez*, 538 U.S. 760, 767 (2003)

(acknowledging Fifth Amendment claims in Section 1983 actions and noting that "statements

compelled by police interrogations of course may not be used against a defendant at trial ***but

it is not until their use in a criminal case that a violation of the Self-Incrimination Clause

occurs."); *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1024 (7th Cir. 2006) (noting that a

Fifth Amendment claim can be raised in a Section 1983 action).

What Plaintiff argued, and this Court acknowledged, was that a Fifth Amendment claim

imports no requirement that the plaintiff be found innocent of the crimes that he confessed to. As

the Seventh Circuit observed "even a murderer has a right to be free from torture and the

correlative right to present his claim of torture to a jury." *Wilson v. City of Chicago*, 6 F.3d 1233,

1235 (7th Cir. 1993). Thus, the Fifth Amendment instruction did not create a "new cause of

action for 'torture'" but instead accurately conveyed the law of a compelled self-incrimination

claim. In fact, three other Northern District Courts' used identical compelled self-incrimination

instructions as to what was submitted here, all without objection from the Seventh Circuit. *See

Dkt. No. 562*, pgs. 11-13, Exhs. C, H, and I.

Additionally, Defendants have no support for their argument that the jury was required to

be instructed that it *could* award nominal damages, and fail to assert how they were prejudiced

by the lack of the "nominal damages" language in the Fifth Amendment instruction. *DMNT*, pgs.

4-5; *U.S. v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003) ("We have repeatedly warned that

perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent

authority, are waived[.]"). The jury was instructed on how to evaluate compensatory damages

and very well could have found for Plaintiff on his Fifth Amendment claim but awarded him no

money. *Dkt. No. 589*, pgs. 1958:20-25; 1959-1960:1-12. The jury did not do so, finding that Plaintiff suffered damages as a result of Defendants' violation of his constitutional rights. As noted previously, three other Courts submitted identical compelled self-incrimination instructions, without any "nominal damages" language in the instruction itself. *See Dkt. No. 562*, pgs. 11-13, Exhs. C, H, and I. As this Court submitted a legally correct instruction and because Defendants have shown no prejudice, this claim should be denied.

### B. Defendants' Cannot Complain Of An Error They Introduced.

Defendants claim that Plaintiff was not entitled to duplicative damages on his conspiracy claim, and thus the instruction tendered to the jury, which directed them to award damages on this claim, was improper. *DMNT*, Arg. II.H, pg. 23. While true that conspiracy does not provide an independent ground for damages, Defendants fail to acknowledge that the conspiracy instruction language that they object to was *drafted by the Defendants*. *See Dkt. No. 567*, pg. 22; *Dkt. No. 589*, pg. 1758; *see Bordelon v. Chi. Sch. Reform Bd. of Trs.,* 233 F.3d 524, 529 (7th Cir. 2000) (Rule 59 does not provide a vehicle for a party to undo its own procedural failures).

Defendants acknowledge their failure to *object* to this instruction by asserting that their forfeiture can be reviewed under plain error. *DMNT*, pg. 23; *U.S. v. Murry*, 395 F.3d 712, 717 (7th Cir. 2005) (forfeiture occurs when a defendant negligently fails to assert his or her rights in a timely fashion and can be reviewed under plain error). But Defendants waived this issue by affirmatively inserting this error into the trial by drafting the template conspiracy instruction that *this Court relied on*, and by failing to object to the "damages" language that they themselves drafted. *See Dkt. No. 567*, pg. 22; *Dkt. No. 589*, pg. 1758-1761 (Court acknowledging that it was using Defendants' conspiracy instruction as the template). Accordingly, this issue is waived. *U.S. v. Richardson*, 238 F.3d 837, 841 (7th Cir. 2001) (Courts will not "override the clearly expressed

wish of a party or his lawyer, which may be backed by excellent strategic reasons, not to invoke a particular right.").

## II.     This Court's Evidentiary Rulings Were Proper.

Where Defendants challenge evidentiary rulings, their road is uphill. *Cruz*, 275 F.3d at 589. Such rulings receive "special deference," *Palmquist v. Selvik*, 111 F.3d 1332, 1339 (7th Cir.1997), and there is no abuse of discretion "unless the court's decision was based on an erroneous conclusion of law or the record contains no evidence on which the court rationally could have based its decision." *Young*, 327 F.3d at 621. Even an erroneous ruling does not warrant relief, unless it "violated the objecting party's substantial rights," *Maurer v. Speedway*, 774 F.3d 1132, 1135 (7th Cir. 2014), and "affected the outcome of the case." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 868 (7th Cir. 2005). Here, Defendants fail to identify any prejudicial error made by this Court.

### A.     This Court Correctly Ruled On The Admissibility of Byrne's Prior Testimony.

Defendants maintain that this Court erred in denying Defendants' motion to admit the entirety of Byrne's prior 1983 trial testimony under Rule 804 since Byrne was unavailable due to his invocation of his Fifth Amendment rights. *DMNT*, Arg. II.A., pgs. 5-8. Defendants also maintain that the rule of completeness compelled the introduction of the entirety of Byrne's prior testimony. Finally, Defendants assert that they were somehow prejudiced by this Court's ruling.

*First*, this Court granted allowed Plaintiff's summary of Byrne's 1983 testimony as was necessary to support his *Brady* claim, agreeing that since Byrne made *himself* unavailable under Rule 804 by refusing to testify, he could not have his prior denials introduced at this trial. *See Dkt. No. 543 and Dkt. No. 589*, pgs. 498-503; *see Dkt. No. 539*, pgs. 1-5 (Plaintiff's Objection to Defendants' Summaries), *citing S.E.C. v. Ficken*, 546 F.3d 45, 53 (1st Cir. 2008) (holding that

7

defendant cannot create his own unavailability by asserting his Fifth Amendment privilege and then use this unavailability to introduce his own former testimony); *accord*. *U.S. v. Bollin*, 264 F.3d 391, 413 (4th Cir. 2001), *U.S. v. Peterson*, 100 F.3d 7, 13-14 (2d Cir. 1996). This Court correctly ruled that that Byrne could not have his cake and eat it too – meaning that he could not refuse to testify at this trial, but have his prior denials of beating Plaintiff admitted where he made himself unavailable to Plaintiff during these proceedings. *See Harris v. City of Chicago*, 266 F.3d 750, 754 (7th Cir. 2001), *citing McGahee v. Massey*, 667 F.2d 1357, 1362 (11th Cir. 1982) ("A defendant cannot have it both ways. . . [He may not] testify in attack . . . and at the same time seek refuge behind the shield of the Fifth Amendment."); *U.S. v. Taylor*, 975 F.2d 402, 404 (7th Cir. 1992) ("Silence has consequences"). If Byrne wanted his denials of beating Plaintiff to be made of record, then he should have testified to those facts.

Moreover, as Plaintiff noted in his motion regarding Dignan, he did move to sever his case from Byrne's, nor did the Defendants assert antagonistic defenses, so they were bound together on these claims. Had Defendants claimed that their cases should be severed, or that certain evidence was only admissible as to Dignan, then they should have severed their defenses and requested separate juries to prevent unfairness. *See Dkt. No. 539*, 4-5.

*Second*, Rule 106 did not require that the entirety of Byrne's testimony be read to the jury. *See DMNT*, pg. 6-7. A "party cannot use the doctrine of completeness to circumvent" the Rule's "exclusion of hearsay testimony." *U.S. v. Vargas*, 689 F.3d 867, 876 (7th Cir. 2012); *U.S. v. Lewis*, 641 F.3d 773, 785 (7th Cir. 2011) (the doctrine of completeness cannot be invoked to bring impermissible hearsay before the jury). As noted *supra.*, since Byrne "made himself unavailable" to Plaintiff although "he [was] not unavailable to himself" it was within this Court's discretion to exclude those portions of testimony under Rule 804, and thus the Rule 106 has no

traction. *Peterson*, 100 F.3d at 13-14.

Furthermore, a summary of Byrne's 1983 trial testimony was read to the jury which properly conveyed what he testified to at the criminal trial, including a detailed account of the steps that Byrne testified that he and Dignan took related to the investigation from the time they learned of the crime to when Plaintiff was arrested. *See Dkt. No. 589*, pgs. 1116:15-1122:17. This summary was not "confusing or misleading," and the passages that Defendants wanted to have admitted, namely Byrne's denials of beating Plaintiff, were "merely explanatory of his theory of the case" and not necessary to place the summary in context of the *criminal trial* as it related to Plaintiff's Claim 1. *Lewis*, 641 F.3d at 785.

Relatedly, as to the Defendants assertion that this ruling "punished" them "for declining to take the stand," Defendants were "provided a full and fair trial, governed by legitimate trial rules." *DMNT*, pg. 7; *Lewis*, 641 F.3d at 785. Just because Defendants "would have had to take the stand to present [their] theory of the defense does not mean [they were] penalized for not doing so. What theory of defense to adopt, and whether or not to take the stand, are strategic choices made by defendants every day." *Id.* Thus, unlike *U.S. v. Walker*, 652 F.2d 708, 713 (7th Cir. 1981), where a criminal defendant's past testimony was redacted in parts, excluding exculpatory evidence, here the summary was consistent with Byrne's testimony given the reason that it was admitted in the first place – to establish the materiality prong of Plaintiff's Claim 1, a claim that Defendants' prevailed on at trial. *DMNT*, pg. 7. Thus, this Court was "well within" its discretion in precluding the reading of Byrne's entire prior trial testimony in this case. *Id.*

*Third*, the sole reason for admitting Byrne's 1983 testimony was to establish the materiality element of Plaintiff's fabrication of evidence and *Brady* claims – Claim 1 – which Defendants prevailed on at trial. *See Dkt. No. 419*, pgs. 1-5 (Defendants' Response to Plaintiff's

Motion *In Limine* Nos. 8-12); *Dkt. No. 492* (Defendants' Objection to Using Summaries); *Dkt. No. 494* (Plaintiff's Response). Considering that a summary of Byrne's trial testimony was read to the jury and given that the Defendants *won* the claim that this evidence was admitted for, there can be no prejudice to Defendants. *Hasham v. California State Bd. of Equalization*, 200 F.3d 1035, 1048 (7th Cir. 2000) ("Our cases hold that 'evidentiary errors satisfy this standard only if a significant chance exists that they affected the outcome of the trial.'").

*Fourth*, contrary to Defendants' lament they suffered no prejudice. There was a cure for the lack of testimony about the nature of Plaintiff's interrogation – Defendants could have testified. This Court did not "punish" Defendants for invoking their Fifth Amendment rights, but balanced the interests of the parties and appropriately ruled that it would be unfair to permit Byrne's former testimonial denials of physically beating Plaintiff where he made himself unavailable under Rule 804. *DMNT*, pg. 8; *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000) (in a civil proceeding, where "the parties are on a somewhat equal footing, one party's assertion of his constitutional right should not obliterate another party's right to a fair proceeding"); *U.S. v. Rylander*, 460 U.S. 752, 758 (1983) (rejecting attempt to "convert the privilege from the shield against compulsory self-incrimination which it was intended to be into a sword"). Thus, Defendants' argument fails.

*Lastly*, for the first time, Defendants assert that Byrne and Dignan's prior 1983 motion to suppress hearing testimonies should have been admitted at trial. *DMNT*, pg. 5; *Dkt. No. 589*, pgs. 498-503; *Dkt. No. 492*. Since this issue was not raised below, and is so thoroughly undeveloped, it is waived and forfeited. *See U.S. v. Harvey*, 959 F.2d 1371, 1374 (7th Cir. 1992) (holding that a defendant "cannot complain about the district court's 'decision' to refuse to admit evidence that he never moved to admit"); Fed.R.Evid. 103(a)(2); *Holm*, 326 F.3d at 877 ("We have

repeatedly warned that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived[.]").

**B.      The Use of Trial Witness Summaries Was Proper.**

Defendants complain that this Court improperly admitted summaries of the 1983 criminal trial testimonies, instead of reading them verbatim into the record. *DMNT*, Arg. II.B., pgs. 8-9. Defendants had asserted that because Plaintiff had a *Brady* claim and a fabrication of evidence claim (Claim 1) they were entitled to have the entire criminal trial record admitted to establish that the suppressed and fabricated evidence was not material to Plaintiff's 1983 conviction. *See Dkt. No. 492*, pg. 4. But Defendants prevailed on Claim 1, thus, this argument is moot as the summaries could not have prejudiced Defendants on a claim that they *won*.

Further, this Court properly ordered that summaries were appropriate. The Seventh Circuit held that Plaintiff is not required to introduce or read into evidence the entire trial record to meet his materiality burden. *Jimenez v. City of Chicago*, 732 F. 3d 710, 719 (7th Cir. 2013). The Court frowned on the idea, rejecting a rule that would require Plaintiff to "force-feed the jury the original criminal trial in its entirety." *Id*. Additionally, Rule 611 allows a district court discretionary authority to regulate the conduct of civil trials, including the use of summaries in lieu of reading lengthy, verbatim trial transcripts to the jury. *Oostendorp v. Khanna*, 937 F.2d 1177, 1180 (7th Cir. 1991); Fed. R. Evid. 611 (the "court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; [and to] (2) avoid wasting time ***").

Thus, it is was not an abuse of discretion for this Court to order summaries of the criminal trial testimonies. *See Jimenez*, 732 F. 3d at 719 ("[t]he defendants argue that Jimenez was required to put the entire transcripts of his two criminal trials before the jury. The defendants

do not specify whether this burden would have required Jimenez to force the jury to listen to a reading of all 1370 pages or to use some other procedure. The absence of specificity is telling.").

C. **It Was Proper to Tell the Jury That Plaintiff's Convictions Were Reversed.**

Defendants maintain that this Court erred in allowing the jury to hear that Plaintiff's convictions for the crimes were vacated in 2013, and that the State of Illinois chose not to re-prosecute him for the offenses. *DMNT*, Arg. II.C., pgs. 10-11. Despite acknowledging that this was an accurate statement of the case, Defendants complain that this simple fact "created the false impression" that Plaintiff was innocent of the crimes. *DMNT*, pg. 11. According to the Defendants, this "error" allowed Plaintiff to testify that his convictions were reversed and led to counsel's closing argument statement implying that the State of Illinois "thought Wrice was innocent." *DMNT*, pg. 10.

*First,* Plaintiff merely testified to the "fact" that "a judge" vacated his convictions, which was consistent with this Court's statement of the case, and an accurate and necessary statement for the jury to be made aware.[2] Thus, there was no error in Plaintiff mirroring the statement of the case that this Court allowed to be read to the jury.

*Second,* counsel's statements in closing argument were a fair inference. Plaintiff does not stand convicted of the crimes against Karen Byron and, as such, he is *presumed innocent* of those charges. *See Nelson v. Colorado*, 137 S. Ct. 1249, 1255-56 (2017). Although Defendants are unhappy that Plaintiff has not been convicted of the Byron assault, the fact remains that "once those convictions were erased, the presumption of innocence was restored," and thus it was a fair inference to make that the State of Illinois dismissed the case because it lacked sufficient

---

[2] Plaintiff was sentenced to 100 years in prison for the Byron assault, and had his convictions not been vacated he would still be in prison. Considering that Plaintiff was sitting at counsel table in street clothes during the trial, it would have been odd to keep from the jury the reason why he was not in shackles and an orange jumpsuit.

belief that Plaintiff was guilty of the crimes as charged. *Nelson*, 137 S. Ct. at 1255.

Also, the jury was told that closing arguments are not evidence and "juries are presumed to follow their instructions." *Dkt. No. 589*, pg. 1952:1-5; *Jones v. Lincoln Electric Co.,* 188 F.3d 709, 732 (7th Cir. 1999) ("[C]ourts must presume that juries heed limiting instructions that closing arguments are not to be considered evidence."). Defendants have offered no argument that the remarks in closing argument were either unwarranted by the evidence or specifically injurious to their case. *See Smith v. Hunt*, 707 F.3d 803, 812 (7th Cir. 2013) ("Improper remarks during a closing argument warrant reversal of the judgment only if the remarks influenced the jury in such a way that substantial prejudice resulted to the opposing party."). Thus, this argument fails. *Jones*, 188 F.3d at 730 (reversible error occurs only if the closing argument statement was "plainly unwarranted and clearly injurious.").

Moreover, counsel comments about the dismissal were proper since Defendants could have rectified any "false impression" created by the fact that Plaintiff's case was dismissed. Defendants could have called one of the attorneys from the Office of the Special Prosecutors to explain the circumstances of Plaintiff's dismissal. Defendants deposed Brian Stefanich, a former OSP prosecutor on Plaintiff's 2013 proceedings and listed him as a potential witness. Mr. Stefanich could have easily been called by Defendants to explain why the State dropped the charges, especially considering that Mr. Stefanich now works for Defendants' attorney Mr. Hale.

Thus, this Court did not err in allowing the simple fact regarding the status of Plaintiff's criminal case to be told to the jury.

### D. This Court Properly Excluded Plaintiff's Gang Membership.

This Court precluded evidence of Plaintiff's 1982 gang membership finding that "any probative value to Wrice's gang membership is substantially outweighed by the likelihood of

13

unfair prejudice." *Dkt. No. 482*, pg. 18. Defendants restate their argument that Plaintiff's gang membership was admissible to rebut Plaintiff's effort to distance himself from the other individuals at his house, and to rebut his alibi that he did not participate in the crimes. *DMNT*, Arg. II.D., pgs. 11-12.

There was no need for prejudicial gang status to be introduced as Plaintiff testified that he was friends with the men who were in his home the night of the crimes, that he worked with co-defendants Rodney Benson and Michael Fowler, that he let them, and co-defendant Lee Holmes, come to his house to "party," and that he allowed many "friends" to use his attic on the night of Byron's assault. *See Dkt. No. 594*, pgs. 1170:12-15, 18-24; 1171:2-6, 10-11, 16; 1177:16-20; 1396:21-23; 1397:2-3, 8-9. As Plaintiff did not "distance" himself from his co-defendants, and admitted to having a relationship to the men in his house, this Court correctly barred the improper gang evidence.[3] *U.S. v. Alviar*, 573 F.3d 526, 536 (7th Cir. 2009) (explaining the "substantial risk of unfair prejudice attached to gang affiliation evidence."); *U.S. v. Irvin*, 87 F.3d 860, 865-66 (7th Cir. 1996) ("There is therefore always the possibility that a jury will attach a propensity for committing crimes to defendants who are affiliated with gangs or that a jury's negative feelings toward gangs will influence its verdict. Guilt by association is a genuine concern whenever gang evidence is admitted.").

Contrary to Defendants' suggestion, *Cobige* has no bearing here. *Cobige v. City of Chi.*, 651 F.3d 780 (7th Cir. 2011). *Cobige* dealt with an extreme case where a drug addict with a lengthy arrest history was painted at trial as a saint and a role model who provided continuous companionship to her son, when in reality she spent her adult life in jail. *Id.* at 781-82. Nothing

---

[3] Defendants seem to find it absurd that young people who are not close friends would party together without some sort of supervision. Apparently, defense counsel has never heard of a fraternity, unless of course, they have a particular reason to assume that Plaintiff and his friends must be "gang buddies" to legitimize their "hanging out."

about *Cobige* suggests that Plaintiff's gang affiliation was necessary to establish his connection to the co-defendants where Plaintiff admitted to being friends with them and where this highly prejudicial evidence was not probative of any relevant fact. Christmas, 691 F. Supp. 2d at 817 ("There is . . . always the possibility that a jury will attach a propensity for committing crimes to defendants who are affiliated with gangs or that a jury's negative feelings towards gangs will influence its verdict."). Thus, this claim should be denied.

     **E.    This Court Correctly Barred Highly Irrelevant, Inflammatory and Unproven Smears Against Plaintiff's Character From Being Introduced.**

Defendants argue that because Plaintiff's sister and brother had positive things to say about him and their family growing up, Defendants were entitled to insert uncharged highly prejudicial abuse allegations from Jennifer Scott and to present evidence that Plaintiff was a violent inmate and gang member. *DMNT*, Arg. II.E., pgs. 12-17. As Defendants recount, Magnolia Wrice and Charles Wrice testified about their personal memories of their childhood and growing up in a large family, and to their relationship with Plaintiff before and since his release from prison. *DMNT*, pg. 13. They also testified about their personal observations of Plaintiff and Jennifer Scott's relationship in the early 1980's. *Id.* Defendants woe that they were not allowed to present "negative character evidence" to rebut the Wrice siblings rather bland characterizations of early family life. *DMNT*, pgs, 13-14. But Defendants arguments and authorities fall short.

Again, *Cobige* was a narrow ruling in a wrongful death case which held that when the "the law makes damages depend on matters such as the emotional tie," the defense is entitled rebut the Plaintiff's evidence about the closeness of such ties. *DMNT*, pg. 14; *Cobige*, 651 F.3d at 785; *Barber v. City of Chicago*, 725 F.3d 702, 713-15 (7th Cir. 2013) (explaining the narrowness of *Cobige* and that it does not open door in case like this one). Defendants fail to

argue how Magnolia or Charles' Wrice's personal memories of Plaintiff and their family in any way opened the door to testimony from Jennifer Scott that she was physically and sexually abused by Plaintiff. *See also Morales v. Cadena*, 825 F.2d 1095, 1100 (7th Cir. 1987) (noting that a witness can open the door to negative evidence on cross-examination). Both siblings testified to what they *experienced* not to any rumors or conjecture, nor did they claim, in any way, that Plaintiff was some sort of "angel." Even Plaintiff admitted that he was not some choirboy. *See Dkt. No. 589*, 54:21-25.

As no "door was wide open" to evidence about Plaintiff's past alleged misdeeds, uncharged allegations about Plaintiff being a "violent criminal" were properly excluded. *DMNT*, pg. 14; *Michelson v. United States*, 335 U.S. 469, 482 (1948) (an uncharged conduct "without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness.").

### 1. Omitting Scott's Possible Abuse Testimony Was Proper.

As Defendants note, this Court barred Scott from stating that Plaintiff "raped" her, was physically abusive, and that she was a teenager when they dated and had three children together. *Dkt. 589*, pgs. 227:16-19; 228:1-3; 229:24-25; 230:1; 1620:6-11; *Dkt. No. 482*, p. 10. Defendants argue that these uncharged allegations were relevant to rebut Plaintiff's alibi, impeach Plaintiff's sister and brother's testimonies, and to show that Plaintiff was a "violent criminal who raped and beat Jennifer Scott when she was a child." *DMNT*, pgs. 14-16. Thus, Defendants *admit* that they wanted to use this evidence to show Plaintiff's propensity to harm women. *DMNT*, pgs. 14-16.

As Defendants' note, Scott's relevance was solely to Plaintiff's "alibi" that he was on the phone with her during parts of Byron's assault. But Scott herself did not "bust" Plaintiff's alibi, and instead testified that she did not "remember" whether Plaintiff called her that night. *Dkt. No.*

*589*, 1627:1-9; 1628:10-16; 1637:19-21. As Scott never testified that she and Plaintiff did not speak that night, evidence explaining "why" she would not speak to him on the phone (*i.e.,* because he was abusive) was irrelevant, making any "abuse" allegations prejudicial propensity evidence, properly barred at trial. *Smith*, 707 F.3d at 810 (evidence is unfairly prejudicial where "its admission makes it likely that the jury will be induced to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented.").

Moreover, as noted by Plaintiff, Scott did not state in her deposition that she was "raped" by Plaintiff, but that because of their age disparity, she felt that their relationship was not entirely consensual. *See Dkt. 566*, pgs., 2-3. Scott clearly had an axe to grind, which she made clear by falsely stating that she was never in court during Plaintiff's trial and in diminishing her relationship with Plaintiff since his release. *Dkt. No. 589*, 1628:17-19; 1638:20-25; 1639:1-15. Given her questionable testimony, it was not error to forbid her from testifying that Plaintiff was violent, especially where she never reported such uncorroborated bad acts to the police or to anyone else in her life. *See U.S. v. Hands*, 184 F.3d 1322, 1328-29 (11th Cir. 1999) ("On the other side of the Rule 403 inquiry, the evidence had great potential to incite unfair prejudice. Some types of extrinsic acts are particularly likely to incite a jury to an irrational decision; few would doubt that violent spousal abuse falls into this category"). As Defendants intended to use this potential evidence to "support a jury argument that [Plaintiff] is a despicable human being who should not be permitted to recover from the angelic police officers being wrongfully sued," and not as a rebuttal to Plaintiff's "alibi," it was properly excluded. *Barber*, 725 F.3d at 715-16.

Further, this evidence *was* introduced at trial. Magnolia was asked by defense counsel "you don't know" that Plaintiff "raped Jennifer Scott" and asked twice about whether she was "unaware" that Plaintiff was violent with Scott. *Dkt. No. 589*, pgs. 217:19-25; 281:1, 9-11, 14-

16. Defendants also told the jury in opening statements that Plaintiff raped Scott. *Dkt. No. 589*, 176:20-25 (informing the jury that Scott would testify that Plaintiff physically abused her and that her children with Plaintiff were the "product of rape."). And Scott testified that she was "underaged" when she had children with Plaintiff and that Plaintiff "harmed" her. *Dkt. No. 589*, pgs. 1623:20-21; 1630:6-7. Where this evidence was impermissibly introduced, and where further exposition by Scott regarding uncharged abuse allegations was improper, this claim fails.

### 2. Charles Wrice's Single Comment About Plaintiff Was Proper.

Charles Wrice testified that growing up, Plaintiff was a good brother who kept him out of trouble and kept him away from the "negativity on the street," such as "gangbanging." *Dkt. No. 589*, pg. 352:15-20. Defendants claim that Charles' personal impression of his relationship with Plaintiff "opened the door to Wrice's violent conduct," and thus they should have been allowed to introduce that Plaintiff's gang membership as well as Plaintiff's 1985 armed violence conviction, committed while he was in prison, and Plaintiff's prison rule violations, the last of which was in 1994. *DMNT*, Arg. II.E.2., pg. 17, *citing Cobige*, 651 F.3d at 784.

Charles did not testify that Plaintiff was *not* in a gang, only that Plaintiff tried to keep his little brother from "gangbanging." Unlike Charles' personal opinion of his brother, *Cobige* dealt with an extreme case where a drug addict with a lengthy arrest history was portrayed as a loving conscientious mother, when in reality she spent her adult life in jail. *Cobige*, 651 F.3d at 781-82. Nothing about *Cobige* suggests that Charles' positive comments about his own early family experiences opened the door to evidence that Plaintiff was a *violent* gang member. Defendants fail to accept that a person, even someone convicted of a crime, can love and help his family despite engaging in some unsavory activity. Thus, this Court properly barred gang references in response to Charles' testimony, where Defendants were attempting to impermissibly persuade

the jury that Plaintiff "is a horrible person who should recover nothing from the valiant police officers." *Dkt. No. 589*, pg. 1285:4-8. *Barber*, 725 F.3d at 717 (calling this type of argument an impermissible "general character assassination.").

Moreover, this Court properly ruled that Plaintiff's prison disciplinary record from before 1994 and his 1985 conviction while in prison should be barred from trial where Plaintiff did not testify about his prison infractions or that he was a general "rule-follower" during his incarceration. *See Dkt. No. 482*, pgs. 8-9; *Nelson v. City of Chicago*, 810 F.3d 1061, 1069 (7th Cir. 2016) (noting that the admission of Plaintiff's prior conviction could invite the jury to impermissibly infer "that the plaintiff is a serial law breaker and general troublemaker."); *Barber*, 725 F.3d at 714 (finding that the prejudicial impact of Plaintiff's "intervening PSMV conviction" substantially outweighed the "miniscule probative value of the conviction on this issue."). That Plaintiff pled guilty to a fight with another inmate in 1985 and had some tickets in this first decade of his 31-year incarceration, had little bearing on the question of whether Defendants' violated Plaintiff's constitutional rights. Indeed, where the jury heard that Plaintiff was thrice convicted of armed robbery and improperly were told that Plaintiff raped the mother of his children, there was no danger that the jury was given an unbalanced view of Plaintiff's character such that it prejudiced Defendants. *Jordan v. Binns*, 712 F.3d 1123, 1137 (7th Cir. 2013) ("harmless-error analysis is case-specific and requires an examination of the error(s) in light of the entire record.").

### F. This Court Properly Excluded the Non-Existent "Identification" of Plaintiff.

Defendants complain that this Court should have allowed introduction of Defendants' hearsay statement, contained in a police report, that Karen Byron "identified" Plaintiff in the hospital as one of the offenders. *DMNT*, Arg. II.F., pgs. 17-20; *see Dkt. No. 482*, pg. 17 (this

Court denying admission of police reports authored by Defendants as hearsay); *Dkt. No. 384, Exh. 10* (Plaintiff's Motion *In Limine* To Exclude Defendants' Police Reports). Defendants argue that this uncorroborated "identification" was probative to show that Plaintiff was "guilty," that Defendants had no reason to coerce a confession since Byron identified Plaintiff, and to establish that Plaintiff confessed because of this "identification." *DMNT*, pg. 18. But this Court correctly determined that this "identification" was hearsay.

First, Byron did not testify at the criminal trial that she made *any* identification of Plaintiff, or anyone else. Also, Plaintiff has never stated that he knew, or was told, that Byron identified him at the hospital. Plaintiff could not have been "influenced" to confess by an "identification" that he knew nothing about. It would have been unfair to admit evidence of an uncorroborated "identification" as a motivation for Plaintiff's actions especially where the victim herself never testified that she made any identification. *See Brandon v. Village of Maywood*, 179 F. Supp. 2d 847, 856 (N.D. Ill. 2001) (for a statement to be treated as non-hearsay to show the "effect on the listener," there must be evidence that the listener actually heard the statement).

Second, the only "evidence" of this supposed hospital "identification" came from a police report, authored by Defendants, which was inadmissible hearsay. *DMNT*, pg. 18, ft. 13; *Dkt. No. 384, Exh. 10* (Plaintiff's Motion *In Limine* To Exclude Defendants' Police Reports); *Binns*, 712 F.3d at 1133 (explaining that third-party statements in police reports do not benefit from the "public records" exception to the hearsay rules because "the presumption of reliability does not attach to third parties who themselves have no public duty to report"). Although Bertina Lampkin and Sidney Jones "knew" about the hospital show-up, neither could have testified about it since they had no personal knowledge of how the alleged identification came about, other than by reading the police report. *DMNT*, pgs. 18, ft. 13, 19; *Downie v. Klincar*, 759 F. Supp. 425,

428 (N.D. Ill. 1991) (police reports "may be demonstrably reliable evidence of the fact that an arrest was made, but they are significantly less reliable evidence of whether the allegations of criminal conduct they contain are true."); *U.S. v. Christ*, 513 F.3d 762, 770 (7th Cir. 2008) (the business record exception, requires that the witness have "knowledge of the procedures under which the records were created.').

*Third*, since the hospital "identification" was never admitted at the criminal trial and tested by cross-examination, it would have been unfair to allow such self-serving defense evidence where Defendants refused to testify and answer questions about the investigation. *Dkt. No. 589*, 562:7-8; *Bracey v. Herringa*, 466 F.2d 702, 705, ft. 9 (7th Cir.1972) (it was error at the summary judgment stage to admit records which included the self-serving statements of the defendants themselves where "this kind of record lacks reliability and trustworthiness."); *Binns*, 712 F.3d at 1135 (citing *Bracey* with approval); *Sanchez v. City of Chi.*, 880 F.3d 349, 359 (7th Cir. 2018) (Rule 403 allows the exclusion of otherwise relevant evidence "if its probative value is substantially outweighed by" unfair prejudice).

Where this evidence was properly excluded, and where Defendants could not be prejudiced by the failure to admit an "identification" that the victim *herself* never attested to making and that the Plaintiff never knew about, Defendants claim fails. *Binn*s, 712 F.3d at 1137 (7th Cir. 2013) ("harmless-error analysis is case-specific and requires an examination of the error(s) in light of the entire record.").

### G.    This Court Properly Allowed 404(b) Witnesses.

Defendants complain that this Court improperly allowed evidence that Gregory Banks, Alonzo Smith, and co-defendant Rodney Benson were beaten by Defendants at Area 2 where this evidence was used for improper propensity purposes. *DMNT*, Arg. II.G., pgs. 20-23. Also,

21

Defendants object to Plaintiff's counsel's questioning of Bertina Lampkin about co-defendant Lee Holmes' allegations of abuse and oddly assert that it was improper for counsel to *not* present co-defendant Michael Fowler's claims of abuse at trial. *Id*. Defendants' assertions have no merit, and even if improper, did not prejudice Defendants.

As Defendants' note, this issue was extensively litigated prior to trial. *See Dkt Nos. 388, 409, 421, 423, 471, 472, 508, 513, 517, 521, 524, 530, 531, 537, 546*. Plaintiff believes that his Response and Supplemental Response to Defendants' Motion *In Limine* No. 2 sufficiently set forth the proper rational for introducing the testimonies of Banks, Smith, and Benson, and reflect this Court's ruling with regard to this evidence. *See Dkt. Nos. 423, 471*.

Rule 404(b) prohibits the use of "other crimes, wrongs, or acts . . . to prove the character of the person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Such evidence can be admissible, however, to show motive, intent, plan, or opportunity, whether through evidence of similar events both before and after the Plaintiff's claim of injury. *Wilson*, 6 F.3d at 1238; *Edwards v. Thomas*, 31 F. Supp.2d 1069, 1074 (N.D. Ill. 1999) (allowing evidence of prior use of excessive force to demonstrate an officer's intent to commit battery); *U.S. v. Brown*, 31 F.3d 484, 492 (7th Cir. 1994) ("trial courts may admit evidence of prior or subsequent bad acts"); *Hill v. City of Chicago*, Case No. 06 C 6772, 2011 WL 3840336, at *8 (N.D. Ill. Aug. 30, 2011) (allowing admission under Rule 404(b) of a witness who would testify that he was were beaten in a manner similar to Plaintiff's beating where the witness was beaten three years after Plaintiff's interrogation).

In *Wilson*, the trial judge excluded evidence that Jon Burge and other officers had interrogated another suspect using an electroshock device nine days before the plaintiff alleged that they had interrogated him in that manner. *Wilson*, 6 F.3d at 1238. In noting that the trial

judge erred in excluding evidence of the officer's interrogation methods, the Court noted that 404(b) evidence is admissible to establish "intent, opportunity, preparation, and plan." *Id*. In *Edwards*, the trial judge, relying primarily on *Wilson*, allowed the plaintiff to use evidence of a sustained excessive force complaint against the defendant-police officer in order to establish the defendant-officer's intent to use excessive force during his interrogation of the plaintiff. *Edwards*, 31 F.Supp.2d at 1074. Further in *Hill*, the Court allowed, following *Wilson*, the admission of four other bad-act witnesses who would testify that they were beaten and interrogated in a manner similar to Plaintiff, noting that the evidence was relevant to establish the Defendant Officers "plan and preparation." *Hill*, 2011 WL 3840336, at *8.

Here, Banks and Smith's testimonies of abuse were sufficiently similar under Rule 404(b) to show Defendants' intent, plan, and preparation to beat Plaintiff. Both Banks and Smith stated that they were interrogated by the Defendants. *Dkt. No. 589*, pgs. 1068:13-14 (Banks); 1555:5-7 (Smith) Smith was taken to the basement, and Banks was taken to another location neat the interrogation room. *Dkt. No. 589*, pgs. 1068:10, 1069:3-4 (Banks); 1557:1-4 (Smith). Both men were beaten by Defendants when they denied any involvement in the crimes and told to tell the truth. *Dkt. No. 589*, pgs. 1069:11-12, 1070:11-13, 1071:3-7 (Banks); 1566:14-17; 1568:24-25; 1569:1-4 (Smith). Byrne used a long flashlight on Banks and used a nightstick to beat Smith. *Dkt. No. 589*, pgs. 1070:11-13; 1561:10-11, 25. Dignan used a rubber hose-like object to beat Smith and bagged Smith. *Dkt. No. 589*, pgs. 1071:23-25; 1072:1-8 (Banks); 1560:14, 19-21, 1561:1-5 (Smith) Banks and Smith were also called a "nigger" by the Defendants. 1071:3-7 (Banks); 1224:19-20 (Smith) Both men were beaten multiple times when they maintained their innocence, were fed details of the crimes, and told to confess to the State's Attorney on threat of further beatings. *Dkt. No. 589*, pgs. 1069-1078 (Banks); 1555-1571 (Smith).

Benson, his deposition testimony that was read to the jury, he similarly stated that while being interrogated for the Byron assault, he was taken to a basement room by Defendants and beaten with a flashlight and a rubber object. *Dkt. 586-1*, pgs. 73:22-25; 74:1, 14; 189: 17-21; 190:8-13, 16-24. Defendants called Benson "nigger" and told him that he was going to confess to the Byron assault, or be beaten again. *Dkt. 586-1*, pg. 188:21-24; 189:9-21. Plaintiff had similarly stated that he was beaten multiple times by Byrne and Dignan in the basement, called a "nigger," that Dignan used a black hose and Byrne used a flashlight, he was told that he was lying when he denied involvement in the crimes, and was forced to confess to the State's Attorney on threat of further beatings. *Dkt. No. 589*, pgs. 1221-1234; *U.S. v. Long,* 86 F.3d 81, 84 (7th Cir. 1996) (the similarity prong of 404(b) is not unduly rigid and "[s]imple differences in the type of conduct or charge at issue cannot defeat the similarity requirement."). Given the sameness of methods, the sameness of implements (black hose and a flashlight) the beatings to the "groin" areas, the threats to confess or be beaten again, and the use of racial slurs, these testimonies were was relevant and admissible as evidence of Defendants' intent, plan, and preparation. *See Wilson,* 6 F.3d at 1238; *see also Hill,* 2011 WL 3840336, at *8.

As the Seventh Circuit noted in approving of the holdings in *Wilson* and *Edwards,* there is no automatic bar to introducing such evidence of an officer's beating of other persons, as Rule 404 "involves a discretionary decision for which the trial judge is best suited because of 'his familiarity with the case and ability to gauge the likely impact of the evidence in the context of the entire proceeding.'" *Okai v. Verfuth,* 275 F.3d 606, 611 (7th Cir. 2001). Where, this Court, after extensive litigation on this issue and after "gauging the impact" of such testimony on the jury, found that Banks, Smith, and Benson's testimonies were relevant under 404(b), Defendants' arguments to the contrary should again fail.

Further, even if the evidence from Banks, Smith, and Benson, should have been excluded, any error is harmless. *Clarett*, 657 F.3d at 672 ("[A]n error is harmless if it did not contribute to the verdict in a meaningful manner."). Plaintiff testified that he was beaten on two occasions by Defendants in the basement of Area 2 during his interrogation for the Byron assault, and that these beatings, and his fear of more violent beatings and possible death at the hands of Defendants, compelled him to confess to a crime he did not commit. *Dkt. No. 589*, pgs. 1221-1233.Those statements inculpating himself in Byron's assault were admitted against Plaintiff at his criminal trial. Bobby Joe Williams testified that he was beaten by Defendants in the groin with a flashlight and black rubber hose and forced to implicate Plaintiff in the offenses or risk more beatings and being charged with the crimes himself. *Dkt. No. 589*, pgs. 617-620. Defendants invoked their Fifth Amendment rights to silence and refused to answer any questions about their interrogations of Plaintiff and Williams, and the jury was instructed that it could take and adverse inference from their silence. *Dkt. No. 589*, 1955:5-6.

Thus, based on the testimonies of Plaintiff and Williams and because of Defendants' refusals to account for their conduct, Plaintiff established that he was physically coerced to confess to the crimes in a statement that was admitted against him. So, any error in admitting the 404(b) evidence was harmless. *Young*, 327 F.3d at 621 (error is harmless unless it had a "substantial and injurious effect or influence on the jury's verdict").

As to co-defendants Holmes and Fowler, Plaintiff did not introduce any evidence about their claims of police abuse at the hands of Byrne and Dignan. Although Plaintiff's counsel questioned Bertina Lampkin about Holmes' claims of abuse, she stated that she was unaware of any such claims from Holmes, and thus, Defendants' could not have been prejudiced by testimony that there was no information that Holmes was beaten by Defendants. *See DMNT*, pg.

22. Further, Plaintiff did not introduce any statements from Fowler about his abuse at the hands of the Defendants, and while Defendants maintain his abuse allegations were "incredible," if Defendants felt that Fowler's claims rebutted Plaintiff's claims about his beatings, they could have very well introduced that evidence themselves. *DMNT*, pg. 22-23; *Whiting v. Westray*, 294 F.3d 943, 946 (7th Cir. 2002) (denying defendant's motion for a new trial when defense counsel was not impeded from presenting his case to the jury despite plaintiff's counsel's conduct).

Defendants also fail to assert exactly *how* evidence that was not actually admitted at trial, and rejected by their own witness, could have affected the jury's determination. S*ee Jones*, 188 F.3d at 725 ("An error is considered to be harmless if it did not contribute to the verdict in a meaningful manner."). Thus, this argument is meritless.

### III.  Plaintiff's Counsel Committed No Errors That Denied Defendants a Fair Trial.

Defendants claim that Plaintiff's counsel made comments in closing argument that prejudiced Defendants and that counsel's speaking objections improperly influenced the jury. *See DMNT*, Arg. III., pgs. 23-28. The Seventh Circuit has "repeatedly stated that comments made by attorneys during closing arguments rarely rise to the level of reversible error." *See, e.g., Willis v. Lepine*, 687 F.3d 826, 834 (7th Cir. 2012); *Pickett v. Sheridan Health Care Ctr.*, 610 F.3d 434, 445 (7th Cir. 2010); *Valbert*, 866 F.2d at 239. Counsel's comment in this case were not one of those rarefied reversible errors, nor even error at all, and thus Defendants' arguments fail.

Moreover, a court may only order a new trial if the jury's "verdict is against the manifest weight of the evidence, ... or if for other reasons the trial was not fair to the moving party." *Willis v. Lepine*, 687 F.3d 826, 836 (7th Cir. 2012), *citing Marcus & Millichap Inv. Servs. v. Sekulovski*, 639 F.3d 301, 313 (7th Cir.2011). "Merely reciting the Rule 59(a) standard and then tossing the motion into the court's lap is not enough." *Willis*, 687 F.3d at 836. "Failure to

adequately present an issue to the district court waives the issue" for review. *Kunz v. DeFelice*, 538 F.3d 667, 681 (7th Cir. 2008). Thus, Defendants have waived any argument that the jury's verdict went against the manifest weight of the evidence as they fail to make such a claim.

### A. Comments About Kenny Lewis Were Not Error.

Defendants assert that they are entitled to a new trial because Plaintiff's counsel made the comment that Kenny Lewis made a "deal" for himself to testify against Plaintiff at his trial. *DMNT*, pg. 24. But Lewis' relevancy to the proceedings was as support for the materiality element of Claim 1. Defendants can hardly be prejudiced by a comment made in reference to a claim that they prevailed on at trial. As the Seventh Circuit explained, "[t]o warrant a new trial, statements made during closing argument must be plainly unwarranted and clearly injurious to constitute reversible error." *Jones*, 188 F.3d at 730 (7th Cir. 1999). As the comment made failed to "injure" Defendants, this argument fails.

### B. Counsel Did Not Mispresent That Plaintiff Was Not Convicted of the Crimes.

Defendants, as in Argument II.C., claim that Plaintiff's counsel's comments that the State of Illinois would have prosecuted Plaintiff if they believed he was guilty, and other comments about the *fact* that Plaintiff was not re-convicted of the crimes were improper, *DMNT*, pg. 25, *see supra., Resp. to DMNT Arg. II.C.* As explained *supra*, these were fair comments on the criminal proceedings, where the State of Illinois did not re-prosecute Plaintiff for these crimes and thus, he is presumed innocent of the offense. A "significant part of the lawyer's role during closing arguments is to bolster the strength of his case by calling the jury's attention to certain facts *or inferences that might otherwise escape the jury's attention*." *Marshall v. Porter County Plan Comm'n*, 32 F.3d 1215, 1221-22 (7th Cir. 1994). It was a fact that Plaintiff was not re-convicted

and thus it was a fair inference that the State of Illinois may have believed Plaintiff was innocent. Thus, this claim fails.

### C.     Comments About Jennifer Scott Were Proper.

Defendants complain that counsel made "disgraceful" comments about Scott in closing argument. *DMNT*, pgs. 25-26. But counsel's comments that Scott was "angry" and that it was unreasonable to believe that she had no relationship with Plaintiff while having his three children were fair comments on Scott's testimony especially where she falsely testified that she was not in court in 1983 and where he did not "break" Plaintiff's alibi. *Dkt. No. 589*, 1627:1-9; 1628:10-16; 1637:19-21. Counsel's comments highlighted the weaknesses of Defendants' case, which hinged on Scott discrediting Plaintiff's alibi (which she did not). As closing arguments "are the time in the trial process when counsel is given the opportunity to discuss more freely the weaknesses in his opponent's case and to highlight the strength of his own," these comments were proper. *Jones*, 188 F.3d at 731.

### D.     There Were No Improper Speaking Objections.

Defendants cite two examples where they believe that counsel improperly "coached" Bobby Joe Williams and Plaintiff. *DMNT*, pgs. 26-27. Regarding Williams, his testimony about the manner of his criminal trial testimony, whether he gave yes or no answers to questions from Lampkin, was relevant to the *Brady* claim (that Williams gave coerced, false testimony at the criminal trial) that Defendants won. See *Shutler v. Lake Forest Country Day School*, No. 07 CV 6553, at *4 (N.D. Ill. Sep. 9, 2011) (noting that counsel's speaking objection was not error because the information revealed in the speaking objection was irrelevant to the claim).

Moreover, the jury did not hear the yes-or-no questions Williams was asked at trial that counsel referenced, which would have been detrimental to *Plaintiff's* case as counsel's "belief"

was not proven up to the jury with the transcript. *DMNT*, pgs. 26-27. Since the comments of counsel had no relevancy to Plaintiff compelled self-incrimination claim, and because they failed to damage Defendants' case, there was no error.

Also, as to counsel's claims about improper comments during Plaintiff's testimony, the "speaking objections" Defendants complain of were not objected to at trial, and also fail to relate to the compelled self-incrimination claim. *DMNT*, pg. 27. Those comments were simply counsel's attempt to supply a factual basis for *her objection* to defense counsel's inappropriate cross-examination question and counsel asking her client to pay attention and answer the questions asked of him. *See DMNT*, p. 27. These comments hardly qualify as error, let alone reversible error. *Willis*, 687 F.3d at 836 ("[T]he misconduct of counsel justifies a new trial where that misconduct prejudiced the adverse party.").

### E.    Counsel Did Not Make Improper Racist Comparisons.

Defendants' complain that counsel "improperly implied" that Plaintiff and his co-defendants were targeted because of their race, and that Defendants beat black men in the basement of Area 2. *DMNT*, pgs. 27-28. But this comment was not untrue where Defendants called Plaintiff "nigger" while beating him in a secret basement of Area 2 and where Banks Smith, Banks, and Benson also testified that Defendants made racial slurs while beating them. As these were comments based on the evidence at trial, counsel's comments were proper. *Jones*, 188 F.3d at 731. Moreover, even while the issue of race may have had a minimal inflammatory effect, such remarks did not rise to the level to warrant a new trial. *Id.* (concluding that even if Defense counsel's closing remarks "could have had some negative or inflammatory effect" on the jury's perception of the case, the remarks were not so egregious as to compel a new trial).

### F.     There Was No Cumulative Error From Counsel's Comments.

In their last paragraph, Defendants state that the cumulative effect of counsel's comments and misconduct requires reversal. *DMNT*, p. 28. But Defendants has not made even the threshold showing that there was more than one error. *See Christmas*, 682 F.3d at 643 (stating that prejudice from a cumulative effect requires that "multiple errors occurred at trial"). Importantly, the jury was instructed that the questions and comments of counsel, as well as the opening and closing statements, are not evidence, and juries are presumed to follow their instructions. *Dkt. No. 589*, 1951:20-25; 1952:1-5; *Jones*, 188 F.3d at 732. While the presumption may be overcome, Defendant has given this Court no reason to think that happened here, other than the Defendants lost. *Smith*, 707 F.3d at 812 ("As proof that the jury could not follow the instructions given, Smith offers nothing other than the fact that it decided against him. We do not think that is enough.").

WHEREFORE, this Court should deny Defendants' Motion for a New Trial.

Respectfully Submitted,

/s/ Jennifer Bonjean
One of the Attorneys for Plaintiff

Jennifer Bonjean
Ashley Cohen
THE BONJEAN LAW GROUP
467 St. Johns Pl. Brooklyn, NY 11238

Heidi Linn Lambros
1169 South Plymouth Court
Chicago, IL 60605